UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-56885 |
| | ) | |
| Murray Energy Holdings Co., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge John E. Hoffman, Jr. |

**OBJECTION OF THE UNITED MINE WORKERS OF AMERICA ("UMWA") 1974 PENSION PLAN AND TRUST, UMWA 1992 BENEFIT PLAN, UMWA 1993 BENEFIT PLAN, AND UMWA 1988 CASH DEFERRED SAVINGS PLAN TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION FINANCING [ECF NO. 28]**

The United Mine Workers of America ("UMWA") 1974 Pension Plan and Trust ("1974 Pension Plan"), UMWA 1992 Benefit Plan, UMWA 1993 Benefit Plan, and UMWA 1988 Cash Deferred Savings Plan (collectively, the "Funds") hereby object to the Debtors' DIP Financing Motion[1] and Interim DIP Order.[2]

The Funds are a group of multiemployer plans that provide health and pension benefits to retired coal miners and their eligible dependents. Signatory coal operators are obligated to contribute to certain of the UMWA Funds under the terms of collectively bargained National Bituminous Coal Wage Agreements (each, an "NBCWA") negotiated between the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators' Association ("BCOA"), a multiemployer bargaining association. The Funds are substantial unsecured creditors in these

---

[1] Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Hearing, and (VI) Granting Related Relief [ECF No. 28] ("DIP Financing Motion").

[2] Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Hearing, and (VI) Granting Related Relief [ECF No. 28-1] ("Interim DIP Order").

cases. The Funds object to two aspects of the proposed debtor in possession financing as overreaching and unsupported by law.

    1. **DIP Lenders Should Not Be Granted a Lien on the Proceeds of Avoidance Actions.**

DIP Lenders request a lien on the proceeds of avoidance actions, contrary to the provisions of the Code and established case law. *See* DIP Financing Motion ¶ 11, Interim DIP Order ¶ 14(a)(i) (providing for a lien on all unencumbered assets "in each case other than the Avoidance Actions (but including Avoidance Proceeds. . . .")). If this provision is accepted in an interim DIP financing order, hundreds of millions of dollars advanced during the first 45 days will encumber the estate's avoidance actions.

Yet, the Bankruptcy Code is quite clear that avoidance actions and their proceeds properly adhere to the estate as a whole, not to particular creditors. *See* 11 U.S.C. § 551; *In re Heintz*, 198 B.R. 581, 586 (9th Cir. B.A.P. 1996). And those actions may only be exercised for the benefit of the estate as a whole rather than an individual creditor. *See In re Professional Inv. Properties of America*, 955 F.2d 623, 626 (9th Cir. 1992); *In re Sweetwater*, 884 F.2d 1323, 1328 (10th Cir. 1989). Thus, unsecured creditors are entitled to the benefits of any avoidance actions. *See In re Maxwell Newspapers, Inc.*, 189 B.R. 282, 287 (Bankr. S.D.N.Y. 1995) (primary consideration is the benefit to unsecured creditors). Thus, avoidance actions are not assets in which the debtor should grant a security interest.

Accordingly, courts have generally rejected giving pre-petition lenders a security interest in avoidance actions. *See, e.g., Official Comm. of Unsecured Creditors v. Goold Elecs. Corp.*, 1993 U.S. Dist. LEXIS 14318, at *12 (N.D. Ill. Sept. 22, 1993) (vacating financing order "to the extent that the order assigns to the bank a security interest in the debtor's preference actions"); *In re Cybergenics Corp.*, 226 F.3d 237, 243-44 (2d Cir. 2000) (finding avoidance actions are not

assets of a debtor and there is no legal basis to grant DIP secured parties any interests in the claims); *Mellon Bank v. Glick*, 69 B.R. 901, 905 (D.N.J. 1987) (allowing secured creditor the right to recovery would "frustrate the policy of equal treatment of creditors under the Code and would contradict the plain meaning of section 551 of the Bankruptcy Code.")

Here, the proposed DIP Facility would grant liens on the estate's avoidance actions to secured creditors, but these liens are not part of any bargain that redounds to the unsecured creditors' benefit. *Cf. In re Maxwell Newspapers, Inc.*, 189 B.R. 282, 288 (Bankr. S.D.N.Y. 1995) (approving transfer of avoidance actions in return for giving up $93 million in claims). The Prepetition Lenders give up nothing in the DIP financing scheme; to the contrary, they enhance their security and leave unsecured creditors with nothing. The Debtors and their secured creditors cannot privately agree to waive the rights of unconsenting third parties through a DIP financing scheme. *See In re The Colad Group, Inc.,* 324 B.R. 208, 223-24 (W.D.N.Y. 2005).

The Court should not grant the DIP Lenders a lien on Avoidance Actions, one of the few assets that might be available to unsecured creditors. Rather, Avoidance Actions should remain free of encumbrances and available to unsecured creditors for possible pursuit by a creditors' committee when one is formed.

2. **Committee Should Be Given Time to Examine the Validity of Liens of the ABL Revolving Loan and FILO facility.**

Upon entry of the Interim DIP Order, $150 million of prepetition debt will be paid off or rolled up into the DIP Facility. First, "[u]pon entry of this Interim Order, all of the outstanding obligations with respect to the [$60 million of] Prepetition ABL Revolving Debt shall be refinanced by proceeds of the DIP Term Loans." Interim DIP Order ¶ 10(c); DIP Financing Motion ¶¶ 9 & 11. Second, "[u]pon entry of this Interim Order . . . all outstanding Prepetition

FILO Debt [in the amount of $90 million] shall be converted [or rolled up] into DIP FILO Loans." Interim DIP Order ¶ 11; DIP Financing Motion ¶¶ 9 & 11. Effectively, this instantly elevates $150 million in pre-petition, ostensibly secured debt, to the superpriority status of post-petition DIP debt – without any review of the validity of their liens.

Although the Committee is given the ability to challenge the amount, validity, perfection, enforceability, priority and extent of the prepetition debt and prepetition liens, those rights will be meaningless with respect to the $150 million of pre-petition debt that is being paid off or "rolled up." The pre-petition debts will be paid off before a final order is entered. But under the proposed Interim DIP Order, the payment and roll-up would be protected from challenge. The Interim DIP Order provides that if it is "reversed, modified, vacated, or stayed, such reversal, modification, or stay shall not affect . . . (ii) the validity, priority or enforceability of the DIP Liens, the Adequate Protection Liens, the Prepetition Liens, or the Prepetition Debt." Interim DIP Order ¶ 25(c). Moreover, notwithstanding any such reversal, modification or stay of any use of Cash Collateral or Collateral, . . . shall be governed by the provisions of this Interim Order and the DIP Lenders and the Prepetition Secured Parties are entitled to all the rights, remedies and privileges granted in Section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents with respect to all uses of Cash Collateral, the DIP Obligations and Adequate Protection." Interim DIP Order ¶ 25(c).[3] Thus, the Interim Order is effectively a final order because reversal will not permit the transactions to be unwound. Reversal or modification will not allow a challenge to the Prepetition Liens or Prepetition Debt.

---

[3] Section 364(e) provides that the "reversal or modification on appeal of an authorization to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith. . . ." 11 U.S.C. § 364(e).

Thus, if the proposed Interim DIP Order is entered, the DIP Lenders will pay off the $60 million Prepetition ABL Revolving Debt and will roll-up the $90 million Prepetition FILO Debt. And even after an unsecured creditors committee is formed if it is discovered that the liens are invalid or in a different amount, the committee would not be able to challenge the validity, priority and enforceability of $150 million in prepetition debt and liens.  As a result, by a motion with less than 24 hours' notice, before formation of an unsecured creditors' committee, with no opportunity whatever for any unsecured creditors to conduct due diligence, the unsecured creditor body would be deprived of any ability to review and challenge these pre-petition claims and liens. The Court should not permit such a result.

As one court has noted, financing which would require the Debtor to waive all claims and defenses against its pre-petition lender, as a "shocking . . . attempt to disarm the representatives of the bankruptcy estate. *In re Tenney Village Co.*, 104 B.R. 562, 568 (Bankr. D. N.H. 1989). As in *Tenney Village,* this is a case unlike most cases where the creditors' committee is given a limited period to investigate such claims, no such period of time was given in this case. *In re Tenney Village Co.*, 104 B.R. 562, 569 (Bankr. D. N.H. 1989).  The lenders' "existing liens would become unassailable even before appointment of counsel to the creditors' committee." *Id.* at 568.   Similarly, the Committee should be given time to challenge the roll-up. *See In re St. Vincents Catholic Med. Ctrs. of N.Y.,* 2010 Bankr. LEXIS 6178, at *22, 49–50 (Bankr. S.D.N.Y. Apr. 26, 2010) (Approving roll-up on an interim basis, but explicitly provided that it might be "un-rolled" pursuant to another order of the court at the final hearing);

The Court should not permit the payoff and/or roll-up of prepetition debt without making the validity and amount of pre-petition liens subject to review and challenge by the Committee.

The Committee should be given adequate time to review and raise any challenges to those pre-petition debts and liens.

**WHEREFORE**, the Funds respectfully requests that this Court (i) deny the Debtors request to grant the DIP Lenders a lien on Avoidance Actions, and (ii) grant the Committee sufficient time to review the proposed pay off and roll-up of prepetition debts and, if appropriate, challenge the validity and amount of those debts and liens.

Respectfully submitted,

*/s/ Matthew T. Schaeffer*
Nick V. Cavalieri      (0013097)
Matthew T. Schaeffer   (0066750)
Bailey Cavalieri LLC
10 W. Broad Street, Suite 2100
Columbus, OH 43215-3422
(614) 229-3252 / Fax - (614) 221-0479
nick.cavalieri@baileycavalieri.com
matthew.schaeffer@baileycavalieri.com

Filiberto Agusti
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6428 / Fax (202) 429-3902
E-Mail: fagusti@steptoe.com

MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C.
Paul A. Green
John R. Mooney
Diana M. Bardes
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 783-0010
E-mail: pgreen@mooneygreen.com
       jmooney@mooneygreen.com
       dbardes@mooneygreen.com

Counsel for the Funds

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Objection was served electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the Court.

                                        */s/ Matthew T. Schaeffer*
                                        Matthew T. Schaeffer