**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



John E. Hoffman, Jr.
United States Bankruptcy Judge

**Dated: December 12, 2019**

<br>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MURRAY ENERGY HOLDINGS CO., *et al.*,[1] | ) | Case No. 19-56885 (JEH) |
| | ) | |
| | ) | Judge John E. Hoffman |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING  LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE  EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF [RELATED TO DOCKET NOS. 28 AND 93]**

---

[1]   Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  Such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/MurrayEnergy.  The location of Debtor Murray Energy Holdings Co.'s principal place of business and the Debtors' service address in these chapter 11 cases is 46226 National Road, St. Clairsville, Ohio 43950.

Upon the motion (the "**Motion**")[2] of Murray Energy Corporation (the "**Company**", or the "**Borrower**"), and its affiliated debtors, each as a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Bankruptcy Rules for the Southern District of Ohio (the "**Local Bankruptcy Rules**") seeking, among other things:

(i) authorization for the Borrower to obtain the obligations of the postpetition financing in an aggregate principal amount of up to approximately $440 million (the "**DIP Financing**"), under a superpriority debtor-in-possession credit facility (the "**DIP Facility**") consisting of, among other things, (a) new money term loans (the "**DIP Term Loans**") in an aggregate principal amount of up to $350 million to be provided by certain Prepetition Superpriority Lenders (as defined below) (in their capacity as lenders under the DIP Credit Agreement (as defined below), the "**DIP Term Lenders**") and (b) rolled-up loans (the "**DIP FILO Loans**") in an aggregate principal amount of up to $90 million to be provided by the Prepetition FILO Lender (as defined below) (in its capacity as a lender under the DIP Credit Agreement, the "**DIP FILO Lender**," and, together with the DIP Term Lenders, the "**DIP Lenders**");

(ii) authorization for (x) Murray Energy Holdings Company ("**Holdings**") and all of the Borrower's Debtor subsidiaries (the "**DIP Term Guarantors**") to guarantee the obligations arising under the DIP Credit Agreement related to the DIP Term Loans and the obligations arising under the DIP Credit Agreement related to the Designated Coal Contracts[3] (the "**DIP Term Obligations**") and (y) Holdings and certain of the Borrower's Debtor subsidiaries (the "**DIP FILO Guarantors**" and, together with the DIP Term Guarantors, the "**Guarantors**") to guarantee the obligations arising under the DIP Credit Agreement related to the DIP FILO Loans (the "**DIP FILO Obligations**" and, together with the DIP Term Obligations, the "**DIP Obligations**");

---

[2] Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in the Motion or the DIP Credit Agreement (as defined herein).

[3] "**Designated Coal Contracts**" means "Designated Coal Contracts" as defined in the DIP Credit Agreement.

(iii)    authorization for the Credit Parties[4] to (a) execute and enter into that certain *Superpriority Debtor-In-Possession Credit And Guaranty Agreement*, dated as of October 31, 2019 (as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**"), among the Borrower, as borrower, the Guarantors, as guarantors, the DIP Lenders, GLAS USA LLC, as the administrative agent for the DIP Facility (solely in such capacity, the "**DIP Administrative Agent**"), GLAS Americas LLC, as collateral agent (solely in such capacity, the "**DIP Collateral Agent**"; the DIP Administrative Agent, together with the DIP Collateral Agent, the "**DIP Agents,**" and (x) the DIP Agents together with the DIP Term Lenders and the Designated Coal Contract Counterparties,[5] the "**DIP Term Secured Parties**", (y) the DIP Agents together with the DIP FILO Lender, the "**DIP FILO Secured Parties**") and (z) the DIP Agents, collectively with the DIP Lenders and the Designated Coal Contract Counterparties, the "**DIP Secured Parties**"), substantially in the form attached to the Motion as **<u>Exhibit B</u>** and any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other Credit Documents (as defined in the DIP Credit Agreement) and documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time in accordance with the terms hereof and thereof, and collectively with the DIP Credit Agreement, the "**DIP Documents**") and (b) perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

(iv)    authorization for the Credit Parties (a) upon entry of the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "**Interim Order**") [Docket No. 93], to incur in a single draw on the Closing Date (as defined in the DIP Credit Agreement), DIP Term Loans in an aggregate principal amount of up to $200 million (the "**Initial DIP Term Loans**") and (b) upon entry of this order (this "**Final Order**"), to incur in a single draw DIP Term Loans in an aggregate principal amount of up to $150 million (the "**Delayed Draw DIP Term Loans**"), for a total aggregate principal amount of up to $350 million;

---

[4]    As used herein, the term "**Credit Parties**" shall mean, (a) with respect to the DIP FILO Obligations, DIP FILO Superpriority Claims, and the DIP Liens securing the DIP FILO Obligations, the Borrower and the DIP FILO Guarantors and (b) with respect to the DIP Term Obligations, DIP Term Superpriority Claims, and the DIP Liens securing the DIP Term Obligations, the Borrower and DIP Term Guarantors.

[5]    "**Designated Coal Contract Counterparties**" means "Designated Coal Contract Counterparties" as defined in the DIP Credit Agreement.

(v)    authorization for (a) the Credit Parties, the Prepetition ABL Secured Parties (as defined below), and the DIP FILO Secured Parties to, upon entry of the Interim Order, convert the entire outstanding balance of the Prepetition FILO Debt (as defined herein) into DIP FILO Loans and (b) certain of the Credit Parties and that certain Prepetition ABL Secured Party, as Prepetition LC Issuer (as defined herein) (the "**Outstanding LC Issuer**"), to enter into and perform under that certain Payoff Letter, dated as of October 30, 2019 (including provisions of the Prepetition ABL Credit Documents incorporated thereby, the "**Payoff Letter**") and to continue to maintain cash collateral, for existing cash-collateralized letters of credit issued under the Prepetition ABL Credit Agreement (as defined below) (the "**Outstanding LCs**"), in each case, pursuant to the terms and conditions set forth herein, the Payoff Letter and in the DIP Documents;

(vi)    authorization for the Debtors to (a) upon entry of the Interim Order, use proceeds of the Initial DIP Term Loans to refinance all of the Prepetition ABL Revolving Debt (as defined herein) in full, which refinancing shall be indefeasible upon the occurrence of the ABL Satisfaction Date,[6] and fund LC Cash Collateral (as defined herein) in an amount equal to 103% of the face amount of Outstanding LCs (as defined herein), which amounts shall be replenished as and if depleted, each in accordance with the Payoff Letter; and (b) use proceeds of the DIP Term Loans for working capital and general corporate purposes in accordance with the terms of the DIP Documents and Approved Cash Flow Forecast (subject to permitted variances);

(vii)    subject to the restrictions set forth in the DIP Documents and this Final Order, authorization for the Credit Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties (as defined below) has an interest, and to grant adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of Cash Collateral and other Prepetition Collateral;

(viii)    authorization for the Credit Parties to pay, on a final and irrevocable basis, the principal, interest, fees, expenses and other amounts payable under the DIP Documents and Outstanding LCs as such become earned, due and payable, including, but not limited to, upfront fees, put premiums, letter of credit fees, closing date fees, exit fees, prepayment fees, agency fees, audit

---

[6]  "**ABL Satisfaction Date**" means the date on which the Prepetition ABL Revolving Debt is indefeasibly refinanced or repaid in full in cash, including interest and fees (including early termination fees) through the date of repayment (at the default contract rate). The ABL Satisfaction Date shall be deemed to have occurred if (i) the Challenge Period (as defined herein) expires without the timely and proper commencement of a Challenge (as defined herein) in accordance with paragraph 31 of this Final Order with respect to the Prepetition ABL Revolving Debt or against the Prepetition ABL Secured Parties or (ii) if a Challenge is timely and properly asserted prior to the expiration of the Challenge Period, upon the final disposition of such adversary proceeding or contested matter in favor of the Prepetition ABL Secured Parties by final order of a court of competent jurisdiction (for the avoidance of doubt the Court is a court of competent jurisdiction).

fees, appraisal fees, valuation fees, administrative agents' fees, the reasonable fees and disbursements of the DIP Agents' and certain DIP Lenders' attorneys, advisors, accountants, appraisers, bankers, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(ix)     approval of certain stipulations by the Debtors with respect to the Prepetition Credit Documents (as defined below) and the liens and security interests arising therefrom;

(x)     subject only to (a) the Carve-Out (as defined below), (b) solely with respect to the DIP FILO Priority Collateral (as defined below), the claims of the DIP FILO Secured Parties arising under the DIP Credit Agreement, the Interim Order, and this Final Order, except to the extent of the Term Loan ABL Collateral Cap (as defined in the DIP Credit Agreement), and (c) solely with respect to the Prepetition ABL Priority Collateral, the claims of the Prepetition ABL Secured Parties arising under the Prepetition ABL Credit Documents (each as defined below) and this Final Order, the granting to the DIP Term Secured Parties of allowed superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all prepetition and postpetition property of the Credit Parties' estates and all proceeds thereof (other than Avoidance Actions, [7] but including, without limitation, Avoidance Proceeds[8]);

(xi)     subject only to (a) the Carve-Out solely to the extent of the Term Loan ABL Collateral Cap, (b) solely with respect to the DIP Term Priority Collateral, the claims of the DIP Term Secured Parties arising under the DIP Credit Agreement and this Final Order, (c) solely with respect to the DIP FILO Priority Collateral, the claims of the DIP Term Secured Parties arising under the DIP Credit Agreement and this Final Order, solely to the extent of the Term Loan ABL Collateral Cap to the extent such Term Loan ABL Collateral Cap has not been exhausted under clause (a), and (d) solely with respect to the Prepetition Term Priority Collateral, the claims of the Prepetition Term Secured Parties arising under the Prepetition Term Credit Documents (each as defined below) and this Final Order, the granting to the DIP FILO Secured Parties of allowed superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all prepetition and postpetition property of the Credit Parties' estates and all proceeds thereof (other than Avoidance Actions, but including, without limitation, Avoidance Proceeds);

---

[7]     "**Avoidance Actions**" means, collectively, claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code.

[8]     "**Avoidance Proceeds**" means any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise.

(xii)    the granting to the DIP Agents (for the benefit of the DIP Term Secured Parties) of valid, enforceable, nonavoidable, and fully perfected security interests and liens (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) on all DIP Term Collateral, subject to (a) the Carve-Out, (b) the Prepetition Permitted Prior Liens (as defined below), (c) the liens on the DIP FILO Priority Collateral securing the claims of the DIP FILO Secured Parties arising under the DIP Credit Agreement, subject to the liens on the DIP FILO Priority Collateral securing the claims of the DIP Term Secured Parties up to the Term Loan ABL Collateral Cap, (d) the liens on the Prepetition ABL Priority Collateral securing the claims of the Prepetition ABL Secured Parties arising under the Prepetition ABL Credit Agreement, and this Final Order and (e) Permitted Liens (as defined in the DIP Credit Agreement);

(xiii)    the granting to the DIP Agents (for the benefit of the DIP FILO Secured Parties) of valid, enforceable, nonavoidable, and fully perfected security interests and liens (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) on all DIP FILO Collateral, subject to (a) the Carve-Out, (b) the Prepetition Permitted Prior Liens (as defined below), (c) the liens on the DIP FILO Priority Collateral securing the claims of the DIP Term Secured Parties arising under the DIP Credit Agreement up to the Term Loan ABL Collateral Cap, (d) the liens on the Prepetition Term Priority Collateral securing the claims of the Prepetition Term Secured Parties arising under the Prepetition Term Credit Documents (each as defined below) and this Final Order, and (e) Permitted Liens;

(xiv)    the granting to the Outstanding LC Issuer as security for the Outstanding LCs of valid, enforceable, nonavoidable, and fully perfected first-priority security interests and liens on all cash collateral cash-collateralizing the Outstanding LCs (such cash collateral, the "**LC Cash Collateral**"), which, for avoidance of doubt, shall not be DIP Collateral (as defined below) and shall not be subject to the Carve-Out;

(xv)    (a) a waiver of the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral (as defined below) (together, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code, and (b) a waiver of any right of the Debtors under the "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(xvi)    modification of the automatic stay to the extent set forth herein and in the DIP Documents; and

(xvii)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Final Order.

The Court having considered the relief requested in the Motion, the exhibits attached thereto, the Berube Declaration, the First Day Declarations (collectively with the Berube Declaration, the "**Declarations**"), the DIP Documents, and the evidence submitted and arguments made at the interim hearing held on October 30, 2019 (the "**Interim Hearing**") and the final hearing held on December 4, 2019 (the "**Final Hearing**," and collectively with the Interim Hearing, the "**Hearings**"); and the Court having entered the Interim Order; and due and sufficient notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the final relief requested in the Motion is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition.*  The relief requested in the Motion is GRANTED ON A FINAL BASIS in accordance with the terms of this Final Order.  Any and all objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, settled, or

7

resolved and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Final Order shall become effective immediately upon its entry.

2.      *Commencement Date*.  On October 29, 2019 (the "**Commencement Date**"), each Debtor filed a voluntary petition (each, a "**Petition**") under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Ohio (this "**Court**").

3.      *Debtors in Possession.*  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

4.      *Jurisdiction and Venue.*  This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334 and the *General Order 30-2* from the United States Bankruptcy Court for the Southern District of Ohio, dated October 10, 2019.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      *Committee Formation*.  On November 7, 2019, the United States Trustee for the Southern District of Ohio (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**") [Docket No. 168].

6.      *Notice*.  Appropriate notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Final Order shall be required.

7.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 31 and 35 below, the Debtors acknowledge, admit, stipulate, and agree that:

8

(a)

(i) pursuant to that certain *Amended and Restated Revolving Credit Agreement*, dated as of June 29, 2018 (as amended, supplemented, restated or otherwise modified prior to the Commencement Date, the "**Prepetition ABL Credit Agreement**," and collectively with the other Loan Documents (as defined in the Prepetition ABL Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**Prepetition ABL Credit Documents**"), among (a) Murray Energy Corporation, as borrower (the "**Prepetition Borrower**"), (b) the Prepetition 1L/2L Guarantors (as defined below) and additional guarantors party thereto (the "**Prepetition Additional ABL Guarantors**" and, collectively with the Prepetition 1L/2L Guarantors, the "**Prepetition ABL Guarantors**"), (c) Goldman Sachs Bank USA, as administrative agent (solely in such capacity, the "**Prepetition ABL Agent**"), and (d) the lenders (including GACP Finance Co. LLC, as Last-Out Lender (as defined in the Prepetition ABL Credit Agreement) (the "**Prepetition FILO Lender**")) party thereto (the "**Prepetition ABL Lenders**," and collectively with the Prepetition ABL Agent, the Prepetition LC Issuer (as defined below) and all other holders of Prepetition ABL Debt (as defined below), the "**Prepetition ABL Secured Parties**"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to, and Goldman Sachs Bank USA, as letter of credit issuer (the "**Prepetition LC Issuer**"), issued letters of credit for the account of, the Prepetition Borrower pursuant to the Prepetition ABL Credit Documents

(the "**Prepetition ABL Credit Facility**"), and the Prepetition ABL Guarantors guaranteed on a joint and several basis the obligations under the Prepetition ABL Credit Agreement and the other Prepetition ABL Credit Documents;

(ii) pursuant to that certain *Superpriority Credit and Guaranty Agreement*, dated as of June 29, 2018 (as amended, supplemented, restated or otherwise modified prior to the Commencement Date, the "**Prepetition Superpriority Credit Agreement**," collectively with the other Credit Documents (as defined in the Prepetition Superpriority Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**Prepetition Superpriority Credit Documents**"), among (a) the Prepetition Borrower, as borrower, (b) the Prepetition ABL Guarantors and additional guarantors party thereto (the "**Prepetition Additional Superpriority/Superparity Guarantors**" and, collectively with the 1L/2L Guarantors and the Prepetition Additional ABL Guarantors, the "**Prepetition Superpriority/Superparity Guarantors**"), (c) GLAS Trust Company LLC, as administrative agent (solely in such capacity, the "**Prepetition Superpriority Agent**") and (d) the lenders party thereto (the "**Prepetition Superpriority Lenders**," collectively with the Prepetition Superpriority Agent, the Prepetition Collateral Trustee (as defined below), all other holders of Prepetition Superpriority Debt (as defined below), and the other Secured Parties (as defined in the Prepetition Superpriority Credit Agreement), the "**Prepetition Superpriority Secured Parties**"), the Prepetition Superpriority Lenders provided term loans to the

Prepetition Borrower pursuant to the Prepetition Superpriority Credit Documents (the "**Prepetition Superpriority Credit Facility**"), and the Prepetition Superpriority/Superparity Guarantors guaranteed on a joint and several basis the obligations under the Prepetition Superpriority Credit Agreement and the other Prepetition Superpriority Credit Documents;

(iii) pursuant to that certain *Credit and Guaranty Agreement*, dated as of April 16, 2015 (as amended, supplemented, restated or otherwise modified prior to the Commencement Date, the "**Prepetition Term Loan Credit Agreement**," and collectively with the other Credit Documents (as defined in the Prepetition Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**Prepetition Term Loan Credit Documents**"), among (a) the Prepetition Borrower, as borrower, (b) the guarantors party thereto (collectively, the "**Prepetition 1L/2L Guarantors**"), (c) Black Diamond Commercial Finance, L.L.C., as successor administrative agent (solely in such capacity, the "**Prepetition Term Agent**"), and (d) the lenders party thereto (the "**Prepetition Term Loan Lenders**," collectively with the Prepetition Term Agent, the Prepetition Collateral Trustee and all other holders of Prepetition Term Loan Debt (as defined below), the "**Prepetition Term Loan Secured Parties**"), the Prepetition Term Loan Lenders provided term loans to the Prepetition Borrower pursuant to the Prepetition Term Loan Credit Documents (the "**Prepetition Term Loan Credit Facility**"), and the Prepetition 1L/2L Guarantors guaranteed on a joint and several basis the obligations of the

11

Prepetition Borrower under the Prepetition Term Loan Credit Agreement and the other Prepetition Term Loan Credit Documents;

(iv) pursuant to that certain indenture for certain 12.00% senior secured notes due 2024 dated as of June 29, 2018 (as amended, supplemented, restated or otherwise modified prior to the Commencement Date, the "**Prepetition 12.00% Superparity Indenture**," and collectively with the other Note Documents (as defined in the Prepetition 12.00% Superparity Indenture) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "**Prepetition 12.00% Superparity Credit Documents**"), among (a) Murray Energy Corporation, as issuer (the "**Prepetition Issuer**"), (b) the Prepetition Superpriority/Superparity Guarantors, as guarantors, (c) The Bank of New York Mellon Trust Company, N.A., as trustee (solely in such capacity, the "**Prepetition 12.00% Superparity Trustee**"), and (d) the Prepetition Collateral Trustee, as collateral trustee for the benefit of the holders of the Prepetition 12.00% Superparity Notes (the "**Prepetition 12.00% Superparity Noteholders**", collectively with the Prepetition 12.00% Superparity Trustee, the Prepetition Collateral Trustee, the Secured Debt Representatives (as defined in the Prepetition 12.00% Superparity Indenture) and all other holders of Prepetition 12.00% Superparity Debt (as defined below), the "**Prepetition 12.00% Superparity Secured Parties**"), the Prepetition Issuer incurred indebtedness to the Prepetition 12.00% Superparity Noteholders of 12.00% Senior Secured Notes Due 2024 (collectively, the "**Prepetition 12.00% Superparity Notes**") and the Prepetition Superpriority/Superparity Guarantors

12

guaranteed on a joint and several basis the obligations of the Prepetition Issuer under the Prepetition 12.00% Superparity Indenture and the other Prepetition 12.00% Superparity Credit Documents;

(v) pursuant to that certain indenture for certain 9.50% senior secured notes due 2020 dated as of May 8, 2014 (as amended, supplemented, restated or otherwise modified prior to the Commencement Date, the "**Prepetition 9.50% Superparity Indenture**" (together with the Prepetition 12.00% Superparity Indenture, the "**Prepetition Superparity Indentures**"), and collectively with the other Note Documents (as defined in the Prepetition 9.50% Superparity Indenture) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "**Prepetition 9.50% Superparity Credit Documents**" (together with the Prepetition 12.00% Superparity Credit Documents, the "**Prepetition Superparity Credit Documents**")), among (a) the Prepetition Issuer, as issuer, (b) the Prepetition Superpriority/Superparity Guarantors, as guarantors, (c) Delaware Trust Company, as successor trustee to The Bank of New York Mellon Trust Company, N.A., as trustee (solely in such capacity, the "**Prepetition 9.50% Superparity Trustee**", and, in its capacities as Prepetition 12.00% Superparity Trustee and Prepetition 9.50% Superparity Trustee, the "**Prepetition Superparity Trustee**"), and (d) the Prepetition Collateral Trustee, as collateral trustee, for the benefit of the holders of the Prepetition 9.50% Superparity Notes (the "**Prepetition 9.50% Superparity Noteholders**" (together with the Prepetition 12.00% Superparity Noteholders, the "**Prepetition Superparity**

13

Noteholders"), collectively with the Prepetition 9.50% Superparity Trustee and the Prepetition Collateral Trustee, the Secured Debt Representatives (as defined in the Prepetition 9.50% Superparity Indenture) and all other holders of Prepetition 9.50% Superparity Debt (as defined below), the "**Prepetition 9.50% Superparity Secured Parties**," and the Prepetition 9.50% Superparity Secured Parties, together with the Prepetition 12.00% Superparity Secured Parties, the "**Prepetition Superparity Secured Parties**"), the Prepetition Issuer incurred indebtedness to the Prepetition 9.50% Superparity Noteholders of 9.50% Senior Secured Notes Due 2020 (collectively, the "**Prepetition 9.50% Superparity Notes**," and, together with the Prepetition 12.00% Superparity Notes, the "**Prepetition Superparity Notes**") and the Prepetition Superpriority/Superparity Guarantors guaranteed on a joint and several basis the obligations of the Prepetition Issuer under the Prepetition 9.50% Superparity Indenture and the other Prepetition 9.50% Superparity Credit Documents;

(vi) pursuant to that certain indenture for certain 11.25% senior secured notes due 2021 dated as of April 16, 2015 (as amended, supplemented, restated or otherwise modified prior to the Commencement Date, the "**Prepetition Parity Indenture**," and collectively with the other Note Documents (as defined in the Prepetition Parity Indenture) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "**Prepetition Parity Credit Documents**," and collectively with the Prepetition Superpriority Credit Documents, the Prepetition Term Loan Credit Documents, the Prepetition

14

Superparity Credit Documents, the "**Prepetition Term Credit Documents**," and the Prepetition Term Credit Documents, together with the Prepetition ABL Credit Documents, the "**Prepetition Credit Documents**"), among (a) the Prepetition Issuer, as issuer, (b) the Prepetition 1L/2L Guarantors, as guarantors, (c) Wilmington Savings Fund Society, FSB, as successor trustee to The Bank of New York Mellon Trust Company, N.A. (solely in such capacity, the "**Prepetition Parity Trustee,**" and in its capacities as the Prepetition Superparity Trustee and the Prepetition Parity Trustee, the "**Prepetition Indenture Trustee**"), and (d) the Prepetition Collateral Trustee, as collateral trustee, for the benefit of the holders of the Prepetition Parity Notes (the "**Prepetition Parity Noteholders**," collectively with the Prepetition Parity Trustee and the Prepetition Collateral Trustee, the Secured Debt Representatives (as defined in the Prepetition Parity Indenture) and all other holders of Prepetition Parity Debt (as defined below), the "**Prepetition Parity Secured Parties**" and collectively with the Prepetition Superpriority Secured Parties, the Prepetition Term Loan Secured Parties, the Prepetition Superparity Secured Parties, the "**Prepetition Term Secured Parties**," and the Prepetition Term Secured Parties, together with the Prepetition ABL Secured Parties, the "**Prepetition Secured Parties**"), the Prepetition Issuer incurred indebtedness to the Prepetition Parity Noteholders of 11.25% Senior Secured Notes Due 2021 (collectively, the "**Prepetition Parity Notes**") and the Prepetition 1L/2L Guarantors guaranteed on a joint and several basis the obligations of the Prepetition Issuer under the Prepetition Parity Indenture and the other Prepetition Parity Credit Documents;

(b)      as of the Commencement Date:

(i) the Prepetition Borrower and the Prepetition ABL Guarantors were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $232,187,084.00, consisting of (a) $60,743,542.00 in outstanding principal amount of Revolving Loans (as defined in the Prepetition ABL Credit Agreement) (inclusive of interest and fees (including early termination fees) through the date of repayment (at the default contract rate) "**Prepetition ABL Revolving Debt**"), plus $81,443,542.00 of the aggregate stated principal amount available for drawing under all outstanding letters of credit and all unpaid reimbursement obligations with respect to drawn letters of credit (the "**Prepetition Letters of Credit**") and (b) $90,000,000.00 in outstanding principal amount of Last-Out Term Loans (as defined in the Prepetition ABL Credit Agreement) (collectively, with interest through the date of repayment (at the contractual default rate), the "**Prepetition FILO Debt**"), which loans (the "**Prepetition ABL Loans**") were made by the Prepetition ABL Lenders and which Prepetition Letters of Credit were issued by the Prepetition LC Issuer, pursuant to, and in accordance with the terms of, the Prepetition ABL Credit Documents, plus, to the extent not otherwise included, accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition ABL Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the

16

Commencement Date) as provided in the Prepetition ABL Credit Documents (collectively, the "**Prepetition ABL Debt**"), which Prepetition ABL Debt has been guaranteed on a joint and several basis by all of the Prepetition ABL Guarantors;

(ii) the Prepetition Borrower and the Prepetition Superpriority/Superparity Guarantors were justly and lawfully indebted and liable to the Prepetition Superpriority Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $1,726,555,184.84, consisting of, among other things, (a) $1,568,720,555.84 in outstanding principal amount of Prepetition Superpriority Term B-2 Loans [9] and (b) $157,834,629 in outstanding principal amount of Prepetition Superpriority Term B-3 Loans, [10] which loans (the "**Prepetition Superpriority Loans**") were made by the Prepetition Superpriority Lenders pursuant to, and in accordance with the terms of, the Prepetition Superpriority Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Superpriority Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Commencement Date) as provided in the Prepetition Superpriority Credit Documents (together with the other Prepetition Superpriority Obligations, the

---

[9] "**Prepetition Superpriority Term B-2 Loans**" means "Superpriority Term B-2 Loans" as defined in the Prepetition Superpriority Credit Agreement.

[10] "**Prepetition Superpriority Term B-3 Loans**" means "Superpriority Term B-3 Loans" as defined in the Prepetition Superpriority Credit Agreement.

"**Prepetition Superpriority Debt**"), which Prepetition Superpriority Debt and other Prepetition Superpriority Obligations[11] have been guaranteed on a joint and several basis by all of the Prepetition Superpriority/Superparity Guarantors;

(iii) the Prepetition Borrower and the Prepetition 1L/2L Guarantors were justly and lawfully indebted and liable to the Prepetition Term Loan Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $51,094,229.89, consisting of (a) $38,283,236.81 in outstanding principal amount of Prepetition Term B-2 Loans[12] and (b) $12,810,993.08 in outstanding principal amount of Prepetition Term B-3 Loans[13] (the "**Prepetition Term Loan Loans**"), which loans were made by the Prepetition Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition Term Loan Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Term Loan Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Commencement Date) as provided in the Prepetition Term Loan Credit Documents (collectively, the "**Prepetition Term Loan Debt**"),

---

[11]  "**Prepetition Superpriority Obligations**" means "Obligations" as defined in the Prepetition Superpriority Credit Agreement.

[12]  "**Prepetition Term B-2 Loans**" means "Term B-2 Loans" as defined in the Prepetition Term Loan Credit Agreement.

[13]  "**Prepetition Term B-3 Loans**" means "Term B-3 Loans" as defined in the Prepetition Term Loan Credit Agreement.

which Prepetition Term Loan Debt has been guaranteed on a joint and several basis by all of the Prepetition 1L/2L Guarantors;

(iv) the Prepetition Issuer and the Prepetition Superpriority/Superparity Guarantors were justly and lawfully indebted and liable to the Prepetition 12.00% Superparity Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $498,121,115.00 of the outstanding Prepetition 12.00% Superparity Notes, which notes were issued by the Prepetition Issuer pursuant to, and in accordance with the terms of, the Prepetition 12.00% Superparity Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition 12.00% Superparity Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Commencement Date) as provided in the Prepetition 12.00% Superparity Credit Documents (collectively, the "**Prepetition 12.00% Superparity Debt**"), which Prepetition 12.00% Superparity Debt has been guaranteed on a joint and several basis by all of the Prepetition Superpriority/Superparity Guarantors;

(v) the Prepetition Issuer and the Prepetition Superpriority/Superparity Guarantors were justly and lawfully indebted and liable to the Prepetition 9.50% Superparity Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $1,916,000.00 of the outstanding Prepetition 9.50%

Superparity Notes, which notes were issued by the Prepetition Issuer pursuant to, and in accordance with the terms of, the Prepetition 9.50% Superparity Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition 9.50% Superparity Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Commencement Date) as provided in the Prepetition 9.50% Superparity Credit Documents (collectively, the "**Prepetition 9.50% Superparity Debt**," and, together with the Prepetition 12.00% Superparity Debt, the "**Prepetition Superparity Debt**"), which Prepetition 9.50% Superparity Debt has been guaranteed on a joint and several basis by all of the Prepetition Superpriority/Superparity Guarantors;

(vi) the Prepetition Issuer and the Prepetition 1L/2L Guarantors were justly and lawfully indebted and liable to the Prepetition Parity Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $294,764,642.00 of the outstanding Prepetition  Parity Notes, which notes were issued by the Prepetition Issuer pursuant to, and in accordance with the terms of, the Prepetition Parity Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Parity Credit Documents), costs, charges, indemnities, and other obligations incurred in

20

connection therewith (whether arising before or after the Commencement Date) as provided in the Prepetition Parity Credit Documents (collectively, the **"Prepetition Parity Debt**" and collectively with the Prepetition Superpriority Debt, the Prepetition Superpriority Obligations, the Prepetition Term Loan Debt, the Prepetition Superparity Debt, the "**Prepetition Term Debt**" and, the Prepetition Term Debt together with the Prepetition ABL Debt, the "**Prepetition Debt**"), which Prepetition Parity Debt has been guaranteed on a joint and several basis by all of the Prepetition 1L/2L Guarantors;

(c)        (i) the Prepetition Debt constitutes the legal, valid, binding, and non-avoidable obligations of the Prepetition Borrower or the Prepetition Issuer, as applicable, and the Prepetition ABL Guarantors, the Prepetition Superpriority/Superparity Guarantors or the Prepetition 1L/2L Guarantors, as applicable, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and (ii) no portion of the Prepetition Debt or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Credit Documents prior to the Commencement Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is used in the Bankruptcy Code), cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law (a "**Claim**");

(d)        as of the Commencement Date, pursuant to and in connection with the Prepetition ABL Credit Documents, the Prepetition Borrower and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, a security interest in and continuing lien on (the "**Prepetition ABL Liens**")

21

substantially all of their assets and property, including, (i) a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the Shared ABL Collateral and Additional ABL Collateral (each as defined in that certain Prepetition Non-Specified Intercreditor Agreement referred to below) (which, for the avoidance of doubt, includes Cash Collateral (as defined below)) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition ABL Priority Collateral**"), and (ii) a valid, binding, properly perfected, enforceable, junior priority security interest in and continuing lien on the Shared Fixed Asset Collateral (as defined in that certain Prepetition Non-Specified Intercreditor Agreement referred to below) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively and together with the Additional Fixed Asset Collateral (as defined in that certain Prepetition Non-Specified Intercreditor Agreement referred to below), the "**Prepetition Term Priority Collateral**," (which, for the avoidance of doubt, includes Cash Collateral (as defined below)) and together with the Prepetition ABL Priority Collateral, the "**Prepetition Collateral**") which are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, counterclaim, offset, crossclaim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law, subject and subordinate only to the liens of Prepetition Collateral Trustee on the Prepetition Term Priority Collateral and certain other liens permitted by the Prepetition ABL Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition ABL Liens (the "**Prepetition ABL Permitted Prior Liens**");

(e)      as of the Commencement Date, pursuant to and in connection with the applicable Prepetition Term Credit Documents, the Prepetition Borrower or the Prepetition Issuer, as applicable, the Prepetition Additional ABL Guarantors and the Prepetition Additional Superpriority/Superparity Guarantors granted to the Prepetition Collateral Trustee, for the benefit of itself and the Prepetition Superpriority Secured Parties and the Prepetition Superparity Secured Parties, a security interest in and continuing lien on (the "**Prepetition Superpriority/Superparity Term Liens**") substantially all of their assets and property, including, a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the Additional Fixed Asset Collateral (as defined in that certain Prepetition Non-Specified Intercreditor Agreement referred to below), which are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, effect, counterclaim, offset, crossclaim, defense, or Claim under the Bankruptcy Code or applicable non-bankruptcy law subject and subordinate only to certain other liens permitted by the Prepetition Superpriority Credit Documents and the Prepetition Superparity Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and *pari passu* or senior in priority to the Prepetition Superpriority/Superparity Term Liens (the "**Prepetition Superpriority/Superparity Term Permitted Prior Liens**"); *provided*, that, the priority of Prepetition Superpriority/Superparity Term Liens with respect to the Additional Fixed Asset Collateral securing each of the Prepetition Superpriority Debt, the Prepetition Superpriority Obligations and the Prepetition Superparity Debt is set forth in section 2.4 of the Prepetition Specified Collateral Trust Agreement;

(f)      as of the Commencement Date, pursuant to and in connection with the Prepetition Term Credit Documents, the Prepetition Borrower or the Prepetition Issuer, as

applicable, and the Prepetition 1L/2L Guarantors granted to the Prepetition Collateral Trustee, for

the benefit of itself and the Prepetition Superpriority Secured Parties, the Prepetition Term Loan

Secured Parties, the Prepetition Superparity Secured Parties and the Prepetition Parity Secured

Parties, a security interest in and continuing lien on (the "**Prepetition 1L/2L Term Liens**," and

together with the Prepetition Superpriority/Superparity Term Liens, the "**Prepetition Term**

**Liens**,"[14] the Prepetition Term Liens, together with the Prepetition ABL Liens, the "**Prepetition**

**Liens**") substantially all of their assets and property, including, (i) a valid, binding, properly

perfected, enforceable, first priority security interest in and continuing lien on the Shared Fixed

Asset Collateral (as defined in that certain Prepetition Non-Specified Intercreditor Agreement

referred to below) and (ii) a valid, binding, properly perfected, enforceable, second priority

security interest in and continuing lien on the Shared ABL Collateral (as defined in that certain

Prepetition Non-Specified Intercreditor Agreement referred to below), which are not subject to

avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise),

recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, effect,

counterclaim, offset, crossclaim, defense, or Claim under the Bankruptcy Code or applicable non-

bankruptcy law subject and subordinate only to the liens of Prepetition ABL Agent on the

Prepetition ABL Priority Collateral and certain other liens permitted by the Prepetition

Superpriority Credit Documents, the Prepetition Term Loan Credit Documents, the Prepetition

---

[14] "**Prepetition Superpriority Liens**" means the Prepetition Superpriority/Superparity Term Liens and the Prepetition 1L/2L Liens securing the Prepetition Superpriority Debt and the Prepetition Superpriority Obligations.

"**Prepetition Term Loan Liens**" means the Prepetition 1L/2L Liens securing the Prepetition Term Loan Debt.

"**Prepetition Superparity Liens**" means the Prepetition Superpriority/Superparity Term Liens and the Prepetition 1L/2L Liens securing the Prepetition Superparity Debt.

"**Prepetition Parity Liens**" means the Prepetition 1L/2L Term Liens securing the Prepetition Parity Debt.

Superparity Credit Documents and the Prepetition Parity Credit Documents solely to the extent

any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and

*pari passu* or senior in priority to the Prepetition 1L/2L Term Liens (the "**Prepetition 1L/2L Term**

**Permitted Prior Liens**" and, together with the Prepetition Superpriority/Superparity Term

Permitted Prior Liens, the "**Prepetition Term Permitted Prior Liens**"; the Prepetition Term

Permitted Prior Liens, together with the Prepetition ABL Permitted Prior Liens, the "**Prepetition**

**Permitted Prior Liens**"); *provided*, that, the priority of Prepetition 1L/2L Term Liens with respect

to the Shared Fixed Asset Collateral and Shared ABL Collateral securing each of the Prepetition

Term Debt is set forth in section 2.6 of the Prepetition Non-Specified Collateral Trust Agreement.

(g)       as of the Commencement Date, except for the Prepetition Permitted Prior

Liens and the Permitted Liens, there were no liens on or security interests in the Prepetition

Collateral other than the Prepetition Liens.  Nothing herein shall constitute a finding or ruling by

this Court that any alleged Prepetition Permitted Prior Lien or Permitted Lien is valid, senior,

enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights

of any party-in-interest, including, but not limited to the Debtors, the DIP Agents, the DIP Term

Lenders, the DIP FILO Lender, the Prepetition Secured Parties, or the Creditors' Committee, to

challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any

alleged Prepetition Permitted Prior Lien or Permitted Lien.  The right of a seller of goods to reclaim

such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Prior Lien

or Permitted Lien and is expressly subject to the Prepetition Liens, DIP Term Liens (as defined

below), and DIP FILO Liens (as defined below);

(h)       none of the Prepetition Secured Parties control the Debtors or their

properties or operations, have authority to determine the manner in which any Debtor's operations

are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Credit Documents;

(i)     no claims, counterclaims, offsets, objections, defenses, challenges or causes of action exist against, or with respect to, the Prepetition Secured Parties or any of their respective affiliates, agents, subsidiaries, partners, controlling persons, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, or other equitable relief that might otherwise impair the aforementioned parties or their interest in the Prepetition Collateral, subordination, avoidance or other claims, including any claims or causes of action arising under or pursuant to sections 105, 502(d), 510, 542 through 553(b) or 724(a) of the Bankruptcy Code), in connection with or arising under any Prepetition Credit Documents or the transactions contemplated thereunder or the Prepetition Debt or Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery; and the Debtors and their estates hereby release and discharge any and all such claims, counterclaims, objections, defenses, set-off rights, challenges and causes of actions;

(j)     the Debtors hereby absolutely, irrevocably, and unconditionally release and forever discharge and acquit the DIP Secured Parties, the Prepetition Superpriority Secured Parties, the Prepetition ABL Secured Parties, and their respective Representatives (as defined below), in each case, solely in their capacities as such (collectively, the "**Released Parties**"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, controversies, disputes, obligations, counterclaims, offsets, demands, debts, damages, expenses (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), liens, accounts, contracts, liabilities, actions, and causes of action arising prior to the Commencement Date (collectively, the "**Released Claims**") of any kind, nature or description,

26

whether known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the DIP Facility, the DIP Documents, the Prepetition Superpriority Credit Documents, the Prepetition ABL Credit Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and the transactions reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order, whether such Released Claims are matured, contingent, liquidated, unliquidated, unmatured, known, unknown or otherwise; *provided*, that, for the avoidance of doubt, the foregoing release shall not constitute a release of any rights of the Debtors arising under the DIP Documents;

(k)       that certain Second Amended and Restated Intercreditor Agreement, dated as of June 29, 2018 (as amended, supplemented, restated or otherwise modified and as in effect on the Commencement Date, the "**Prepetition Non-Specified Intercreditor Agreement**") among Goldman Sachs Bank USA, as ABL agent, and U.S. Bank National Association, as term debt trustee, that certain Intercreditor and Collateral Access Agreement, dated as of June 29, 2018 (as amended, supplemented, restated or otherwise modified and as in effect on the Commencement Date, the "**Prepetition Specified Intercreditor Agreement**" and together with the Prepetition Non-Specified Intercreditor Agreement, the "**Prepetition Intercreditor Agreements**") among Goldman Sachs Bank USA, as ABL agent, and U.S. Bank National Association, as term debt trustee, that certain Second Amended and Restated Collateral Trust Agreement, dated as of

June 29, 2018 (as amended, supplemented, restated or otherwise modified and as in effect on the Commencement Date, the "**Prepetition Non-Specified Collateral Trust Agreement**") among Murray Energy Corporation, as borrower, the grantors from time to time party thereto, GLAS Trust Company LLC, as superpriority lien administrative agent, each additional superpriority lien representative, Black Diamond Commercial Finance, L.L.C., as successor priority lien administrative agent, each additional priority lien representative, The Bank of New York Mellon Trust Company, N.A., as 12.00% superparity trustee, The Bank of New York Mellon Trust Company, N.A., as 9.50% superparity trustee, each additional superparity lien representative, The Bank of New York Mellon Trust Company, N.A., as 11.25% parity trustee, each additional parity lien representative, each midparity lien representative, J. Aron & Company, as an existing designated coal contract counterparty, Javelin Global Commodities (UK) Ltd., as an existing designated coal contract counterparty, Uniper Global Commodities UK Limited, as an existing designated coal contract counterparty and U.S. Bank National Association, as collateral trustee (solely in such capacity, the "**Prepetition Non-Specified Collateral Trustee**") and that certain Specified Collateral Trust Agreement, dated as of June 29, 2018 (as amended, supplemented, restated or otherwise modified and as in effect on the Commencement Date, the "**Prepetition Specified Collateral Trust Agreement**", together with the Prepetition Non-Specified Collateral Trust Agreement, the "**Prepetition Collateral Trust Agreements**") among Murray Energy Corporation, as borrower, the grantors from time to time party thereto, GLAS Trust Company LLC, as superpriority lien administrative agent, each additional superpriority lien representative, The Bank of New York Mellon Trust Company, N.A., as superparity trustee, each additional superparity lien representative, each midparity lien representative, J. Aron & Company, as an existing designated coal contract counterparty, Javelin Global Commodities (UK) Ltd., as an

28

existing designated coal contract counterparty, Uniper Global Commodities UK Limited, as an existing designated coal contract counterparty and U.S. Bank National Association, as collateral trustee (solely in such capacity, the "**Prepetition Specified Collateral Trustee**" and in its capacities as the Prepetition Specified Collateral Trustee and the Prepetition Non-Specified Collateral Trustee, the "**Prepetition Collateral Trustee**"), all of which govern, among other things, the relative priorities of the Prepetition Liens in respect of the applicable Prepetition Collateral, are binding and enforceable against the Prepetition Borrower, the Prepetition Superpriority/Superparity Guarantors and the Prepetition Secured Parties in accordance with their terms, and the Prepetition Borrower, the Prepetition Superpriority/Superparity Guarantors and the Prepetition Secured Parties are not entitled to take any action that would be contrary to the provisions thereof; and

(l)      all cash, securities or other property of the Credit Parties (and the proceeds therefrom) as of the Commencement Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Credit Parties in any account or accounts (collectively, the "**Depository Institutions**") were subject to any applicable rights of set-off under the Prepetition Credit Documents and applicable law, for the benefit of the Prepetition Secured Parties.   All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Commencement Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

8.      *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(a)      Good and sufficient cause has been shown for the entry of this Final Order and for authorization of the Credit Parties to obtain financing pursuant to the DIP Facility.

(b)      The Credit Parties have a need to obtain the DIP Financing and to continue to use the Prepetition Collateral (including Cash Collateral) in order to, among other things, avoid the liquidation of these estates, and:  (i) permit the orderly continuation of the operation of their businesses, including maintaining, amending, renewing, or modifying insurance policies and surety bonds in the ordinary course of business, (ii) maintain business relationships with customers, vendors and suppliers, including purchasing necessary materials and services to maintain compliance with all applicable regulatory and safety requirements, (iii) make payroll, (iv) satisfy other working capital, capital improvement and operational needs, (v) pay professional fees, expenses, and obligations benefitting from the Carve-Out, and (vi) pay costs, fees, and expenses associated with or payable under the DIP Financing under the terms of the Interim Order, this Final Order, and the DIP Documents.  The Credit Parties' use of Cash Collateral alone would be insufficient to meet the Debtors' cash disbursement needs during the pendency of the Chapter 11 Cases.  The access by the Credit Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to avoid an immediate liquidation and for the preservation and maintenance of the going concern values of the Credit Parties and to a successful restructuring of the Credit Parties. The terms of the proposed DIP Financing pursuant to the DIP Documents and this Final Order are fair and reasonable, reflect each Credit Party's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

30

(c)     The Credit Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Credit Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Credit Parties granting to the DIP Secured Parties, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and, subject to the Carve-Out, incurring the Adequate Protection Obligations (as defined below), in each case, under the terms and conditions set forth in this Final Order and in the DIP Documents.

(d)     Based on the Motion, the Declarations filed in support of the Motion, and the record presented to the Court at the Hearings, (i) the terms of the DIP Financing (including the refinancing of the Prepetition ABL Revolving Debt, the full roll-up of the Prepetition FILO Debt, and the maintenance of the Outstanding LCs), (ii) the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 21 of this Final Order (the "**Adequate Protection**") and (iii) the terms on which the Credit Parties may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to this Final Order and the DIP Documents, are in each case fair and reasonable, reflect the Credit Parties' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing available.  The Adequate Protection provided in this Final Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(e)     To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed under the Prepetition Intercreditor Agreements and the Prepetition

Collateral Trust Agreements to have consented to the Credit Parties' use of Cash Collateral and the other Prepetition Collateral, and the Credit Parties' entry into the DIP Documents, in accordance with and subject to the terms and conditions in this Final Order and the DIP Documents.

(f)      The DIP Financing, the Adequate Protection and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Credit Parties, the DIP Secured Parties, and their respective advisors, and all of the Credit Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation, all loans made to and guarantees issued by the Credit Parties pursuant to the DIP Documents and any DIP Obligations shall be deemed to have been extended by the DIP Agents and the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order or any provisions thereof, or this Final Order or any provisions hereof, are vacated, reversed or modified, on appeal or otherwise.

(g)      The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Credit Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Credit Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens (as defined herein)), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that the Interim Order or any

32

provision thereof, or this Final Order or any provisions hereof, are vacated, reversed or modified, on appeal or otherwise.

(h)     The Prepetition Secured Parties are entitled to the Adequate Protection provided in this Final Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion, the Declarations filed in support of the Motion, and the record presented to the Court at the Hearings, the terms of the proposed Adequate Protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Credit Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral (including Cash Collateral); *provided* that nothing in this Final Order or the DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order and the Approved Cash Flow Forecast (subject to permitted variances) and in the context of the DIP Financing authorized by this Final Order, (y) be construed as a consent by any Prepetition Secured Party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Prepetition Intercreditor Agreements and the Prepetition Collateral Trust Agreements, to seek modification of the grant of the Adequate Protection provided hereby so as to provide new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties, and without prejudice to the right of the Debtors and any other party in interest's rights to contest such modification.

(i)     None of the DIP Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are

33

conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from this Final Order or the DIP Documents.

(j)     The Debtors have prepared and delivered to the DIP Agents and the DIP Secured Parties a 13-week cash flow forecast (the "**Initial Cash Flow Forecast**"), a copy of which is attached hereto as **Exhibit 1**.  The Initial Cash Flow Forecast reflects the Debtors' anticipated cash receipts and anticipated disbursements for the calendar week during which the Commencement Date occurs and through and including the end of the twelfth (12th) calendar week following such week.  The Initial Cash Flow Forecast may be modified, amended and updated from time to time in accordance with the DIP Credit Agreement, and once approved by, in form and substance reasonably satisfactory to the DIP Term Requisite Lenders,[15] shall supplement and replace the Initial Cash Flow Forecast (together with each subsequent approved 13-week cash flow forecast, shall constitute without duplication, an "**Approved Cash Flow Forecast**").  The Debtors believe that the Initial Cash Flow Forecast is reasonable under the facts and circumstances known to them, taken as a whole, as of the Commencement Date.  The DIP Agents and the DIP Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Approved Cash Flow Forecast, the other DIP Documents, and this Final Order in determining to enter into the postpetition financing arrangements provided for in this Final Order.

(k)     The refinancing of the Prepetition ABL Revolving Debt, the full roll-up of the Prepetition FILO Debt, and the maintenance of the Outstanding LCs reflect the Debtors' good faith exercise of prudent business judgment consistent with their fiduciary duties.  The entry into the Payoff Letter and funding and maintenance of the LC Cash Collateral in accordance therewith

---

[15] "**DIP Term Requisite Lenders**" means "Requisite Term Lenders" as defined in the DIP Credit Agreement.

reflect the Debtors' good faith exercise of prudent business judgment consistent with their fiduciary duties.

(l)    For the reasons set forth in the Motion, the Declarations filed in support of the Motion, and the record presented to the Court at the Hearings, consummation of the DIP Financing and the use of Prepetition Collateral (including Cash Collateral), in accordance with this Final Order and the DIP Documents are therefore in the best interests of the Credit Parties, their estates and their creditors.

(m)    The Motion and this Final Order comply with the requirements of Local Bankruptcy Rule 4001-2.

9.    *Authorization of the DIP Financing and the DIP Documents.*

(a)    Subject to the terms and conditions of this Final Order, the Credit Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents. The DIP Documents and this Final Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders and Designated Coal Contract Counterparties in connection with the DIP Financing.  The Borrower is hereby authorized to forthwith borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guarantee the Credit Parties' DIP Obligations with respect to such borrowings and Secured Designated Coal Contract Obligations (as defined in the DIP Credit Agreement), in each case up to an aggregate principal amount equal to $350 million DIP Term Loans, inclusive of amounts authorized by the Interim Order, and in each case together with applicable interest, protective advances, expenses, fees and other charges payable in connection the DIP Facility, subject to any limitations on borrowing or incurrence under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents and this Final Order, including, without limitation, (1) to provide

working capital and capital improvements, to fund vendor payments and to pay for other general corporate purposes for the Borrower and certain of its Subsidiaries (as defined in the DIP Credit Agreement), (2) to pay interest, fees and expenses and make adequate protection and other payments in accordance with this Final Order and the DIP Documents, (3) to refinance the Prepetition ABL Revolving Debt, and (4) to fund and maintain LC Cash Collateral in accordance with the Payoff Letter.  Notwithstanding anything to the contrary herein, the DIP Term Loans, and all cash proceeds thereof, shall at no time constitute DIP FILO Priority Collateral or Prepetition ABL Priority Collateral and shall at all times constitute DIP Term Priority Collateral, whether or not such DIP Term Loans or the cash proceeds thereof are located in or transferred to an account that constitutes DIP FILO Priority Collateral, and whether or not such DIP Term Loans or the cash proceeds thereof are commingled with any other cash or assets of the Debtors that constitute DIP FILO Priority Collateral.

(b)      In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of pledge and security agreements, mortgages, deeds of trust and financing statements), and to pay all fees that may be reasonably required or necessary for the Credit Parties to implement the terms of, performance of their obligations under or effectuate the purposes of and transactions contemplated by this Final Order or the DIP Financing, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Documents;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each

case, in such form as the Credit Parties and the DIP Administrative Agent, acting at the direction

of the DIP Requisite Lenders,[16] DIP FILO Requisite Lenders[17] or DIP Term Requisite Lenders, as

applicable pursuant to the terms of the DIP Documents, may agree, it being understood that no

further approval of the Court shall be required for authorizations, amendments, waivers, consents

or other modifications to and under the DIP Documents (and any fees and other expenses

(including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges,

costs, indemnities and other obligations paid in connection therewith) that do not shorten the

maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate

of interest payable thereunder; *provided*, for the avoidance of doubt, updates and supplements to

the Approved Cash Flow Forecast required to be delivered by the Credit Parties under the DIP

Documents shall not be considered amendments or modifications to the Approved Cash Flow

Forecast or the DIP Documents; *provided, further*, that a copy (which may be provided through

electronic mail or facsimile) of the substantial final form of the amendment, modification, or

supplement shall be provided to counsel to the Creditors' Committee two (2) calendar days prior

to its execution or as soon as reasonably practicable if two (2) calendar days' advance notice is

impracticable; *provided, further*, that if the Creditors' Committee objects to such amendment,

modification, or supplement, the Creditors' Committee may seek a hearing on expedited notice in

respect of any such objection and, if such a hearing is sought, such amendment, modification, or

supplement shall not be effective absent further order of the Court;

        (iii)     the non-refundable and, upon entry of the Interim Order, irrevocable

payment to the DIP Agents and/or the DIP Lenders, as the case may be, of all fees, whether paid

---

[16] "**DIP Requisite Lenders**" means "Requisite Lenders" as defined in the DIP Credit Agreement.

[17] "**DIP FILO Requisite Lenders**" means "Requisite Roll-Up Lenders" as defined in the DIP Credit Agreement.

pursuant to the Interim Order or this Final Order, including, without limitation, any closing date

fee, upfront fee, exit fee, prepayment fee or agency fee (which fees, in each case, were, and were

deemed to have been, approved upon entry of the Interim Order, and which fees shall not be subject

to any challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset,

subordination, recharacterization, avoidance or other claim, cause of action or other challenge of

any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and

any amounts due (or that may become due) in respect of the indemnification obligations, in each

case referred to in the DIP Credit Agreement (and in any separate letter agreements between any

or all Credit Parties, on the one hand, and any of the DIP Agents and/or DIP Lenders, on the other,

in connection with the DIP Financing) and the costs and expenses as may be due from time to time,

including, without limitation, fees and expenses of the following professionals retained by the DIP

Agents and/or DIP Lenders, whether incurred before or after the Commencement Date: (i) Wilmer

Cutler Pickering Hale and Dorr LLP, counsel to the DIP Agents, (ii) one local bankruptcy counsel

to the DIP Agents in the Southern District of Ohio, and, solely to the extent necessary to enforce

rights and remedies under the DIP Documents, one counsel to the DIP Agents in each local

jurisdiction, in each case which counsel may be the same as counsel representing the Ad Hoc

Group of Superpriority Lenders (as defined below) in such capacity, (iii) Davis Polk & Wardwell

LLP, counsel to the ad hoc group of certain Prepetition Superpriority Lenders and DIP Term

Lenders (the "**Ad Hoc Group of Superpriority Lenders**"), (iv) Frost Brown Todd LLC, as local

counsel for the Ad Hoc Group of Superpriority Lenders; (v) Houlihan Lokey Capital, Inc.,

financial advisor to the Ad Hoc Group of Superpriority Lenders; (vi) Drinker Biddle & Reath LLP,

as special labor counsel for the Ad Hoc Group of Superpriority Lenders; (vii) any other advisors

retained by the Ad Hoc Group of Superpriority Lenders; (viii) Sidley Austin LLP, counsel to the

Prepetition FILO Lender and DIP FILO Lender, (ix) local bankruptcy counsel to the Prepetition FILO Lender and DIP FILO Lender in the Southern District of Ohio, and (x) one financial advisor to the Prepetition FILO Lender and DIP FILO Lender, and (x) in each case of the foregoing (i)-(x), solely to the extent provided for in the DIP Documents (the "**DIP Fees and Expenses**"), without the need to file retention motions or fee applications or to provide notice to any party, but subject to the provisions of paragraph 29 hereof; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens and DIP Superpriority Claims as permitted herein and therein.

(c)     Upon execution and delivery of the DIP Documents, each of the DIP Documents shall constitute valid, binding, enforceable, and non-avoidable obligations of the Credit Parties, fully enforceable against each Credit Party in accordance with the terms of the DIP Documents and this Final Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Final Order to the DIP Agents (including their Representatives) and/or the DIP Lenders and other DIP Secured Parties (including their Representatives) shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, or offset.

(d)     No DIP Lender, Designated Coal Contract Counterparty, DIP Administrative Agent or the DIP Collateral Agent shall have any obligation or responsibility to monitor any Credit Party's use of the DIP Financing, and each DIP Lender, each Designated Coal

Contract Counterparty, or each DIP Agent may rely upon each Credit Party's representations that

the amount of DIP Financing requested at any time and the use thereof are in accordance with the

requirements of this Final Order and the DIP Documents.

(e)     Subject to the terms and conditions of this Final Order, the DIP Agents are

hereby authorized and directed to execute, enter into and perform all rights and obligations under

the DIP Documents.

10.     *Authorization of the Payoff Letter.*

(a)     Subject to the terms and conditions of this Final Order, the Credit Parties

are hereby authorized to execute, enter into and perform all obligations under the Payoff Letter.

The Payoff Letter and this Final Order shall govern the financial and credit accommodations to be

provided to the Debtors by the Outstanding LC Issuer in connection with the Outstanding LCs.  In

furtherance of the foregoing and without further approval of this Court, each Debtor is authorized

to perform all acts, to make, execute and deliver all instruments and documents and to pay all fees

that may be reasonably required or necessary for the Credit Parties to implement the terms of,

perform their obligations under, or effectuate the purposes of and transactions contemplated by

this Final Order and the Payoff Letter, and the rights of the Outstanding LC Issuer under the Payoff

Letter, the Prepetition ABL Credit Documents, and this Final Order are fully preserved.

(b)     Subject to the rights set forth in paragraph 31 below,  the Payoff Letter

constitutes a valid, enforceable, and non-avoidable obligation of the Credit Parties, fully

enforceable against each Credit Party in accordance with the terms of the Payoff Letter and this

Final Order.  Except as provided in footnote 6 hereof, no obligation, payment, transfer or grant of

security under the Payoff Letter or this Final Order to the Prepetition ABL Agent (on behalf of the

Outstanding LC Issuer) or the Outstanding LC Issuer (including their Representatives) shall be

stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law

(including, without limitation, under sections 502(d), 544, 548 or 549 of the Bankruptcy Code, any

applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar

state statute or common law), or subject to any defense, reduction, recoupment, recharacterization,

subordination, disallowance, impairment, cross-claim, claim, counterclaim, or offset.

(c)      All of the outstanding obligations with respect to the Prepetition ABL

Revolving Debt were refinanced by proceeds of the DIP Term Loans.

(d)      The Debtors made a payment to the Prepetition ABL Agent, for the benefit

of the Outstanding LC Issuer, to increase the amount of LC Cash Collateral to equal 103% of the

face amount of Outstanding LCs, which amount of funding the Debtors shall maintain at all times

and replenish if amounts are paid or applied from LC Cash Collateral in accordance with the terms

of the Final Order and the Payoff Letter.

11.      *Roll-Up of Prepetition FILO Debt into DIP FILO Obligations; Maintenance of*

*Outstanding LCs.*  Upon entry of the Interim Order and the occurrence of the Closing Date, without

any further action by the Debtors or any other party, all Prepetition Letters of Credit continued in

place and all obligations under or in connection with such Prepetition Letters of Credit were

deemed Outstanding LCs.  Upon entry of the Interim Order and the occurrence of the Closing Date,

without any further action by the Debtors or any other party, all outstanding Prepetition FILO Debt

was converted into DIP FILO Loans.   The conversion (or "roll-up") was authorized as

compensation for, in consideration for, and solely on account of, the agreement of the Prepetition

FILO Lender to remove or otherwise waive certain reporting obligations and covenants otherwise

required by the Prepetition FILO Debt and the agreement of the Prepetition LC Issuer to provide

other consideration during these Chapter 11 Cases and not as payments under, adequate protection

for, or otherwise on account of, any Prepetition FILO Debt or Prepetition Letters of Credit. Notwithstanding any other provisions of the Interim Order, this Final Order or the DIP Documents, all rights of the Prepetition ABL Secured Parties shall be fully preserved.  The Prepetition ABL Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to any DIP Liens, and the DIP Agents and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder without the inclusion of the DIP FILO Obligations and the Outstanding LCs. Moreover, the roll-up of all outstanding Prepetition FILO Debt into DIP FILO Loans and all Prepetition Letters of Credit into Outstanding LCs has enabled the Debtors to obtain urgent financing that is needed to administer these Chapter 11 Cases and fund their operations. Because the DIP FILO Obligations are subject to the reservation of rights set forth in paragraph 31 below, they will not prejudice the right of any other party in interest.

12. *Carve-Out*.

(a) Notwithstanding anything to the contrary herein, the Debtors' obligations to the DIP Secured Parties and the liens, security interests and superpriority claims granted herein and/or under the DIP Documents, including the DIP Liens, DIP Priming Liens, the DIP Superpriority Claims, the Superpriority Adequate Protection Liens, and the Superpriority 507(b) Claims, shall be subject in all respects and subordinate to the Carve-Out; *provided, however*, that solely in the case of the Liens and Claims on the DIP FILO Priority Collateral and the Prepetition ABL Priority Collateral, the amount of the Carve-Out shall be capped at the amount of the Term Loan ABL Collateral Cap.

(b) Carve-Out.  As used in this Final Order, the "**Carve-Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States

Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory

rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up

to $50,000.00 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard

to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim

order, procedural order, or otherwise, all unpaid fees and expenses (including any restructuring,

sale, financing, or other success fee of any investment bankers or financial advisors of the Debtors

or the Creditors' Committee, in each case solely to the extent such fee is earned pursuant to the

terms of the applicable agreement giving rise to such fee, prior to delivery of a Carve-Out Trigger

Notice) (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors

pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and

the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the

"**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional**

**Persons**") at any time before or on the first business day following delivery by the DIP

Administrative Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the

Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees

of Professional Persons in an aggregate amount not to exceed $7,500,000.00 incurred after the first

business day following delivery by the DIP Administrative Agent of the Carve-Out Trigger Notice,

to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the

amounts set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**"); *provided,*

*however*, that solely with respect to the DIP FILO Priority Collateral and the Prepetition ABL

Priority Collateral (other than the LC Cash Collateral), the "Carve-Out" shall mean the sum of

(i) through (iv) up to the amount of the Term Loan ABL Collateral Cap.  For purposes of the

foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other

43

electronic means) by the DIP Administrative Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facilities, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(c)     Carve-Out Reserves.  The Debtors shall establish and fund a segregated account (the "**Funded Reserve Account**") for purposes of funding the Carve-Out.  The Funded Reserve Account will be funded first from the DIP Term Funding Account,[18] then from the DIP FILO Priority Collateral (up to the Term Loan ABL Collateral Cap) and the DIP Term Priority Collateral; *provided* that any funding of the Funded Reserve Account from DIP FILO Priority Collateral shall reduce, on a dollar-for-dollar basis, the amount of DIP Term Superpriority Claims secured by the DIP Term Priming Lien (as defined below).  Notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Prepetition Credit Documents, (i) in no circumstances (which, for the avoidance of doubt, includes but is not limited to an Event of Default or a termination of the DIP Credit Agreement or DIP Documents) shall the Debtors be prohibited in any way from accessing or drawing upon the DIP Term Funding Account for the purpose of funding the Funded Reserve Account, and (ii) the DIP Term Funding Account shall not be DIP FILO/LC Priority Collateral (as defined below) or Prepetition ABL Priority Collateral.  Upon entry of the Interim Order, the Debtors deposited in the Funded Reserve Account an amount equal to the aggregate amount of Allowed Professional Fees projected to accrue from the Commencement Date through November 30, 2019 (the "**Initial Funded Reserve Amount**").  Commencing

---

[18]   "**DIP Term Funding Account**" means the segregated account in which the proceeds of the DIP Term Loans are funded.

December 1, 2019 (or the first business day thereafter), on the first business day of each month, the Debtors shall deposit in the Funded Reserve Account an amount equal to the aggregate amount of Allowed Professional Fees projected to accrue for the following month in the Approved Cash Flow Forecast *plus* twenty percent of such aggregate amount of Allowed Professional Fees projected to accrue in the following month in the Approved Cash Flow Forecast (the "**Monthly Funded Reserve Amount**").  Each Professional Person may deliver to the Debtors a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred in preceding month (each such statement, a "**Fee Statement**"), and to the extent the amount of Allowed Professional Fees accrued and claimed in a Fee Statement exceeds the Initial Funded Reserve Amount or the Monthly Funded Reserve Amount for the applicable period or month, respectively, and such fees and expenses have otherwise not been paid by the Debtors, the Debtors shall, within one business day, fund additional amounts into the Funded Reserve Account equal to the difference between, as applicable, the Initial Funded Reserve Amount or the Monthly Funded Reserve Amount and the amount accrued and claimed in the applicable Fee Statement (each, a "**Top Off Amount**").  At any time, if the Debtors in good faith believe a restructuring, sale, financing, or other success fee has been earned by a Professional Person, the Debtors shall deposit in the Funded Reserve Account an amount equal to such fee.  The Funded Reserve Account shall be maintained, and the funds therein (the "**Funded Reserve Amount**") shall be held in trust for the benefit of Professional Persons.  Any and all amounts in the Funded Reserve Account shall not be subject to any cash sweep and/or foreclosure provisions in the Prepetition Credit Documents or DIP Documents and neither the Prepetition Secured Parties nor the DIP Secured Parties shall be entitled to sweep or foreclose on such amounts notwithstanding any provision to the contrary in the Prepetition Credit Documents or DIP Financing Agreements.

(d)      On the day on which a Carve-Out Trigger Notice is given by the DIP Administrative Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "**Termination Declaration Date**"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees in excess of the Funded Reserve Amount; *provided* that in the event that a Termination Declaration Date occurs, Professional Persons shall have 2 business days to deliver additional Fee Statements to the Debtors, and the Debtors shall fund into the Funded Reserve Amount any Top Off Amounts; *provided, further*, that any funding from DIP FILO Priority Collateral after the Termination Declaration Date shall be *solely* up to the Term Loan ABL Collateral Cap.  The Debtors shall deposit and hold such amounts in the Funded Reserve Account in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve-Out Trigger Notice Reserve**") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve-Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve-Out Trigger Notice Cap (the "**Post-Carve-Out Trigger Notice Reserve**" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "**Carve-Out Reserves**") prior to any and all other claims; *provided, further*, that any funding from DIP FILO Priority Collateral after the Termination Declaration Date shall be *solely* up to the Term Loan ABL Collateral Cap.  All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "**Pre-Carve-Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve

46

has not been reduced to zero, to pay the DIP Administrative Agent for the benefit of the DIP

Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP

Commitments (as defined and used in the DIP Credit Agreement) (the "**DIP Commitments**") have

been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in

accordance with their rights and priorities as of the Commencement Date.  All funds in the Post-

Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause

(iv) of the definition of Carve-Out set forth above (the "**Post-Carve-Out Amounts**"), and then, to

the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP

Administrative Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been

indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case

any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and

priorities as of the Commencement Date.  Notwithstanding anything to the contrary in the DIP

Documents or this Final Order, if either of the Carve-Out Reserves is not funded in full in the

amounts set forth in this paragraph 12(d), then, any excess funds in one of the Carve-Out Reserves

following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively,

shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth in this

paragraph 12(d), prior to making any payments to the DIP Administrative Agent or the Prepetition

Secured Parties, as applicable.  Notwithstanding anything to the contrary in the DIP Documents or

this Final Order, following delivery of a Carve-Out Trigger Notice, the DIP Administrative Agent

and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received

as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves

have been fully funded, but shall have a security interest in any residual interest in the Carve-Out

Reserves, with any excess paid to the DIP Administrative Agent for application in accordance with

47

the DIP Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Approved Cash Flow Forecast, Carve-Out, Post-Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP Facilities or in any Prepetition Credit Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facilities, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Debt; *provided, however*, that solely in the case of liens and claims on the DIP FILO Priority Collateral and the Prepetition ABL Priority Collateral, the amount of the Carve-Out shall be capped at the amount of the then-outstanding Term Loan ABL Collateral Cap.

(e)      Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(f)      No Direct Obligation To Pay Allowed Professional Fees.  None of the DIP Agents, DIP Lenders, Designated Coal Contract Counterparties, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agents, the DIP Lenders, the Designated Coal Contract Counterparties, or the

48

Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(g)     <u>Payment of Carve-Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

13.     *DIP Superpriority Claims.*

(a)     *<u>DIP Term Superpriority Claims</u>*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Term Obligations shall constitute allowed superpriority administrative expense claims against the Credit Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against each of the Credit Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Term Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Term Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Credit Parties and all proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance

49

Proceeds) in accordance with the DIP Credit Agreement and this Final Order, subject only to (i)

the Carve-Out, (ii) solely with respect to the DIP FILO Priority Collateral, except to the extent of,

in the case of the DIP Term Obligations, the Term Loan ABL Collateral Cap, the claims of the

DIP FILO Secured Parties arising under the DIP Credit Agreement, and (iii) solely with respect to

the Prepetition ABL Priority Collateral, the claims of the Prepetition ABL Secured Parties arising

under the Prepetition ABL Credit Documents.  The DIP Term Superpriority Claims shall be

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final

Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  Subject to

the Carve-Out in all respects, the DIP Term Superpriority Claims shall be senior to the Adequate

Protection 507(b) Claims (as defined below).

(b)     *DIP FILO Superpriority Claims*.  Pursuant to section 364(c)(1) of the

Bankruptcy Code, all of the DIP FILO  Obligations shall constitute allowed superpriority

administrative expense claims against the Credit Parties on a joint and several basis (without the

need to file any proof of claim) with priority over any and all claims against each of the Credit

Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation,

all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy

Code and any and all administrative expenses or other claims arising under sections 105, 326, 328,

330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code

(including the Adequate Protection Obligations), whether or not such expenses or claims may

become secured by a judgment lien or other non-consensual lien, levy or attachment, which

allowed claims (the "**DIP FILO Superpriority Claims**," and together with the DIP Term

Superpriority Claims, the "**DIP Superpriority Claims**") shall for purposes of section

1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under

section 503(b) of the Bankruptcy Code, and which DIP FILO Superpriority Claims shall be

payable from and have recourse to all pre- and postpetition property of the Credit Parties and all

proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance

Proceeds) in accordance with the DIP Credit Agreement and this Final Order, subject only to (i)

the Carve-Out solely to the extent of the Term Loan ABL Collateral Cap, (ii) solely with respect

to the DIP Term Priority Collateral, the claims of the DIP Term Secured Parties arising under the

DIP Credit Agreement, (iii) solely with respect to the DIP FILO Priority Collateral, the claims of

the DIP Term Secured Parties solely to the extent of the Term Loan ABL Collateral Cap, and (iv)

solely with respect to the Prepetition Term Priority Collateral, the claims of the Prepetition Term

Secured Parties arising under the Prepetition Term Credit Documents.   The DIP FILO

Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy

Code in the event that the Interim Order or any provision thereof, or this Final Order or any

provision hereof, is vacated, reversed or modified, on appeal or otherwise.   Subject to the Carve-

Out in all respects, the DIP FILO Superpriority Claims shall be senior to the Adequate Protection

507(b) Claims (as defined below).

14.     *DIP Liens.*

(a)     <u>*DIP Term Liens.*</u>   As security for the DIP Term Obligations, effective and

perfected upon the date of the Interim Order and without the necessity of the execution, recordation

or filing by the Credit Parties or the DIP Collateral Agent of mortgages, security agreements,

control agreements, pledge agreements, financing statements or other similar documents, any

notation of certificates of title for a titled good or the possession or control by the DIP Collateral

Agent of, or over, any DIP Term Collateral, the following security interests and liens (all such

liens and security interests granted to the DIP Collateral Agent, for its benefit and for the benefit

51

of the DIP Term Lenders and Designated Coal Contract Counterparties, pursuant to this Final

Order and the DIP Documents, the "**DIP Term Liens**") are hereby granted to the DIP Collateral

Agent for its own benefit and the benefit of the DIP Term Lenders and the Designated Coal

Contract Counterparties (all property identified in clauses (i)-(iii) below being collectively referred

to as the "**DIP Term Collateral**")[19]:

   (i) <u>Liens on Unencumbered Property</u>.  Subject and subordinate in all respects

to the Carve-Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding,

continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all

tangible and intangible pre- and postpetition property of the Credit Parties, whether existing on the

Commencement Date or thereafter acquired, and the proceeds, products, rents, and profits thereof,

that, on or as of the Commencement Date, is not subject to a valid, perfected and non-avoidable

lien or is subject to a valid and non-avoidable lien in existence as of the Commencement Date that

is perfected subsequent to the Commencement Date as permitted by section 546(b) of the

Bankruptcy Code, including, without limitation, any and all unencumbered cash of the Credit

Parties (whether maintained with the DIP Collateral Agent or otherwise) and any investment of

such cash, inventory, accounts receivable, other rights to payment whether arising before or after

the Commencement Date, contracts, properties, plants, fixtures, machinery, equipment, general

intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real

properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license

agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the

proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the

---

[19] Notwithstanding anything to the contrary herein, the DIP Term Collateral shall not include any Excluded Assets (as defined in the DIP Credit Agreement).

Bankruptcy Code or otherwise, of all the foregoing (the "**Unencumbered Property**"), in each case

other than the Avoidance Actions (but including, without limitation, Avoidance Proceeds), but in

each case subject and subordinate in all respects to the Carve-Out;

(ii)     Liens Priming Certain Prepetition Secured Parties' Liens.   Pursuant to

section 364(d)(1) of the Bankruptcy Code, and subject and subordinate in all respects to the

Carve-Out, a valid, binding, continuing, enforceable, fully-perfected first priority priming security

interest in and lien upon all pre- and postpetition property of the Credit Parties of the same nature,

scope, and type as the Prepetition Term Priority Collateral (the "**DIP Term Priority Collateral**"),

regardless of where located, regardless of whether or not any liens on such assets are voided,

avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the

Prepetition Liens (the "**DIP Term Priming Liens**").   Notwithstanding anything herein to the

contrary, the DIP Term Priming Liens shall be (A) subject and junior to the Carve-Out in all

respects and shall otherwise be junior only to Prepetition Permitted Prior Liens and Permitted

Liens, (B) senior in all respects to the other Prepetition Liens on DIP Term Priority Collateral,

(C) senior to any Adequate Protection Liens on DIP Term Priority Collateral and (D) not

subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit

of the Debtors and their estates under section 551 of the Bankruptcy Code.   The Prepetition Liens

with respect to the Prepetition Term Priority Collateral shall be primed by and made subject and

subordinate to the Carve-Out and the DIP Term Priming Liens;

(iii)     Liens Junior to Certain Other Liens.   Pursuant to section 364(c)(3) of the

Bankruptcy Code, and subject and subordinate in all respects to the Carve-Out and the DIP FILO

Liens, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien

upon pre- and postpetition property of the Credit Parties of the same nature, scope and type as the

Prepetition ABL Priority Collateral (other than the LC Cash Collateral (the "**LC Priority Collateral**")) (the "**DIP FILO Priority Collateral**" and, together with the LC Priority Collateral, the "**DIP FILO/LC Priority Collateral**") that, on or as of the Commencement Date, is subject to valid, perfected and non-avoidable senior Prepetition ABL Liens and Prepetition ABL Permitted Prior Liens (but senior, and not junior, to the Prepetition Term Liens secured by the Prepetition ABL Priority Collateral) or valid and non-avoidable senior liens in existence immediately prior to the Commencement Date that are perfected subsequent to the Commencement Date as permitted by section 546(b) of the Bankruptcy Code; *provided*, that the DIP Term Liens on the DIP FILO Priority Collateral securing DIP Term Loans in the amount of the Term Loan ABL Collateral Cap shall not be subject and subordinate, and shall be senior, to the DIP FILO Liens on the DIP FILO Priority Collateral *provided*, that nothing in the foregoing shall limit the rights of the DIP Term Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder;

(iv)     <u>Liens Senior to Certain Other Liens</u>.  The DIP Term Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Credit Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Final Order, any liens or security interests arising after the Commencement Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Credit Parties, or (C) any intercompany or affiliate liens of the Credit Parties or security interests of the Credit Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

(b)     *DIP FILO Liens*.  As security for the DIP FILO Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation or filing by the Credit Parties or the DIP Collateral Agent of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good or the possession or control by the DIP Collateral Agent of, or over, any DIP Collateral of the Credit Parties, the following security interests and liens (all such liens and security interests granted to the DIP Collateral Agent, for its benefit and for the benefit of the DIP FILO Lender, pursuant to this Final Order and the DIP Documents, the "**DIP FILO Liens**," and together with the DIP Term Liens, the "**DIP Liens**") are hereby granted to the DIP Collateral Agent for its own benefit and the benefit of the DIP FILO Lender (all property identified in clauses (i)-(iii) below being collectively referred to as the "**DIP FILO Collateral**," and together with the DIP Term Collateral, the "**DIP Collateral**")[20]:

(i)     Liens Priming Certain Prepetition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve-Out and the DIP Term Liens on the DIP FILO Priority Collateral securing DIP Term Loans in both cases, up to the amount of the Term Loan ABL Collateral Cap, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all pre- and postpetition property of the Credit Parties of the same nature, scope and type as the Prepetition ABL Priority Collateral, regardless of where located, regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the Prepetition Liens (the "**DIP FILO Priming Liens**," and together with the DIP

[20] Notwithstanding anything to the contrary herein, the DIP FILO Collateral shall not include any Excluded Assets (as defined in the DIP Credit Agreement).

Term Priming Liens, the "**DIP Priming Liens**").  Notwithstanding anything herein to the contrary, the DIP FILO Priming Liens shall (A) be junior only to Prepetition Permitted Prior Liens and Permitted Liens, (B) be senior in all respects to the other Prepetition Liens on Prepetition ABL Priority Collateral (other than LC Cash Collateral), (C) be senior to any Adequate Protection Liens on Prepetition ABL Priority Collateral and (D) not be subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.  The Prepetition Liens with respect to the Prepetition ABL Priority Collateral (other than the LC Cash Collateral) shall be primed by and made subject and subordinate to the DIP FILO Priming Liens.  The Prepetition Liens with respect to the Prepetition ABL Priority Collateral (other than the LC Cash Collateral) shall be primed by and made subject and subordinate to the DIP FILO Priming Liens; and

(ii)     <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve-Out and the DIP Term Liens, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon pre- and postpetition property of the Credit Parties of the same nature, scope and type as the Prepetition Term Priority Collateral that, on or as of the Commencement Date, is subject to valid, perfected and non-avoidable senior Prepetition Term Liens and Prepetition Term Permitted Prior Liens (but senior, and not junior, to the Prepetition ABL Liens secured by the Prepetition Term Priority Collateral) or valid and non-avoidable senior liens in existence immediately prior to the Commencement Date that are perfected subsequent to the Commencement Date as permitted by section 546(b) of the Bankruptcy Code; *provided*, that nothing in the foregoing shall limit the rights of the DIP FILO Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder;

56

(iii)   <u>Liens Senior to Certain Other Liens</u>.  The DIP FILO Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Credit Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Final Order, any liens or security interests arising after the Commencement Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Credit Parties, or (C) any intercompany or affiliate liens of the Credit Parties or security interests of the Credit Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

(c)   <u>Specified Leases</u>.  Notwithstanding anything to the contrary in the Motion, the DIP Documents, or this Final Order, for purposes of this Final Order, in no event shall the DIP Collateral include or the DIP Liens or Adequate Protection Liens granted under this Final Order attach to any lease or other real property right, to which any Debtor is a party or any of such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in:  (x) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of any Debtor therein, or (y) a breach or termination pursuant to the terms of, or a default under, any such lease or other real property right pursuant to any provision thereof, unless, in the case of each of clauses (x) and (y), the applicable provision is rendered ineffective, unenforceable, and/or invalid by applicable non-bankruptcy law or the Bankruptcy Code (such leases the "**Specified Lease**"); *provided* that, the foregoing shall not preclude any counterparty to a Specified Lease from an opportunity to be heard in this Court on notice with respect to whether applicable non-bankruptcy law or the Bankruptcy Code renders

such provision ineffective, unenforceable, and/or invalid if requested by this non-Debtor party to the Specified Lease, and the Court shall retain jurisdiction to hear and adjudicate issues related thereto; *provided, further*, that DIP Collateral shall include and the DIP Liens and Adequate Protection Liens granted under this Final Order shall attach to any proceeds of any Specified Lease.

(d)  *Automatic Effectiveness of Liens*. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to effectuate all of the terms and provisions of this Final Order, including to (i) permit the Credit Parties to grant the liens and security interests to the DIP Collateral Agent, the other DIP Secured Parties and the Prepetition Secured Parties, (ii) authorize the Credit Parties to pay, and the DIP Secured Parties and Prepetition Secured Parties to retain and apply, payments made in accordance with this Final Order, to the extent, in cases (i) and (ii), contemplated by this Final Order and the other DIP Documents, and (iii) permit the Outstanding LC Issuer to exercise all rights and remedies against the LC Cash Collateral (including, for the avoidance of doubt, to apply such LC Cash Collateral to any obligations of the Debtors with respect to the Outstanding LCs or other obligations under the Payoff Letter, including professional fees and expenses of the Outstanding LC Issuer).

15.  *Protection of DIP Term Lenders' and Designated Coal Contract Counterparties' Rights.*

(a)  So long as there are any DIP Term Obligations outstanding or the DIP Term Secured Parties have any outstanding Commitments under the DIP Credit Agreement, the Prepetition Secured Parties (other than the Prepetition ABL Secured Parties with respect to Prepetition ABL Priority Collateral) shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Documents or this Final Order, or otherwise seek to exercise or enforce any rights or remedies

against such DIP Term Collateral, including in connection with the Prepetition Liens or the

Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of,

or release of liens on, such DIP Term Collateral (but not any proceeds of such transfer, disposition

or sale to the extent remaining after payment in cash in full of the DIP Term Obligations and

termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is

authorized under the DIP Documents; (iii) not file any further financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any

action to perfect their security interests in such DIP Term Collateral unless, solely as to this clause

(iii), the DIP Collateral Agent or the DIP Term Lenders file financing statements or other

documents to perfect the liens granted pursuant to this Final Order, or as may be required by

applicable state law to continue the perfection of valid and non-avoidable liens or security interests

as of the Commencement Date and (iv) at the request of the DIP Collateral Agent, deliver or cause

to be delivered, at the Credit Parties' cost and expense, any termination statements, releases and/or

assignments in favor of the DIP Collateral Agent or the DIP Term Lenders or other documents

necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any

portion of such DIP Collateral subject to any sale or disposition permitted by the DIP Documents

and this Final Order.

(b)        Except with respect to Prepetition ABL Secured Parties solely with respect

to the Prepetition ABL Priority Collateral prior to the Prepetition ABL Debt being Paid in Full,[21]

and so long as any Outstanding LCs are outstanding, the Outstanding LC Issuer with respect to the

---

[21] For purposes of this Final Order, the terms "Paid in Full," and "Payment in Full" shall mean, with respect to any referenced DIP Obligations and/or Prepetition Debt, (i) the indefeasible payment in full in cash (or other agreed consideration) of such obligations, and (ii) the termination of all commitments under the DIP Documents and/or the Prepetition Superpriority Credit Agreement, the Prepetition Term Loan Credit Agreement or the Prepetition ABL Credit Agreement, as applicable.

LC Cash Collateral, to the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Term Collateral or has control with respect to any Prepetition Collateral or DIP Term Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Term Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Collateral Agent, the DIP Term Lenders and the Designated Coal Contract Counterparties, and, it shall comply with the instructions of the DIP Collateral Agent with respect to the exercise of such control.   The Prepetition ABL Agent, the Prepetition Superpriority Agent, the Prepetition Term Agent, the Prepetition Indenture Trustee and the Prepetition Collateral Trustee are not and shall not be deemed to be fiduciaries of any kind for the DIP Agents, the DIP Term Lenders or the Designated Coal Contract Counterparties, and the DIP Agents, on behalf of themselves, the DIP Term Lenders and Designated Coal Contract Counterparties, are hereby deemed to waive and release the Prepetition ABL Agent, the Prepetition Superpriority Agent, the Prepetition Term Agent, the Prepetition Indenture Trustee and the Prepetition Collateral Trustee from all claims and liabilities arising pursuant to their role under this paragraph 15(b) as gratuitous bailee and agent with respect to the Prepetition Collateral or the DIP Term Collateral.

(c)     Except with respect to the Prepetition ABL Priority Collateral prior to the Prepetition ABL Debt being Paid in Full and so long as any Outstanding LCs are outstanding, except with respect to the LC Cash Collateral, any proceeds of Prepetition Collateral received by any Prepetition Secured Party in connection with the exercise of any right or remedy relating to the Prepetition Collateral or otherwise received by any Prepetition Secured Party shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Collateral Agent

for the benefit of the applicable DIP Term Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The DIP Collateral Agent is hereby authorized to make any such endorsements as agent for any such Prepetition Secured Party. This authorization is coupled with an interest and is irrevocable.

(d)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Term Secured Parties to enforce all of their rights under the applicable DIP Documents and take any or all of the following actions, at the same or different time, in each case without further order or application of the Court: (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains, (B) all DIP Term Obligations to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Credit Parties, notwithstanding anything herein or in any DIP Document to the contrary, and (C) the termination of the applicable DIP Documents as to any future liability or obligation of the DIP Agents and the applicable DIP Term Lenders and Designated Coal Contract Counterparties (but, for the avoidance of doubt, without affecting any of the DIP Term Liens or the DIP Term Obligations), (ii) upon the occurrence of an Event of Default and the giving of five (5) business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "**Term Remedies Notice Period**") via email to counsel to the Debtors, the Creditors' Committee, counsel to the DIP FILO Lender and the U.S. Trustee, unless this Court orders otherwise during the Term Remedies Notice Period after a hearing, (A) whether or not the maturity of any of the DIP Term Obligations shall have been accelerated, proceed to protect, enforce and exercise all rights and remedies of the DIP Term Secured Parties under the DIP Documents or

applicable law, including, but not limited to, by suit in equity, action at law or other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in any such DIP Document or any instrument pursuant to which such DIP Term Obligations are evidenced, and, if such amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or any other legal or equitable right of any of such DIP Term Secured Parties, and (B) withdraw consent to the Credit Parties' continued use of Cash Collateral and exercise all other rights and remedies provided for in the DIP Documents and under applicable law with respect to the DIP Term Collateral; *provided*, that no such notice shall be required for any exercise of rights or remedies to block or limit withdrawals from any bank accounts that are a part of the Collateral (including, without limitation, by sending any control activation notices to depositary banks pursuant to any control agreement).

(e)      During the Term Remedies Notice Period, the Credit Parties shall be permitted to use Cash Collateral solely to (A) pay payroll and other critical administrative expenses to keep the business of the Credit Parties operating, strictly in accordance with the Approved Cash Flow Forecast (subject to any permitted variances), or as otherwise agreed by the DIP Administrative Agent acting at the direction of the DIP Requisite Lenders, and (B) fund the Carve-Out.  During the Term Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court within the Term Remedies Notice Period solely for  the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing.  Except as set forth in this Final Order, the Debtors shall waive their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Term Secured Parties set forth in this Final Order or the DIP Documents.  Any party-in-interest shall be entitled

to seek an emergency hearing for the purpose of contesting whether assets constitute assets of the Debtors' estates and nothing in this Final Order shall affect any party-in-interest's rights or positions at such hearing.

(f)     In no event shall the DIP Agents, the DIP Term Lenders, the Designated Coal Contract Counterparties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the DIP Term Collateral.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.  Notwithstanding the foregoing, the Prepetition Secured Parties and the DIP Secured Parties shall use commercially reasonable efforts to first use all DIP Collateral or Prepetition Collateral other than Avoidance Proceeds or the proceeds of any commercial tort claim (including, without limitation, any claims and causes of action brought against the Prepetition Secured Parties in a timely filed Challenge) to repay the DIP Superpriority Claims or Adequate Protection Claims, including the 507(b) Claims, as applicable.

(g)     No rights, protections or remedies of the DIP Agents, the DIP Term Lenders, the Designated Coal Contract Counterparties or the Prepetition Secured Parties granted by the provisions of this Final Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Credit Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Credit Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Credit Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

16.     *Protection of DIP FILO Lender's Rights*.

(a)     So long as there are any DIP FILO Obligations outstanding under the DIP Credit Agreement, the Prepetition Secured Parties (other than the Prepetition Term Secured Parties with respect to Prepetition Term Priority Collateral) shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Documents or the Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP FILO Collateral, including in connection with the Prepetition Liens or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP FILO Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP FILO Obligations), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP FILO Collateral unless, solely as to this clause (iii), the DIP Administrative Agent files financing statements or other documents to perfect the liens granted pursuant to this Final Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the Commencement Date and (iv) at the request of the DIP Administrative Agent, deliver or cause to be delivered, at the Credit Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Administrative Agent or the DIP FILO Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such DIP FILO Collateral subject to any sale or disposition permitted by the DIP Documents and this Final Order.

(b)      Except with respect to Prepetition Term Secured Parties solely with respect

to the Prepetition Term Priority Collateral, to the extent any Prepetition Secured Party has

possession of any Prepetition Collateral or DIP FILO Collateral or has control with respect to any

Prepetition Collateral or DIP FILO Collateral, or has been noted as a secured party on any

certificate of title for a titled good constituting Prepetition Collateral or DIP FILO Collateral, then

such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise

such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP

Administrative Agent and the DIP FILO Lender and, it shall comply with the instructions of the

DIP Administrative Agent with respect to the exercise of such control.  The Prepetition ABL Agent,

the Prepetition Superpriority Agent, the Prepetition Term Agent, the Prepetition Indenture Trustee

and the Prepetition Collateral Trustee are not and shall not be deemed to be fiduciaries of any kind

for the DIP Administrative Agent or the DIP FILO Lender, and the DIP Administrative Agent, on

behalf of itself and the DIP FILO Lender, is hereby deemed to waive and release the Prepetition

ABL Agent, the Prepetition Superpriority Agent, the Prepetition Term Agent, the Prepetition

Indenture Trustee and the Prepetition Collateral Trustee from all claims and liabilities arising

pursuant to their role under this paragraph 16(b) as gratuitous bailee and agent with respect to the

Prepetition Collateral or the DIP FILO Collateral.

(c)      Except with respect to the Prepetition Term Priority Collateral, any

proceeds of Prepetition Collateral received by any Prepetition Secured Party in connection with

the exercise of any right or remedy relating to the Prepetition Collateral or otherwise received by

any Prepetition Secured Party shall be segregated and held in trust for the benefit of and forthwith

paid over to the DIP Administrative Agent for the benefit of the applicable DIP FILO Secured

Parties in the same form as received, with any necessary endorsements, or as a court of competent

jurisdiction may otherwise direct.  The DIP Administrative Agent is hereby authorized to make

any such endorsements as agent for any such Prepetition Secured Party.  This authorization is

coupled with an interest and is irrevocable.

(d)     The automatic stay provisions of section 362 of the Bankruptcy Code are

hereby vacated and modified to the extent necessary to permit the DIP FILO Secured Parties to

enforce all of their rights under the applicable DIP Documents in respect to the DIP FILO Loans

and take any or all of the following actions, at the same or different time: (i) immediately upon the

occurrence of an Event of Default, declare (A) all DIP FILO Obligations to be immediately due,

owing and payable, without presentment, demand, protest, or other notice of any kind, all of which

are expressly waived by the Credit Parties, notwithstanding anything herein or in any DIP

Document to the contrary, and (B) the termination of the applicable DIP Documents as to any

future liability or obligation of the DIP Administrative Agent and the applicable DIP FILO Lender

(but, for the avoidance of doubt, without affecting any of the DIP FILO Liens or the DIP FILO

Obligations), (ii) upon the occurrence of an Event of Default and the giving of five (5) business

days' prior written notice (which shall run concurrently with any notice required to be provided

under the DIP Documents) (the "**FILO Remedies Notice Period**," and together with the Term

Remedies Notice Period, the "**Remedies Notice Periods**") via email to counsel to the Debtors,

counsel to the DIP Term Lenders, the Creditors' Committee, and the U.S. Trustee, unless this

Court orders otherwise during the FILO Remedies Notice Period after a hearing, (A) whether or

not the maturity of any of the DIP FILO Obligations shall have been accelerated, proceed to protect,

enforce and exercise all rights and remedies of the DIP FILO Secured Parties under the DIP

Documents or applicable law, including, but not limited to, by suit in equity, action at law or other

appropriate proceeding, whether for the specific performance of any covenant or agreement

contained in any such DIP Document or any instrument pursuant to which such DIP FILO Obligations are evidenced, and, if such amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or any other legal or equitable right of any of such DIP FILO Secured Parties, and (B) withdraw consent to the Credit Parties' continued use of Cash Collateral and exercise all other rights and remedies provided for in the DIP Documents and under applicable law with respect to the DIP FILO Collateral; *provided*, that no such notice shall be required for any exercise of rights or remedies to block or limit withdrawals from any bank accounts that are a part of the Collateral (including, without limitation, by sending any control activation notices to depositary banks pursuant to any control agreement).

(e)      During the FILO Remedies Notice Period, the Credit Parties shall be permitted to use Cash Collateral solely to (A) pay payroll and other critical administrative expenses to keep the business of the Credit Parties operating, strictly in accordance with the Approved Cash Flow Forecast (subject to any permitted variances), or as otherwise agreed by the DIP Administrative Agent acting at the direction of the DIP FILO Requisite Lenders, and (B) fund the Carve-Out.  During the FILO Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court within the FILO Remedies Notice Period solely for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing. Except as set forth in this Final Order, the Debtors shall waive their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP FILO Secured Parties set forth in this Final Order or the DIP Documents.

(f)      In no event shall the DIP Administrative Agent, the DIP FILO Lender or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar

doctrine with respect to the Prepetition Collateral or the DIP FILO Collateral.  In no event shall

the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured

claims of the Prepetition Secured Parties.

(g)      No rights, protections or remedies of the DIP Administrative Agent, the DIP

FILO Lender or the Prepetition Secured Parties granted by the provisions of this Final Order or

the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or

purported withdrawal of the consent of any party to the Credit Parties' authority to continue to use

Cash Collateral; (ii) any actual or purported termination of the Credit Parties' authority to continue

to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Credit

Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

17.    *Proceeds of Subsequent Financing*.   Without limiting the provisions and

protections herein, but subject in all respects to the Carve-Out, if at any time prior to the repayment

in full in accordance with the DIP Documents of all the DIP Obligations (including subsequent to

the confirmation of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors'

estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently

appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other

provision of the Bankruptcy Code in violation of this Final Order or the DIP Documents, then all

of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be

turned over to the DIP Collateral Agent for application to the DIP Obligations until such DIP

Obligations are Paid in Full.

18.    *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the

Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding

that may result therefrom, including liquidation in bankruptcy or other proceedings under the

Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash

Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law,

without the prior written consent of the DIP Agent or the Prepetition Superpriority Agent, as

applicable, and no such consent shall be implied from any other action, inaction or acquiescence

by the DIP Secured Parties or the Prepetition Secured Parties, and nothing contained in this Final

Order shall be deemed to be a consent by the DIP Secured Parties to any charge, lien, assessment

or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

19.     *Payments Free and Clear.*   Any and all payments or proceeds remitted to the

DIP Agents by, through or on behalf of the DIP Secured Parties pursuant to the provisions of the

Interim Order or this Final Order, the DIP Documents (including, without limitation, the Approved

Cash Flow Forecast (subject to permitted variances)) or any subsequent order of the Court shall be

irrevocable, received free and clear of any claim, charge, assessment or other liability, including

without limitation, any such claim or charge arising out of or based on, directly or indirectly,

sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on

behalf of the Debtors.

20.     *Use of Cash Collateral.*   The Credit Parties are hereby authorized, subject to the

terms and conditions of this Final Order, to use Cash Collateral; *provided*, that (a) the Prepetition

Secured Parties are granted the Adequate Protection as hereinafter set forth and (b) except on the

terms and conditions of this Final Order, the Credit Parties shall be enjoined and prohibited from

at any time using the Cash Collateral absent further order of the Court; and *provided, further*, that

the LC Cash Collateral shall be held by the Outstanding LC Issuer for its own account and shall

not be subject to use by the Debtors except as provided in the Payoff Letter.

21.     *Adequate Protection of Prepetition Secured Parties.*  Subject to the Carve-Out in all respects, the Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Commencement Date, if any ("**Diminution in Collateral Value**"), for any reason provided for under the Bankruptcy Code (the "**Adequate Protection Claims**").  To the extent of any Diminution in Collateral Value, the Prepetition Secured Parties are hereby granted the following, in each case subject to the Carve-Out (collectively, the "**Adequate Protection Obligations**"):

(a)     <u>ABL Adequate Protection Liens</u>.  Until the ABL Satisfaction Date and the date upon which the full roll-up of the Prepetition FILO Debt into DIP FILO Loans occurs, the Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Lenders and Prepetition LC Issuer, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition ABL Secured Parties' Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral (the "**ABL Adequate Protection Liens**"), subject and subordinate to (i) in the case of DIP Term Priority Collateral, (A) the Carve-Out, (B) the DIP Liens and any liens to which the DIP Liens are junior (including the Prepetition Permitted Prior Liens and Permitted Liens), (C) Prepetition Term Liens, and (D) Term Adequate Protection Liens (as defined below) and (ii) in the case of Prepetition ABL Priority Collateral, the Carve-Out.

70

(b)  <u>Prepetition ABL Secured Parties' Adequate Protection Fees and Expenses</u>.

Until the ABL Satisfaction Date and the date upon which the full roll-up of the Prepetition FILO

Debt into DIP FILO Loans occurs, as further adequate protection, subject to the Carve-Out as set

forth in this Final Order, the Credit Parties shall provide the Prepetition ABL Agent, for the benefit

of the Prepetition ABL Lenders and the Prepetition LC Issuer, current cash payments of the

reasonable and documented prepetition and postpetition fees and expenses of the Prepetition ABL

Agent under the Prepetition ABL Credit Documents and the Prepetition FILO Lender, including,

but not limited to, the reasonable and documented fees and out-of-pocket expenses of Latham &

Watkins LLP (solely in its capacity as counsel to the Prepetition ABL Agent), Sidley Austin LLP

(solely in its capacity as counsel to the Prepetition FILO Lender), local counsel to the Prepetition

FILO Lender, one financial advisor to the Prepetition FILO Lender, and any other advisors

retained by Prepetition ABL Agent and/or the Prepetition FILO Lender in accordance with the

Prepetition ABL Credit Agreement) (the "**ABL Adequate Protection Fees and Expenses**"),

subject to the review procedures set forth in paragraph 29 of this Final Order.

(c)  <u>Prepetition ABL Secured Parties' Section 507(b) Claim</u>.  Until the ABL

Satisfaction Date and the date upon which the full roll-up of the Prepetition FILO Debt into DIP

FILO Loans occurs, the Prepetition ABL Agent, for itself and for the benefit of the Prepetition

ABL Lenders and Prepetition LC Issuer, is hereby granted, subject to the Carve-Out, an allowed

superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy

Code in the amount of the Prepetition ABL Secured Parties' Adequate Protection Claims solely

with respect to its interest in the DIP Term Priority Collateral (the "**Term Priority Collateral**

**ABL 507(b) Claims**"), which Term Priority Collateral ABL 507(b) Claims shall be payable from

and have recourse to all DIP Term Priority Collateral and all proceeds thereof (excluding

Avoidance Actions but including, without limitation, the Avoidance Proceeds).  The Term Priority

Collateral ABL 507(b) Claims shall be subject and subordinate only to the Carve-Out, the DIP

Term Superpriority Claims, the Term 507(b) Claims and the prepetition claims of the Prepetition

Term Loan Secured Parties.  The Prepetition ABL Secured Parties shall not receive or retain any

payments, property or other amounts in respect of the Term Priority Collateral ABL 507(b) Claims

unless and until the DIP Term Obligations (other than contingent indemnification obligations as

to which no claim has been asserted) and any claims having a priority superior to or *pari passu*

with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP

Commitments have been terminated.  The Prepetition ABL Agent, for itself and for the benefit of

the Prepetition ABL Lenders and Prepetition LC Issuer, is hereby granted, subject to the Carve-

Out up to the Term Loan ABL Collateral Cap, an allowed superpriority administrative expense

claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition

ABL Secured Parties' Adequate Protection Claims solely with respect to its interest in the

Prepetition ABL Priority Collateral, with, except as set forth in this Final Order, priority in

payment over any and all administrative expenses of the kind specified or ordered pursuant to any

provision of the Bankruptcy Code (as defined below) (the "**ABL Priority Collateral ABL 507(b)**

**Claims**", together with the Term Priority Collateral ABL 507(b) Claims, the "**ABL 507(b)**

**Claims**"), which ABL Priority Collateral ABL 507(b) Claims shall be payable from and have

recourse to all Prepetition ABL Priority Collateral and all proceeds thereof.  The ABL Priority

Collateral ABL 507(b) Claims shall be subject and subordinate only to the Carve-Out up to the

Term Loan ABL Collateral Cap.

(d)      Prepetition FILO Lender's Adequate Protection Payments.  Until the date

upon which the full roll-up of the Prepetition FILO Debt into DIP FILO Loans occurs, as additional

adequate protection, subject to the Carve-Out as set forth in this Final Order, the Prepetition ABL

Agent shall receive, for the benefit of the Prepetition FILO Lender, current payment of interest (at

the contractual default rate) due under the Prepetition ABL Credit Agreement with respect to

outstanding Last-Out Obligations (as defined in the Prepetition ABL Credit Agreement), whether

due prior to, on, or subsequent to the Commencement Date, subject to the rights reserved in

paragraph 31 of this Final Order.

        (e)      <u>Superpriority Adequate Protection Liens</u>.   The Prepetition Collateral

Trustee, for itself and for the benefit of other Prepetition Superpriority Secured Parties, is hereby

granted (effective and perfected upon the date of the Interim Order and without the necessity of

the execution of any mortgages, security agreements, pledge agreements, financing statements or

other agreements), in the amount of the Prepetition Superpriority Secured Parties' Adequate

Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP

Collateral, in each case subject and subordinate only to (A) the Carve-Out and (B) the DIP Liens

and any liens to which the DIP Liens are junior (including the Prepetition Permitted Prior Liens

and Permitted Liens and, solely with respect to the Prepetition ABL Priority Collateral, the

Prepetition ABL Liens and the ABL Adequate Protection Liens), except, solely with respect to

DIP Term Priority Collateral, the DIP FILO Liens (the "**Superpriority Adequate Protection**

**Liens**");

        (f)      <u>Prepetition Superpriority Secured Parties' Section 507(b) Claim</u>.  Solely to

the extent of any diminution in value, the Prepetition Superpriority Agent, for itself and for the

benefit of other Prepetition Superpriority Secured Parties, is hereby granted, subject to the Carve-

Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of

the Bankruptcy Code in the amount of the Prepetition Superpriority Secured Parties' Adequate

Protection Claims, with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Superpriority 507(b) Claims**"), which Superpriority 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Credit Parties and all proceeds thereof (excluding Avoidance Actions, but including, without limitation, Avoidance Proceeds). The Superpriority 507(b) Claims shall be subject and subordinate only to the Carve-Out, the DIP Superpriority Claims granted in respect of the DIP Obligations (except, with respect to the DIP Term Priority Collateral, the DIP FILO Superpriority Claims) and, solely with respect to the Prepetition ABL Priority Collateral, the claims of the Prepetition ABL Secured Parties and the ABL 507(b) Claims. Except to the extent expressly set forth in the Interim Order, this Final Order or the DIP Documents, the Prepetition Superpriority Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Superpriority 507(b) Claims unless and until the DIP Term Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Term Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(g)      Prepetition Superpriority Secured Parties' Adequate Protection Fees and Expenses. The Credit Parties shall provide the Prepetition Superpriority Agent, for the benefit of the Prepetition Superpriority Lenders, and the Ad Hoc Group of Superpriority Lenders current cash payments of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Superpriority Agent under the Prepetition Superpriority Credit Documents and the Ad Hoc Group of Superpriority Lenders, including, but not limited to, the reasonable and documented fees and out-of-pocket expenses of Wilmer Cutler Pickering Hale and Dorr LLP

74

(solely in its capacity as counsel to the Prepetition Superpriority Agent), one local bankruptcy counsel to the Prepetition Superpriority Agent in the Southern District of Ohio, and, solely to the extent necessary to enforce rights and remedies under the Prepetition Superpriority Credit Documents, one counsel to the Prepetition Superpriority Agent in each local jurisdiction, Dorsey & Whitney LLP (solely in its capacity as counsel to the Prepetition Collateral Trustee), Davis Polk & Wardwell LLP, Frost Brown Todd LLC, Houlihan Lokey Capital, Inc., Drinker Biddle & Reath LLP, and any other advisors retained by the Ad Hoc Group of Superpriority Lenders (the "**Superpriority Adequate Protection Fees and Expenses**," and, together with the ABL Adequate Protection Fees and Expenses, the "**Adequate Protection Fees and Expenses**"), subject to the review procedures set forth in paragraph 29 of this Final Order.

(h)     <u>Prepetition Superpriority Secured Parties' Adequate Protection Payment</u>. Only after the DIP Obligations are fully discharged, the Prepetition Superpriority Agent, on behalf of the Prepetition Superpriority Secured Parties, shall receive from the Credit Parties, cash payments in an amount equal to the amount of the net cash proceeds received by the Debtors of the sale of any Prepetition Term Priority Collateral (including, for the avoidance of doubt, net cash proceeds from the sale of Prepetition Term Priority Collateral in connection with an Asset Sale (as such term is defined in the DIP Credit Agreement)), payable not later than the fifth business day following the date of receipt of such proceeds.  Subject to paragraph 31 of this Final Order, any payment made to the Prepetition Superpriority Secured Parties under this section (h) shall be without prejudice, and with a full reservation of rights, as to whether such payment should be disgorged, recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments under the Prepetition Superpriority Credit Agreements (whether as principal, interest or otherwise).

(i)        <u>Prepetition Superpriority Secured Parties and Prepetition ABL Secured</u>

<u>Parties' Information Rights.</u>  The Debtors shall promptly provide the Prepetition Superpriority

Agent, on behalf of itself and on behalf of the Prepetition Superpriority Secured Parties, and, until

the ABL Satisfaction Date and the date upon which the full roll-up of the Prepetition FILO Debt

into DIP FILO Loans occurs, the Prepetition ABL Agent, on behalf of itself and on behalf of the

Prepetition ABL Lenders, with all required written financial reporting and other periodic reporting

to the extent required to be provided to the DIP Administrative Agent or the DIP Secured Parties

in accordance with the DIP Documents, including but not limited to the reporting required under

section 5.1 of the DIP Credit Agreement.  In addition to the Prepetition Superpriority Secured

Parties and Prepetition ABL Secured Parties set forth above, the Creditors' Committee shall be

entitled to receive all required written financial reporting and other periodic reporting that is

required to be provided to the DIP Administrative Agent or the DIP Secured Parties under the DIP

Documents, including but not limited to the reporting required under section 5.1 of the DIP Credit

Agreement.

(j)        <u>Prepetition Superpriority Secured Parties and Prepetition ABL Secured</u>

<u>Parties' Adequate Protection Milestones.</u>  The Prepetition Superpriority Secured Parties and, until

the ABL Satisfaction Date and the date upon which the full roll-up of the Prepetition FILO Debt

into DIP FILO Loans occurs, the Prepetition ABL Secured Parties, are hereby entitled to

performance of the milestones set forth in section 5.18 of the DIP Credit Agreement (the

"**Adequate Protection Milestones**"), which cannot be waived, amended, modified or extended

from time to time, in each case as to the Prepetition Superpriority Secured Parties, absent prior

written consent of the Superpriority Requisite Lenders, and as to the Prepetition ABL Secured Parties, absent prior written consent of the ABL Requisite Lenders.[22]

(k)    Prepetition Superpriority Secured Parties' Entitlement to Financial Covenant Compliance.    The Prepetition Superpriority Secured Parties are hereby entitled to compliance by the Credit Parties with those certain financial covenants set forth in section 6.7 of the DIP Credit Agreement, which may be extended or waived with the consent of a majority of the Prepetition Superpriority Secured Parties.

(l)    The Adequate Protection Milestones, reporting obligations and financial covenants compliance obligations in the subparagraphs above shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder.  Following any such termination of the DIP Credit Agreement or the DIP Commitments thereunder, the Adequate Protection Milestones may be waived, amended, modified or extended from time to time by the Superpriority Requisite Lenders (in their sole discretion).

(m)    Prepetition Superpriority Secured Parties' Additional Adequate Protection. In the event the Debtors file, support, make a proposal or counterproposal in writing to any party relating to, or take any other similar action in furtherance of a plan of reorganization that does not propose to pay all claims on account of the Prepetition Superpriority Debt and the Prepetition Superpriority Obligations in cash or with such other consideration acceptable to the Superpriority Requisite Lenders or the Designated Coal Contract Counterparties, the Prepetition Superpriority Secured Parties shall have the right to immediately terminate Debtors' right to use Cash Collateral pursuant to this Final Order.

---

[22]    "**Superpriority Requisite Lenders**" means "Requisite Lenders" as defined in the Prepetition Superpriority Credit Agreement, and "**ABL Requisite Lenders**" means "Required Lenders" as defined in the Prepetition ABL Credit Agreement.

(n)     <u>Prepetition ABL Secured Parties' Additional Adequate Protection.</u>  In the event the Debtors file, support, make a proposal or counterproposal in writing to any party relating to, or take any other similar action in furtherance of a plan of reorganization that does not propose to pay all claims on account of the Prepetition ABL Debt in cash or with such other consideration acceptable to the Prepetition ABL Lenders, such event shall constitute an Event of Default under this Final Order, and the Prepetition ABL Secured Parties shall have the right to immediately terminate Debtors' right to use Cash Collateral pursuant to this Final Order and such event shall constitute an Event of Default under this Final Order.

(o)     <u>Term Loan Adequate Protection Liens</u>.  The Prepetition Collateral Trustee, for itself and for the benefit of other Prepetition Term Loan Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Term Loan Secured Parties' Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral of the Borrower and the Prepetition 1L/2L Guarantors, in each case subject and subordinate only to (A) the Carve-Out, (B) the DIP Liens and any liens to which the DIP Liens are junior (including the Prepetition Permitted Prior Liens and Permitted Liens and, solely with respect to the Prepetition ABL Priority Collateral, the Prepetition ABL Liens and the ABL Adequate Protection Liens) (except, solely with respect the DIP Term Priority Collateral, the DIP FILO Liens), (C) the Prepetition Superpriority Liens and (D) Superpriority Adequate Protection Liens (the "**Term Loan Adequate Protection Liens**");

(p)     <u>Prepetition Term Loan Secured Parties' Section 507(b) Claim</u>.  Solely to the extent of any diminution in value, the Prepetition Term Agent, for itself and for the benefit of

other Prepetition Term Loan Secured Parties, is hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition Term Loan Secured Parties' Adequate Protection Claims, with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code other than the Superpriority 507(b) Claims (the "**Term Loan 507(b) Claims**"), which Term Loan 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Borrower and the Prepetition 1L/2L Guarantors and all proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds). The Term Loan 507(b) Claims shall be subject and subordinate only to the Carve-Out, the DIP Superpriority Claims granted in respect of the DIP Obligations, the Superpriority 507(b) Claims (except, with respect the DIP Term Priority Collateral, the DIP FILO Superpriority Claims), the prepetition claims of the Prepetition Superpriority Secured Parties and, solely with respect to the Prepetition ABL Priority Collateral, the claims of the Prepetition ABL Secured Parties and the ABL 507(b) Claims.  Except to the extent expressly set forth in the Interim Order, this Final Order or the DIP Documents, the Prepetition Term Loan Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Term Loan 507(b) Claims unless and until the DIP Term Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Term Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(q)      <u>Superparity Adequate Protection Liens</u>.  The Prepetition Collateral Trustee, for itself and for the benefit of other Prepetition Superparity Secured Parties, is hereby granted

(effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Superparity Secured Parties' Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral, in each case subject and subordinate only to (A) the Carve-Out, (B) the DIP Liens and any liens to which the DIP Liens are junior (including the Prepetition Permitted Prior Liens and Permitted Liens and, solely with respect to the Prepetition ABL Priority Collateral, the Prepetition ABL Liens and the ABL Adequate Protection Liens) (except, with respect the DIP Term Priority Collateral, the DIP FILO Liens), (C) the Prepetition Superpriority Liens, (D) Superpriority Adequate Protection Liens, (E) the Prepetition Term Loan Liens and (F) Term Loan Adequate Protection Liens (the "**Superparity Adequate Protection Liens**");

        (r)      <u>Prepetition Superparity Secured Parties' Section 507(b) Claim</u>.  Solely to the extent of any diminution in value, the Prepetition Superparity Trustee, for itself and for the benefit of other Prepetition Superparity Secured Parties, is hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition Superparity Secured Parties' Adequate Protection Claims, with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code other than the Superpriority 507(b) Claims and the Term Loan 507(b) Claims (the "**Superparity 507(b) Claims**"), which Superparity 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Credit Parties and all proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds). The Superpriority 507(b) Claims shall be subject and subordinate only to the Carve-Out, the DIP

Superpriority Claims granted in respect of the DIP Obligations (except, with respect the DIP Term Priority Collateral, the DIP FILO Superpriority Claims), the Superpriority 507(b) Claims, the prepetition claims of the Prepetition Superpriority Secured Parties, the Term Loan 507(b) Claims, the prepetition claims of the Prepetition Term Loan Secured Parties and, solely with respect to the Prepetition ABL Priority Collateral, the claims of the Prepetition ABL Secured Parties and the ABL 507(b) Claims.  Except to the extent expressly set forth in the Interim Order, this Final Order or the DIP Documents, the Prepetition Superparity Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Superparity 507(b) Claims unless and until the DIP Term Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Term Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(s)      Parity Adequate Protection Liens.  The Prepetition Collateral Trustee, for itself and for the benefit of other Prepetition Parity Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Parity Secured Parties' Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral of the Borrower and the Prepetition 1L/2L Guarantors, in each case subject and subordinate only to (A) the Carve-Out, (B) the DIP Liens and any liens to which the DIP Liens are junior (including the Prepetition Permitted Prior Liens and Permitted Liens and, solely with respect to the Prepetition ABL Priority Collateral, the Prepetition ABL Liens and the ABL Adequate Protection Liens) (except, with respect the DIP Term Priority Collateral, the DIP FILO Liens), (C) the Prepetition

Superpriority Liens, (D) Superpriority Adequate Protection Liens, (E) the Prepetition Term Loan

Liens, (F) Term Loan Adequate Protection Liens, (G) the Prepetition Superparity Liens and

(H) Superparity Adequate Protection Liens (the "**Parity Adequate Protection Liens**", and

collectively with the Superpriority Adequate Protection Liens, Term Loan Adequate Protection

Liens and Superparity Adequate Protection Liens, the "**Term Adequate Protection Liens**"; the

Term Adequate Protection Liens, together with ABL Adequate Protection Liens, the "**Adequate**

**Protection Liens**");

(t)      Prepetition Parity Secured Parties' Section 507(b) Claim.  Solely to the

extent of any diminution in value, the Prepetition Parity Trustee, for itself and for the benefit of

the Prepetition Parity Noteholders, is hereby granted, subject to the Carve-Out, an allowed

superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy

Code in the amount of the Prepetition Parity Secured Parties' Adequate Protection Claims, with,

except as set forth in this Final Order, priority in payment over any and all administrative expenses

of the kind specified or ordered pursuant to any provision of the Bankruptcy Code other than the

Superpriority 507(b) Claims, the Term Loan 507(b) Claims and the Superparity 507(b) Claims

(the "**Parity 507(b) Claims**", and collectively with the Superpriority 507(b) Claims, the Term

Loan 507(b) Claims and the Superparity 507(b) Claims, the "**Term 507(b) Claims**"; the Term

507(b) Claims, together with ABL 507(b) Claims, the "**Adequate Protection 507(b) Claims**"),

which Parity 507(b) Claims shall be payable from and have recourse to all prepetition and

postpetition property of the  Borrower and the Prepetition 1L/2L Guarantors and all proceeds

thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds).

The Parity 507(b) Claims shall be subject and subordinate only to the Carve-Out, the DIP

Superpriority Claims granted in respect of the DIP Obligations (except, with respect the DIP Term

Priority Collateral, the DIP FILO Superpriority Claims), the Superpriority 507(b) Claims, the

prepetition claims of the Prepetition Superpriority Secured Parties, the Term Loan 507(b) Claims,

the prepetition claims of the Prepetition Term Loan Secured Parties, the Superparity 507(b) Claims,

the prepetition claims of the Prepetition Superparity Secured Parties and, solely with respect to the

Prepetition ABL Priority Collateral, the claims of the Prepetition ABL Secured Parties and the

ABL 507(b) Claims.  Except to the extent expressly set forth in the Interim Order, this Final Order

or the DIP Documents, the Prepetition Parity Secured Parties shall not receive or retain any

payments, property or other amounts in respect of the Parity 507(b) Claims unless and until the

DIP Term Obligations (other than contingent indemnification obligations as to which no claim has

been asserted) and any claims having a priority superior to or *pari passu* with the DIP Term

Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have

been terminated.

22.     *Adequate Protection Liens, Prepetition Intercreditor Agreements and Prepetition Collateral Trust Agreements*.  Notwithstanding anything to the contrary herein, the Adequate

Protection Liens shall retain the same priority between and among the Prepetition Secured Parties

as the liens such parties held prior to the Commencement Date as governed by the Prepetition

Intercreditor Agreements and Prepetition Collateral Trust Agreements, and the Prepetition

Intercreditor Agreements and the Prepetition Collateral Trust Agreements shall continue in full

force and effect, including the reinstatement provisions, and nothing herein shall be construed as

modifying, amending, waiving or in any way impacting the effectiveness and enforceability

thereof.  The Prepetition ABL Secured Parties are deemed to consent to the priming of their

Prepetition ABL Liens with respect to the Shared Fixed Asset Collateral by the DIP Liens pursuant

to the terms of the Prepetition Intercreditor Agreements.  Each of the Prepetition Superpriority

Secured Parties, the Prepetition Term Loan Secured Parties, the Prepetition Superparity Secured

Parties and the Prepetition Parity Secured Parties are deemed to consent to the priming of their

Prepetition Superpriority Liens, the Prepetition Term Loan Liens, the Prepetition Superparity

Liens and the Prepetition Parity Liens, as applicable, by the DIP Liens pursuant to the terms of the

Prepetition Collateral Trust Agreements.

23.     *Reservation of Rights of Prepetition Secured Parties*.   Under the circumstances and

given that the above-described adequate protection is consistent with the Bankruptcy Code, the

Court finds that the adequate protection provided herein is reasonable and sufficient to protect the

interests of the Prepetition Secured Parties; *provided* that, subject to the terms of the Prepetition

Intercreditor Agreements and the Prepetition Collateral Trust Agreements, any of the Prepetition

Secured Parties may request further or different adequate protection.

24.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The DIP Collateral Agent, the DIP Secured Parties and the Prepetition

Secured Parties are hereby authorized, but not required, to file or record (and to execute in the

name of the Credit Parties, as their true and lawful attorneys, with full power of substitution, to the

maximum extent permitted by law) financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control

over cash or securities or other property, or take any other action in order to validate and perfect

the liens and security interests granted to them hereunder.  Whether or not the DIP Collateral Agent

(on behalf of the DIP Secured Parties) or the Prepetition Secured Parties shall, in their sole

discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages,

notices of lien or similar instruments, or take possession of or control over any cash or securities

or other property, or otherwise confirm perfection of the liens and security interests granted to

them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Final Order), at the time and on the date of entry of this Final Order or thereafter.   Upon the request of the DIP Collateral Agent, the Prepetition ABL Agent or the Prepetition Collateral Trustee, as applicable, each of the Prepetition Secured Parties and the Credit Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Collateral Agent, the Prepetition ABL Agent or the Prepetition Collateral Trustee to further validate, perfect, preserve and enforce the DIP Liens and the applicable Adequate Protection Liens, respectively.   All such documents will be deemed to have been recorded and filed as of the Commencement Date.

(b)     A certified copy of the Interim Order or this Final Order may, in the discretion of the DIP Collateral Agent, the Prepetition ABL Agent or the Prepetition Collateral Trustee, as applicable, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order or this Final Order for filing and/or recording, as applicable.   The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Collateral Agent, the Prepetition ABL Agent or the Prepetition Collateral Trustee to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)     To the extent that any Prepetition Secured Party is the secured party under any account control agreements, listed as loss payee or additional insured under any of the Credit Parties' insurance policies or is the secured party under any other agreement, the DIP Collateral

Agent, on behalf of the DIP Secured Parties, is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the Credit Parties' insurance policies and the secured party under each such agreement (in any such case with the same priority of liens and claims thereunder relative to the priority of (x) the Prepetition Liens and Adequate Protection Liens and (y) the DIP Liens, as set forth herein), and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement, but subject in all respects to the terms of this Final Order), and shall, subject to the terms of this Final Order, except with respect to the Prepetition ABL Priority Collateral, act in that capacity and distribute any proceeds recovered or received in respect of any of the foregoing, _first_, to the payment in full of the DIP Obligations, and _second_, to the payment of the Prepetition Debt (consistent with the Prepetition Intercreditor Agreements and Prepetition Collateral Trust Agreements).  In accordance with the terms of this Final Order and the other DIP Documents, the Prepetition Collateral Trustee and the Prepetition ABL Agent, as applicable, shall serve as agent for the DIP Collateral Agent for purposes of perfecting the DIP Collateral Agent's security interests in and liens on all Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

      25.     _Preservation of Rights Granted Under This Final Order._

      (a)     Other than (i) the Carve-Out, (ii) the Prepetition Permitted Prior Liens, (iii) Permitted Liens; (iv) solely with respect to the Prepetition ABL Priority Collateral, the liens and claims of the Prepetition ABL Secured Parties; (v) with respect to the LC Cash Collateral, the liens and claims of the Outstanding LC Issuer; and (vi) other claims and liens expressly granted by this Final Order, no claim or lien having a priority superior to or _pari passu_ with those granted by this Final Order to the DIP Secured Parties or the Prepetition Secured Parties shall be permitted

while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in paragraphs 10, 11, or 19 of this Final Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Credit Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Commencement Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Credit Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Credit Parties.

(b)     The occurrence of (a) any Event of Default (as defined in the DIP Credit Agreement) or (b) any violation of any of the terms of this Final Order, shall, after notice by the DIP Administrative Agent in writing to the Borrower, constitute an event of default under this Final Order (each an "**Event of Default**") and, subject to the Term Remedies Notice Period and the FILO Remedies Notice Period, as applicable, terminate the right of the Credit Parties to use Cash Collateral pursuant to this Final Order and upon any such Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Credit Agreement. Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code:  (A) the DIP Superpriority Claims, the Adequate Protection 507(b) Claims, the DIP Liens, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection shall have been paid in full (and

87

that such DIP Superpriority Claims, Adequate Protection 507(b) Claims, DIP Liens and Adequate

Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest);

(B) the other rights granted by this Final Order shall not be affected; and (C) this Court shall retain

jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and

security interests referred to in this paragraph and otherwise in this Final Order.

(c)     If any or all of the provisions of this Final Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the

validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations

incurred prior to the actual receipt of written notice by the DIP Administrative Agent, the DIP

Collateral Agent, the Prepetition ABL Agent, the Prepetition Collateral Trustee, the Prepetition

Superpriority Agent, the Prepetition Term Agent, the Prepetition Indenture Trustee or the

Prepetition Collateral Trustee, as applicable, of the effective date of such reversal, modification,

vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens, the Adequate

Protection Liens, the Prepetition Liens or the Prepetition Debt.  Notwithstanding any such reversal,

modification, vacation or stay of any use of Cash Collateral or Collateral, any DIP Obligations,

DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred by the Credit

Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to

the actual receipt of written notice by the DIP Administrative Agent, the DIP Collateral Agent,

the Prepetition ABL Agent, the Prepetition Collateral Trustee, the Prepetition Superpriority Agent,

the Prepetition Term Agent, the Prepetition Indenture Trustee or the Prepetition Collateral Trustee,

as applicable, of the effective date of such reversal, modification, vacation or stay shall be

governed in all respects by the original provisions of this Final Order, and the DIP Agents, the

DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies,

privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and the

DIP Documents with respect to all uses of Cash Collateral, the DIP Obligations and Adequate

Protection.

(d)     Except as expressly provided in this Final Order or in the DIP Documents,

the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Liens,

the Prepetition Debt and the Adequate Protection and all other rights and remedies of the DIP

Secured Parties, and the Prepetition Secured Parties granted by the provisions of this Final Order

and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the

entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any

of the Chapter 11 Cases, substantively consolidating any of the cases with another case,

terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (ii)

the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the

Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an

order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section

1141(d)(4) of the Bankruptcy Code, the Credit Parties have waived any discharge as to any

remaining DIP Obligations or Adequate Protection Obligations and with respect to the Prepetition

Debt.   The Borrower and DIP FILO Guarantors shall not propose or support any plan of

reorganization or sale of all or substantially all of the Borrower's and DIP FILO Guarantors' assets,

or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible

payment in full, no later than the effective date of such plan or sale, of (i) all allowed claims of the

DIP FILO Lender on account of the Prepetition FILO Debt and (ii) all allowed Adequate Protection

Claims of the Prepetition FILO Lender, in each case in cash or such other consideration acceptable

to the DIP FILO Lender and the Prepetition FILO Lender, as applicable, regardless of whether the

DIP FILO Superpriority Claims become undersecured at any point during the Chapter 11 Cases and regardless of the value of the Prepetition ABL Priority Collateral and the value of the gross accounts receivable and gross inventory; *provided, however*, that in the event that the Adequate Protection Claims of the Prepetition FILO Lender become undersecured, such Adequate Protection Claims shall receive treatment that is, in the reasonable determination of the Prepetition FILO Lender, no worse than the treatment of the Adequate Protection Claims of the Prepetition Superpriority Lenders.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Debt, the Prepetition Liens and the Adequate Protection Claims and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are paid in full, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated.

26.     *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding any other provision of this Final Order or any other order entered by the Court, no DIP Term Loans or DIP FILO Loans, DIP Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Committee (as defined below), or any trustee appointed in the Chapter 11 Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against the DIP Secured Parties, or the Prepetition Secured Parties, or their respective predecessors-in-interest, agents,

affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Debt, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the adequate protection, adequate protection liens and superpriority claims granted to the Prepetition Secured Parties under this Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition Debt, the DIP Obligations and/or the liens, claims, rights, or security interests granted under the Interim Order, this Final Order, the DIP Documents or the Prepetition Credit Documents including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) to prevent, hinder, or otherwise delay the Prepetition Secured Parties', or the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition Debt, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the Interim Order or this Final Order, as applicable, each in accordance with the DIP Documents, the Prepetition Credit Documents or this Final Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties, the DIP Secured Parties under this Final Order, the Prepetition Credit Documents or the DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, adequate protection liens and superpriority claims and liens granted to the Prepetition Secured Parties, unless all DIP Obligations, Prepetition Debt, Adequate Protection, and claims granted to the DIP Secured Parties or Prepetition Secured Parties under this Final Order, have been refinanced or paid in full or otherwise agreed to in writing by

91

the DIP Secured Parties; or (v) to seek to pay any amount on account of any claims arising prior

to the Commencement Date unless such payments are agreed to in writing by the DIP Lenders, in

or are otherwise included in the "Approved Cash Flow Forecast" (as initially attached to the

Motion, and as updated in accordance with the terms of the DIP Documents); *provided*, that,

notwithstanding anything to the contrary herein, the Creditors' Committee may use the proceeds

of the DIP Term Loans, DIP Collateral (including Cash Collateral) and/or the Carve-Out to

investigate, but not prosecute, an actual or potential Challenge; *provided, further*, that no more

than an aggregate of $250,000 of the proceeds of the DIP Term Loans, DIP Collateral (including

Cash Collateral) and/or the Carve-Out may be used by the Creditors' Committee for the foregoing

in the immediately preceding proviso (the "**Investigation Budget**"); *provided*, *further*, that to the

extent the Creditors' Committee incurs fees and expenses in an amount in excess of the

Investigation Budget, the Creditors' Committee may seek payment of such fees as an

administrative expense as part of its professionals' fee applications; *provided, further*, that all

parties' rights to object to such fees and expenses on the grounds that such fees and expenses are

not reasonable are reserved.

27.    *Real Property Leases*.  As a requirement and precondition to the DIP Secured

Parties' willingness to lend and in furtherance of the DIP Superpriority Claims provided for in this

Final Order and pursuant to the DIP Documents, which are payable from and have recourse to all

of the Debtors' pre- and post-petition property including, among other things, each lease of

Leasehold Property (as defined in the DIP Credit Agreement) to which a Debtor is a counterparty

(each, a "**Real Property Lease**"), the DIP Secured Parties shall have the following protections

with respect to the Debtors' Real Property Leases, regardless of whether any particular Real

Property Lease or group of Real Property Leases constitutes Collateral, which protections shall be

enforced by the DIP Agents or DIP Secured Parties as authorized, approved, and granted pursuant

to the provisions of this Final Order and in accordance with the terms of the DIP Credit Agreement

(and, after the indefeasible Payment in Full of the DIP Obligations, (i) the rights of the DIP Agents

and the DIP Secured Parties shall automatically transfer and be available to the Prepetition Secured

Parties, subject to the terms of the Prepetition Intercreditor Agreements and the Prepetition

Collateral Trust Agreements, (ii) defined terms used in this paragraph 27 relating to the DIP

Documents shall be deemed to be references to corresponding defined terms relating to the

Prepetition Credit Documents, (iii) any notice herein required to be delivered pursuant to this

paragraph 27 to the DIP Agents shall instead be required to be delivered to each of the Prepetition

ABL Agent and the Prepetition Collateral Trustee, and (iv) the automatic stay provisions pursuant

to section 362 of the Bankruptcy Code are vacated and modified to the extent necessary so as to

permit the DIP Agents, the DIP Secured Parties, the Prepetition ABL Agent and the Prepetition

Collateral Trustee, as applicable, and the Prepetition Secured Parties to exercise any of their rights

with respect to Real Property Leases under this paragraph 27):

        (a)      **Remedies Upon an Event of Default.**  If an Event of Default shall have

occurred and be continuing, the DIP Agents for the benefit of the DIP Secured Parties shall, with

respect to any Real Property Lease or group of Real Property Leases, be permitted, and are hereby

authorized, approved, and granted the following rights and remedies:

        (i)       to exercise the Debtors' rights pursuant to section 365(f) of the Bankruptcy
Code with respect to any such Real Property Lease(s) and, subject to this
Court's approval after notice and hearing, assign any such Real Property
Lease(s) in accordance with section 365 of the Bankruptcy Code
notwithstanding any language to the contrary in any of the applicable lease
documents or executory contracts;

        (ii)      to require any Debtor to complete promptly, pursuant to section 363 of the
Bankruptcy Code, subject to the rights of the DIP Agents, DIP Secured
Parties or applicable Prepetition Secured Parties (if applicable) to credit bid

93

(unless otherwise ordered by the Court), an Asset Sale[23] of any such Real Property Lease(s) in one or more parcels at public or private sales, at the DIP Agents' offices or elsewhere, for cash, at such time or times and at such price or prices and upon such other terms as the DIP Agents or DIP Secured Parties may deem commercially reasonable;

(iii)   to access the leasehold interests of the Debtors or debtors in possession in any such Real Property Lease(s) for the purpose of (A) marketing such property or properties for sale and (B) removing any Collateral thereon or arranging for the Asset Sale of any such Collateral except to the extent prohibited by the terms of the Real Property Lease (unless the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code); *provided* that the foregoing shall not preclude any counterparty to a Real Property Lease from an opportunity to be heard in this Court on notice with respect to the foregoing;

(iv)   (A) to find an acceptable (in the DIP Agents' or the DIP Requisite Lenders' good faith and reasonable discretion) replacement lessee, which may include the DIP Agents, the DIP Secured Parties or any of their affiliates, to whom such Real Property Lease(s) may be assigned, (B) to hold, and manage all aspects of, an auction or other bidding process to find such acceptable replacement lessee, (C) in connection with any such auction, agree, on behalf of the Debtors, to reimburse reasonable fees and expenses of any stalking horse bidder, if necessary, and/or (D) to notify the Debtors of the selection of any replacement lessee pursuant to this paragraph 27, upon receipt of which the Debtors shall promptly (1) file a motion seeking, on an expedited basis, approval of the Debtors' assumption and assignment of such Real Property Lease(s) to such proposed assignee, and (2) cure any defaults, if any, that have occurred and are continuing under such Real Property Lease(s) to the extent required by the Court (subject to the DIP Secured Parties' right to cure defaults as set forth in paragraph 27(e) of this Final Order); or

(v)   to direct the Debtors to (A) assign any such Real Property Lease(s) to the DIP Agents or DIP Secured Parties as Collateral securing the DIP Obligations, subject to clause (B), if applicable, (B) seek this Court's approval of the assumption of any such Real Property Lease(s) to the extent that this Court determines pursuant to a final order that an assumption is required in order to assign such lease or leases as Collateral, and (C) promptly cure any default that has occurred and is continuing under such Real Property Lease(s) to the extent required by the Court; *provided* that any assignment of any such Real Property Lease(s) as Collateral

---

[23]   **"Asset Sale"** shall mean (a) the sale, lease, transfer, assignment, conveyance or other disposition (including any sale and lease back transaction) of any assets or rights by the Company or any of its Restricted Subsidiaries (as defined in the DIP Credit Agreement); or (b) the issuance or sale of equity interests by any Restricted Subsidiary or the sale by the Company or any of its Restricted Subsidiaries of equity interests in any Restricted Subsidiary.

securing the applicable DIP Obligations shall not impair the Debtors' ability to subsequently assume (if not already assumed) and assign such Real Property Lease(s) pursuant to section 365 of the Bankruptcy Code or to enjoy the protections of section 365(f) of the Bankruptcy Code with respect to any such assignment.

(b) <u>Right to Credit Bid</u>.  Prior to any assignment of any Real Property Lease or group of Real Property Leases, the Debtors shall first provide at least five (5) business days' prior written notice (the "**Initial Notice Period**") to the DIP Agents, unless such notice provision is waived by the DIP Agents and the DIP Requisite Lenders, which Initial Notice Period may be extended up to a further twenty-five (25) days by the DIP Agents or the DIP Requisite Lenders in each of their sole discretion by delivering written notice of such extension to the Debtors prior to expiration of the Initial Notice Period, and by any further period as is mutually agreeable between the DIP Agents or the DIP Requisite Lenders and the Company (such notice period being the "**Aggregate Notice Period**").   During such notice period, the DIP Agents shall be permitted, subject to the terms of the DIP Documents and unless otherwise ordered by the Court, to credit bid forgiveness of some or all of the outstanding DIP Obligations (in an amount equal to at least the consideration offered by any other party in respect of such assignment) outstanding under the DIP Facilities as consideration in exchange for any such Real Property Lease(s) *provided* that to the extent the Company is entitled to retain a portion of the total consideration paid in respect of such assignment in accordance with the DIP Credit Agreement, the applicable portion of the consideration to be retained by Company shall be paid in cash (*provided* that such proceeds shall constitute DIP Collateral and Cash Collateral).  In addition, in connection with the exercise of any of the DIP Agents' or the DIP Requisite Lenders' rights pursuant to the DIP Credit Agreement or this Final Order to direct or compel a sale or other Asset Sale of any Real Property Lease(s), the DIP Agents, on behalf of the DIP Lenders, shall be permitted to credit bid forgiveness of some or

all of the outstanding DIP Obligations (in an amount equal to at least the consideration offered by any other party in respect of such sale or other Asset Sale) as consideration in exchange for such Real Property Lease(s).  Pursuant to section 364(e) of the Bankruptcy Code, absent a stay pending appeal, the DIP Lenders' right to credit bid shall not be affected by the reversal or modification on appeal of the Debtors' authorization pursuant to this Final Order to obtain credit and incur debt as and in accordance with the terms set forth herein.

(c)      Right of First Refusal with Respect to Proposed Assignments and Rejections of Real Property Leases.  Unless all DIP Obligations shall have indefeasibly been satisfied pursuant to the DIP Credit Agreement, the Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Debtors under the DIP Credit Agreement and this Final Order if any of the Debtors seeks, the sale or other Asset Sale of, or the rejection or other termination of, or if there is entered an order pursuant to section 365 of the Bankruptcy Code assigning or rejecting, any Real Property Lease or group of Real Property Leases, or if any Real Property Lease or group of Real Property Leases is deemed rejected due to the expiration of the assumption period provided for in section 365(d)(4) (the "**Statutory Rejection Date**"), without the Debtors' first providing thirty (30) days' prior written notice to the DIP Agents, or if such notice is given more than thirty (30) days in advance of the Statutory Rejection Date, prior written notice at least equal to the Aggregate Notice Period; *provided, however*, that the right of first refusal of the DIP Agents as set forth in this paragraph 27(c) shall not apply to (x) any assignment or sale of a Real Property Lease or group of Real Property Leases to a winning bidder at an auction authorized by this Court, and (y) so long as no Event of Default has occurred and is ongoing, or to the extent such action would result in an Event of Default, any assignment or sale of a Real Property Lease or group of Real Property Leases that are not material leases generating cash proceeds (net of reasonable costs,

expenses, and any applicable taxes) up to $250,000 in the aggregate value for all such sales or

assignments. During such notice period, the DIP Agents shall be permitted to:

(i)    (A) notify the Debtors that it elects to take action pursuant to this paragraph, upon receipt of which the Debtors shall promptly withdraw any previously filed rejection motion, (B) find an acceptable (in the DIP Agents' or DIP Requisite Lenders' good faith and reasonable discretion) replacement lessee, which may include the DIP Agents, the DIP Lenders or any of their affiliates, to whom any such any Real Property Lease or group of Real Property Leases may be assigned (subject to Court approval), (C) hold, and manage all aspects of, an auction or other bidding process to find such acceptable replacement lessee, (D) in connection with any such auction, agree, on behalf of the Debtors (and subject to Court approval) to reimburse the reasonable fees and expenses of any stalking horse bidder, if necessary, and (E) notify the Debtors of the selection of any replacement lessee pursuant to this paragraph, upon receipt of which the Debtors shall (1) not seek to reject any such Real Property Lease(s), (2) promptly withdraw any pending motion to reject any such Real Property Lease(s), (3) promptly file a motion seeking, on an expedited basis, approval of the Debtors' assumption and assignment of such Real Property Lease(s) to the DIP Agents or the DIP Requisite Lenders' proposed assignee, and (4) promptly cure any defaults that have occurred and are continuing under such Real Property Lease(s) to the extent authorized by the Court; or

(ii)   direct the Debtors to (A) assign any Real Property Lease or group of Real Property Leases as Collateral securing the DIP Obligations (subject to Court approval), (B) seek the Court's approval of the assumption of any such Real Property Lease(s) if it is determined pursuant to a final order of this Court that an assumption is required in order to assign such lease(s) as Collateral, and (C) promptly cure any defaults that have occurred and are continuing under such Real Property Lease(s) (subject to the DIP Lenders' right to cure defaults as set forth in paragraph 27(e) of this Final Order) to the extent authorized by the Court; *provided* that any assignment of any Real Property Lease(s) as Collateral securing the DIP Obligations shall not impair the Debtors' ability to subsequently assume (if not already assumed) and assign any such Real Property Lease(s) pursuant to section 365 of the Bankruptcy Code or to enjoy the protections of section 365(f) of the Bankruptcy Code with respect to any such assignment.

(iii)  Notwithstanding anything to the contrary herein, the foregoing rights of the DIP Agents set forth in this paragraph shall not apply to Real Property Leases that are rejected, terminated, sold, or assigned on the effective date of any plan of reorganization in any of the Chapter 11 Cases that, among other things, indefeasibly repays the DIP Obligations in full on the effective date thereof. For the avoidance of doubt, on or prior to the thirtieth (30)

day prior to the Statutory Rejection Date (as provided in section 365(d)(4) of the Bankruptcy Code), the Debtors shall have delivered written notice to the DIP Agents of each outstanding Real Property Lease that they intend to reject (including, without limitation, through statutory rejection on the Statutory Rejection Date) from and after the date of such notice (or, if applicable, notice that the Debtors have obtained the applicable landlord's consent to extension of the Statutory Rejection Date); *provided* that if the Debtors fail to deliver any such notice to the DIP Agents prior to such date with respect to any such Real Property Lease(s) (or a notice indicating that no such Real Property Lease(s) shall be rejected), the Debtors shall be deemed, for all purposes hereunder, to have delivered notice to the DIP Agents as of such date that they intend to reject all outstanding Real Property Leases.

(d)     <u>Assumption Orders</u>.  Any order of this Court approving the assumption of any Real Property Lease shall specifically provide that the applicable Debtor shall be authorized to assign such Real Property Lease pursuant to, and to enjoy the protections of, section 365(f) of the Bankruptcy Code subsequent to the date of such assumption.  To the extent that such provision is for any reason not included in any order of the Court approving the assumption of any Real Property Lease, then such Real Property Lease may not be assumed by the applicable Debtor unless the order approving the assumption provides for the assignment of such Real Property Lease, on the date of such order, to an acceptable (in the DIP Agents' or the DIP Requisite Lenders' good faith and reasonable discretion) replacement lessee (which may include the DIP Agents, the DIP Lenders, or their respective affiliates).

(e)     <u>DIP Lenders' Right to Cure Defaults</u>.  If any of the Debtors are required to cure any monetary defaults under any Real Property Lease pursuant to any order of this Court or otherwise in connection with any assumption or assumption and assignment of any such Real Property Lease pursuant to section 365(f) of the Bankruptcy Code, and such monetary default is not, within five (5) business days of the receipt by such Debtor of notice from the DIP Agents pursuant to the applicable provision(s) of the DIP Credit Agreement or any other notice from the

DIP Agents requesting the cure of such monetary default, cured in accordance with the provisions of such applicable court order as arranged by the DIP Agents, the DIP Agents may cure any such monetary defaults on behalf of the applicable Debtor(s).

(f)     <u>Priorities</u>.  For the avoidance of doubt, nothing set forth in this paragraph 27 shall affect the relative priorities of liens and claims set forth herein and in the Prepetition Intercreditor Agreements and Prepetition Collateral Trust Agreements.  Unless and until Payment in Full of the Prepetition ABL Debt, nothing set forth in this paragraph 27 shall permit the DIP Agents or the DIP Lenders, or any of their designees or agents, to exercise any rights or remedies with respect to Prepetition ABL Priority Collateral.

28.     *Approved Cash Flow Forecast*.  The Approved Cash Flow Forecast is approved on a final basis.  Proceeds of the DIP Facility and Cash Collateral under this Final Order shall be used by the Credit Parties in accordance with the DIP Credit Agreement and this Final Order and consistent with the Approved Cash Flow Forecast or as otherwise agreed by the DIP Administrative Agent (subject to permitted variances).  None of the DIP Secured Parties' consent (if any) to, or acknowledgment of, the Approved Cash Flow Forecast shall be construed as consent to use of the proceeds of the DIP Facilities or Cash Collateral beyond the maturity date set forth in the DIP Credit Agreement, regardless of whether the aggregate funds shown on the Approved Cash Flow Forecast have been expended.

29.     *Payment of Fees and Expenses*.  The Credit Parties are authorized to pay the DIP Fees and Expenses, as provided in the DIP Documents.  Subject to the review procedures set forth in this paragraph 29, payment of all DIP Fees and Expenses and Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court.  Professionals for the DIP Secured Parties and the Prepetition Secured Parties shall not be required to comply with the U.S.

Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each professional shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the Debtors, the U.S. Trustee and counsel for the Creditors' Committee (together, the "**Review Parties**").  Any objections raised by the Debtors, the U.S. Trustee or the Creditors' Committee  with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice (the "**Review Period**").  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the end date of the Review Period, the Credit Parties shall pay such invoices within five (5) days. If an objection to a professional's invoice is received within the Review Period, the Credit Parties shall promptly pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay on or after the Closing Date the DIP Fees and Expenses and Adequate Protection Fees and Expenses incurred on or prior to such date without the need for any professional engaged by the DIP Secured Parties or the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the Debtors).  No attorney or advisor to the DIP Secured Parties or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs,

and expenses paid prior to the Commencement Date by any of the Debtors to the (i) DIP Secured Parties in connection with or with respect to the DIP Facility; and (ii) Prepetition Secured Parties in connection or with respect to these matters, are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the Debtors or any other person.

30.     *Limits to Lender Liability*.  Nothing in this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties (in each case, in their capacities as such) of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Secured Parties comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Credit Parties.

31.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph 7 of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph

7 of this Final Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (a "**Committee**"), and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes unless: (a) such party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) or, solely with respect to the Creditors' Committee, has filed a motion seeking standing to pursue a Challenge on behalf of the Debtors' estates that attaches as an exhibit a complaint that sets forth with specificity the basis of the claims (x) by the Creditors' Committee within 90 calendar days after the appointment of the Creditors' Committee, (y) for any other party in interest with requisite standing within 75 calendar days after entry of the Interim Order, and (z) for Black Diamond Commercial Finance, L.L.C., through and including January 27, 2020 (the time period established by the foregoing clauses (x), (y) and (z), or any such later date as has been agreed to, in writing, by the Superpriority Requisite Lenders, the ABL Requisite Lenders and counsel to the DIP Agents, or as has been ordered by the Court for cause shown, the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Debt or the Prepetition Liens (including, but not limited to, the liens and claims under the Prepetition ABL Credit Facility) or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**"), against any of the Prepetition Secured Parties or their respective affiliates and subsidiaries and predecessors and each of their respective former, current or future officers,

partners, directors, managers, members, principals, employees, agents, related funds, investors,

financing sources, financial advisors, attorneys, accountants, investment bankers, consultants,

representatives and other professionals and the respective successors and assigns thereof, in each

case in their respective capacity as such (each a "**Representative**" and, collectively, the

"**Representatives**") in connection with matters related to the Prepetition Credit Documents, the

Prepetition Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-

appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed

adversary proceeding or contested matter; *provided, however*, that any pleadings filed in

connection with any Challenge shall set forth with specificity the basis for such challenge or claim

and any challenges or claims not so specified prior to the expiration of the Challenge Period shall

be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed

during the Challenge Period or the Court does not rule in favor of the plaintiff in any such

proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in

this Final Order, including, without limitation, those contained in paragraph 7 of this Final Order,

shall be binding on all parties in interest; (b) the obligations of the Credit Parties under the

Prepetition Credit Documents, including the Prepetition Debt, shall constitute allowed claims not

subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for

all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Prepetition

Liens on the Prepetition Collateral shall be deemed to have been, as of the Commencement Date,

legal, valid, binding, perfected, security interests and liens, not subject to recharacterization,

subordination, avoidance or other defense; and (d) the Prepetition Debt and the Prepetition Liens

on the Prepetition Collateral shall not be subject to any other or further claim or challenge by any

Committee, or any other party in interest acting or seeking to act on behalf of the Debtors' estates,

including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any Committee, if any, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Credit Documents shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, those contained in paragraph 7 of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Documents, the Prepetition Debt or the Prepetition Liens, and, in the event that any Person, including any Committee, seeks to pursue any claim or cause of action belonging to the Debtors or their estates, nothing in this Final Order shall excuse such Person from any requirement under applicable law to establish standing or authority to pursue such claims.  Furthermore, the terms of this Final Order are without prejudice to any party's right to contest any Challenge pursued by any party in interest (whether or not such

party in interest is acting or seeking to act on behalf of the Debtors' estates), including with respect to such party's standing to pursue such Challenge.  Any motion seeking standing shall attach a draft complaint or other pleading that sets forth such Challenge, and any Challenge not included therein shall be deemed forever waived, released, and barred.  For the avoidance of doubt, none of the foregoing challenge provisions set forth in this paragraph shall apply to any DIP Secured Party, in their capacities as such, and in no event shall the DIP Facility, DIP Obligations or DIP Liens be subject to challenge pursuant to this paragraph on avoidance or any other grounds by any party. For the avoidance of doubt, nothing in this paragraph shall be deemed to waive, release or bar the actions brought by Black Diamond Commercial Finance, L.L.C. ("**Black Diamond**") in the complaint [Docket No. 245] (the "**Black Diamond Complaint**") filed by Black Diamond on November 20, 2019 against certain of the Debtors and other parties named as defendants therein. The Black Diamond Complaint is a timely filed Challenge (timely filed within the 75 calendar day period set forth in this Final Order) to certain of the stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph 7 of this Final Order, subject to all claims and defenses of the Debtors, named defendants, and other parties in interest.

32.     *Postpetition Release*.  In addition,  notwithstanding anything to the contrary set forth herein, upon the repayment of all DIP Obligations owed to the DIP Agents and the DIP Secured Parties by Debtors and termination of the rights and obligations arising under the DIP Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agents), the DIP Agents and the DIP Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring, on or prior to the date of such repayment and termination, in connection with or related to the DIP Documents,

or this Final Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out on terms and conditions acceptable to the DIP Agents).

      33.    *Landlord Agreements; Access.*

      (a)    All collateral access agreements to which the Prepetition ABL Agent or the Prepetition Collateral Trustee is a party shall hereby continue to be deemed to be amended to include the DIP Agents as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the DIP Agents against, and binding upon, each landlord party thereto. Any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any DIP Collateral or Prepetition Collateral of the Debtors located on such leased premises, to the extent the same is not avoidable under sections 544, 545, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, is hereby expressly subordinated to the liens of the DIP Secured Parties and the Prepetition Secured Parties.

      (b)    Without limiting any other rights or remedies of the DIP Agents or the other DIP Secured Parties set forth in this Final Order, the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon three (3) business days' written notice to counsel to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, after the expiration of the Remedies Notice Period, that an Event of Default has occurred and is continuing, the DIP Agents, (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agents, enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon,

and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, without unreasonable interference from landlords, lienholders, or licensors thereunder; *provided, however*, that the DIP Agents (on behalf of the DIP Lenders) shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from the DIP Agents and that accrue during the period of such occupancy or use by DIP Agents calculated on a per diem basis. For the avoidance of doubt, (A) all of the Debtors' obligations under any applicable lease or license shall not be affected, limited, or otherwise modified by the rights granted to the DIP Agents pursuant to this paragraph and (B) any affected landlords, lienholders, and/or licensors shall retain all remedies available under applicable non-bankruptcy law. Nothing herein shall require the Debtors, the DIP Agents or the other DIP Secured Parties, to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agents and the other DIP Secured Parties herein.

34.   *Final Order Governs*.  In the event of any inconsistency between the provisions of this Final Order, the DIP Documents or any other order entered by this Court, the provisions of this Final Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents, including, without limitation, the Approved Cash Flow Forecast (subject to permitted variances).

35.     *Binding Effect; Successors and Assigns.*  Subject only to paragraph 31, the DIP

Documents and the provisions of this Final Order, including all findings herein, shall be binding

upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP

Secured Parties, the Prepetition Secured Parties, any Committee, and the Debtors and their

respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter

appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section

1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of

the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to

the benefit of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors and their

respective successors and assigns; *provided*, that the DIP Secured Parties and the Prepetition

Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including

Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or

similar responsible person appointed for the estates of the Debtors.

36.     *Exculpation.* Nothing in this Final Order, the DIP Documents, the existing

agreements or any other documents related to the transactions contemplated hereby shall in any

way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or

any Prepetition Secured Party of any liability for any claims arising from the prepetition or

postpetition activities of the Credit Parties in the operation of their businesses, or in connection

with their restructuring efforts.

37.     *Limitation of Liability.*  In determining to make any loan or other extension of credit

under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights

or remedies as and when permitted pursuant to this Final Order or the DIP Documents, none of the

DIP Secured Parties, or the Prepetition Secured Parties shall (i) be deemed to be in "control" of

the operations or participating in the management of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

38.     *Master Proof of Claim*. The Prepetition ABL Agent, the Prepetition Superpriority Agent, the Prepetition Term Agent and the Prepetition Indenture Trustee shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself and the applicable Prepetition Secured Parties for payment of the applicable Prepetition Debt arising under the applicable Prepetition Credit Documents, nor shall any other Prepetition Secured Party be required to file any proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself for payment of the Prepetition Debt arising under the Prepetition Credit Documents, *provided*, that Prepetition Secured Parties are required to file proofs of claim for any claim that does not arise under the Prepetition Credit Documents.  The statements of claim in respect of the Prepetition Debt set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Hearings, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each of the Prepetition ABL Agent, the Prepetition Superpriority Agent, the Prepetition Term Agent, the Prepetition Indenture Trustee and/or other Prepetition Secured Party is authorized to file in the Debtors' lead chapter 11 case, *In re Murray Energy Holdings Co., et al.,* Case No. 19-56885 (JEH), a single, master proof of claim

on behalf of the relevant Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Credit Documents and hereunder (each, a "**Master Proof of Claim**"), which shall be deemed asserted against each of the Debtors.  Upon the filing of a Master Proof of Claim, insofar as deemed asserted against each of the Debtors, the Prepetition ABL Agent, the Prepetition Superpriority Agent, the Prepetition Term Agent, the Prepetition Indenture Trustee and the Prepetition Secured Parties, and each of their respective successors and assigns, as applicable, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims (which names may be redacted in the publicly filed version of the Master Proof of Claim) against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Credit Documents, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 38 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be

provided upon written request to counsel to the Prepetition ABL Agent, the Prepetition Superpriority Agent, the Prepetition Term Agent, the Prepetition Indenture Trustee, as applicable.

39.    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law[24] and shall take effect and be fully enforceable *nunc pro tunc* to the Commencement Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

40.    *Modification of DIP Documents and Approved Cash Flow Forecast*.  The Credit Parties are hereby authorized, without further order of this Court, to enter into agreements with the DIP Secured Parties providing for any consensual non-material modifications to the Approved Cash Flow Forecast or the DIP Documents, or of any other modifications to the DIP Documents necessary to conform the terms of the DIP Documents to this Final Order, in each case consistent with the amendment provisions of the DIP Documents.

41.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

42.    *Payments Held in Trust*.  Except as expressly permitted in this Final Order or the DIP Documents, and, for the avoidance of doubt, excepting payments permitted by or made in accordance with or pursuant to this Final Order, the DIP Documents, the Approved Cash Flow Forecast (subject to any permitted variances), the ordinary course of business, and/or other order of this Court, in the event that any person or entity receives any payment on account of a security

---

[24]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to Payment in Full of all DIP Obligations under the DIP Documents and termination of the DIP Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Secured Parties (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to any DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Final Order.

43.    *Credit Bidding*.  Unless otherwise ordered by the Court, (a) subject to the express written direction of the DIP Requisite Lenders and the terms of the DIP Documents, each of the DIP Collateral Agent, on behalf of itself and the DIP Term Lenders and the DIP FILO Lender, shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Term Obligations and DIP FILO Obligations, respectively, in any sale of the DIP Collateral (or any part thereof); and (b) subject to the express written direction of the Requisite Lenders as defined in and under each of the Prepetition Superpriority Credit Agreement and the Prepetition Term Loan Credit Agreement, the Required Lenders as defined in the under Prepetition ABL Credit Agreement and the holders holding at least a majority in aggregate principal amount of the then outstanding notes under each of the Prepetition 12.00% Superparity Indenture, Prepetition 9.50% Superparity Indenture and Prepetition Parity Indenture and the terms of the applicable Prepetition Credit Documents, the Prepetition ABL Agent and the Prepetition Collateral Trustee, on behalf of itself and the applicable Prepetition Secured Parties, shall have the right to credit bid up to the full amount of their respective Prepetition Debt in any sale of the respective Prepetition Collateral (or any part thereof), subject in all respects to the Prepetition Intercreditor

112

Agreements and the Prepetition Collateral Trust Agreements, as applicable, in each case of (a) and (b), as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  The foregoing is without prejudice to any right the Creditors' Committee may have to argue that the Prepetition Secured Parties' right to credit bid under section 363(k) of the Bankruptcy Code should be limited for cause.

44.    *Maintenance of Letters of Credit; Modification of Stay with Respect to LC Cash Collateral; Administrative Expense Status*.

(a)    All Prepetition Letters of Credit issued for the account of the Debtors under the Prepetition ABL Credit Agreement shall continue in place and be deemed Outstanding LCs.  The Credit Parties are authorized to maintain the Outstanding LCs on an uninterrupted basis and to take all actions reasonably appropriate with respect thereto on an uninterrupted basis.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Outstanding LC Issuer to enforce all of their rights in respect to the Outstanding LCs and to protect, enforce and exercise all rights and remedies of the Outstanding LC Issuer under the Payoff Letter or applicable law, including, but not limited to, application of the LC Cash Collateral to reimburse the Outstanding LC Issuer for amounts paid due to presentment of Outstanding LCs and use of LC Cash Collateral to pay the professional fees and expenses of the Outstanding LC Issuer.

(c)    The Outstanding LC Issuer are authorized to maintain cash collateral accounts (each, a "**L/C Cash Collateral Account**") in which amounts shall be deposited in accordance with the Payoff Letter and this Final Order, to cash collateralize the Outstanding LCs.

113

The Outstanding LC Issuer holding such L/C Cash Collateral Account shall have a perfected, unavoidable first-priority lien, senior to all other prepetition and postpetition liens on any L/C Cash Collateral Account and any investment of the funds contained therein to secure the Outstanding LC Issuer's obligations under the Payoff Letter and in respect of the Outstanding LCs being secured by such L/C Cash Collateral Account, and a superpriority administrative expense claim under section 364(c)(1) of the Bankruptcy Code senior to all other administrative expense claims against the Debtors' estates (but junior to the DIP Term Superpriority Claims, the Adequate Protection Claims and the claims of the Prepetition Term Secured Parties arising under the Prepetition Term Credit Documents with respect to Prepetition Term Priority Collateral) to secure the Debtors' obligations under the Payoff Letter and in respect of the Outstanding LCs.  Subject to the immediately following sentence, the Debtors and their estates (and any successors thereto, including any Chapter 7 trustee) shall not have any authority, and are hereby prohibited from requesting authority, (i) under section 363 of the Bankruptcy Code or otherwise to use the funds deposited (or any investment of those funds) in any of the L/C Cash Collateral Accounts for any purpose at any time during these Chapter 11 Cases or in any Chapter 7 case of any Debtor converted thereto or (ii) to grant or suffer to exist a lien of any priority on any L/C Cash Collateral Account or the funds therein (or any investment of those funds) (in each case until such funds are released from such L/C Cash Collateral Account in accordance with this Final Order) to secure any other obligations of the Debtors or their estates.  Notwithstanding the foregoing, the DIP Liens shall attach to the Debtors' rights with respect to funds released from the L/C Cash Collateral

Accounts when any Outstanding LC terminates or expires and the Outstanding LC Issuer have returned to the Debtors such amounts.

(d)    The Outstanding LC Issuer have no obligation to renew Outstanding LCs and may issue notices of non-renewal in accordance with the terms of the Payoff Letter, the issuance of which, for the avoidance of doubt, shall not violate the automatic stay provisions of section 362 of the Bankruptcy Code.

45.    *Certain Governmental Matters*

(a)    Notwithstanding anything to the contrary in this Final Order or DIP Documents, nothing in this Final Order or the DIP Documents shall relieve the Debtors of any obligations under federal, state or local police or regulatory laws or under 28 U.S.C. § 959(b), provided that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

(b)    Notwithstanding anything to the contrary in this Final Order or the DIP Documents, nothing in this Final Order or the DIP Documents shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, or those of any State or any of the foregoing's respective agencies, departments or agents, and all such rights, claims and defenses shall be preserved in their entirety.

(c)    Paragraphs 30, 31, and 36 of this Final Order shall apply with respect to liabilities to governmental units under police or regulatory law only so long as the actions of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties, as applicable, have not constituted and do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or

115

otherwise cause lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law.  Paragraphs 32 and 37 of this Order shall apply with respect to liabilities to governmental units under police or regulatory law only so long as the actions of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties, as applicable, do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or otherwise cause lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law.  For the avoidance of doubt, in determining to make any loan or other extension of credit under the DIP Credit Agreement, permitting the use of Cash Collateral, performing under this Final Order and the DIP Documents in the ordinary course, no DIP Agent, DIP Lender or Prepetition Secured Party shall be deemed to have participated in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or to have otherwise caused lender liability to arise or assumed the status of control, responsible person, owner, or operator, *provided, however*, that foreclosing, exercising remedies, or becoming involved in decision making on debtors' compliance with police or regulatory laws or regulations would not be ordinary course performance.  Each DIP Agent, DIP Lender and Prepetition Secured Party preserves and is not waiving any defenses it may have to any claims as set forth in 42 U.S.C. § 9601(20)(F) or comparable federal, state and local law.

(d)      Notwithstanding anything to the contrary in this Final Order or the DIP Documents, nothing in this Final Order or the DIP Documents shall impair or adversely affect any right under applicable law of any governmental unit with respect to any financial assurance, letter of credit, trust, or bond or limit any governmental unit in the exercise of its police powers in accordance with section 362(b)(4) of the Bankruptcy Code.

116

(e)      Notwithstanding anything to the contrary in this Final Order or the DIP Documents, nothing in this Final Order or the DIP Documents shall impair or adversely affect the right of the United States or any State to object to any credit bid for cause.

(f)      Notwithstanding anything to the contrary in this Final Order or the DIP Documents, nothing in this Final Order or the DIP Documents shall be deemed to authorize the assumption, sale, assignment or other transfer by the Debtors, the DIP Agent, DIP Lenders, or the Prepetition Secured Parties of any agreements, grants, grant funds, licenses, permits, authorizations, contracts, leases, or other interests of the federal government (collectively, "**Federal Interests"**), without compliance with all terms of any statute, regulation or contract giving rise to the Federal Interests and with all applicable non-bankruptcy law; *provided, however*, that, for the avoidance of doubt, the foregoing shall in no way limit the granting of the DIP Liens and the Adequate Protection Liens on the DIP Collateral as set forth in this Final Order; *provided, further*, that all leases of the federal government shall be deemed Specified Leases under this Final Order.

46.      Nothing herein shall be deemed or construed as approval by the Court of the Debtors' entry into, or the terms of, any restructuring support agreement, including that certain restructuring support agreement entered into among the Debtors, certain consenting Lenders, and consenting Equity holders on October 28, 2019, and filed as Exhibit B to the First Day Declaration [Docket No. 10].

47.      The Debtors hereby agree that the lien and security interest in favor of the Huntington National Bank ("**Huntington**") in that certain Account Number XXXXXX6899 with a balance of approximately $400,000 pledged by the Company in favor of Huntington (the "**Pledged Account**") shall irrevocably constitute a Permitted Lien pursuant to section 6.2(q) of the

117

DIP Credit Agreement ("**Cash Management Obligation**"), in accordance with and subject to the terms of the DIP Credit Agreement, and shall not be subject to any priming lien granted in favor of the DIP Lenders or otherwise be impaired by this Final Order or the DIP Credit Agreement and such Pledged Account shall continue to serve as collateral for all obligations owing to Huntington under that certain Commercial Card Account Agreement dated November 30, 2018, together with all renewals, extensions and amendments thereto.

48.     *CONSOL Energy Inc. and Affiliates.* Notwithstanding anything to the contrary in the Interim Order, this Final Order, or the DIP Documents:

(a)     nothing in the Interim Order, this Final Order, or the DIP Documents shall be deemed or interpreted to authorize the Debtors, the DIP Agents, the DIP Term Secured Parties, the DIP FILO Secured Parties, the DIP Secured Parties, the Prepetition Secured Parties, or any other person, without CONSOL's prior, express, written consent (which consent CONSOL may condition or withhold in its sole discretion), to sell, lease, convey, otherwise transfer, assume, or assume and assign any of the CONSOL Property Interests (as that term is defined in the Objection [Docket No. 267] that CONSOL Energy Inc. and its affiliates (collectively, "**CONSOL**") filed in the Chapter 11 Cases) solely to the extent such CONSOL Property Interests are valid and enforceable property rights of CONSOL; *provided, however*, that the preceding sentence shall in no way limit (i) the granting of the DIP Liens and the Adequate Protection Liens on the DIP Collateral as set forth in this Final Order or (ii) the Debtors' capacity (subject to compliance with section 363 of the Bankruptcy Code and other applicable law) to sell or convey the Debtors' or their estates' interests in the DIP Collateral.  For the avoidance of doubt, and notwithstanding anything to the contrary in the Interim Order, this Final Order, or the DIP Documents, and solely to the extent the CONSOL Property Interests are valid and enforceable property rights of CONSOL,

(x) nothing in the Interim Order, this Final Order, or the DIP Documents (and none of the DIP Liens or Adequate Protection Liens) shall or does divest, attach to, or otherwise encumber, limit, or otherwise affect the CONSOL Property Interests, (y) the CONSOL Interests (as that term is defined in the CONSOL Objection) (and all of CONSOL's claims, defenses, rights, and remedies relating to or in connection with the CONSOL Interests, including, without limitation, any defenses or rights of recoupment or set-off), to the extent such CONSOL Interests are valid and enforceable, shall be and hereby are preserved in their entirety, and (z) from and after the Petition Date, the applicable Debtors shall continue to comply with the Bankruptcy Code with respect to their respective covenants and other obligations under each executory contract and unexpired lease with CONSOL, pending the Court's decision on whether to approve the assumption, assumption and assignment, or rejection thereof, *provided* that nothing in this (z) requires the Debtors to make any payments or comply with any obligations related to prepetition unsecured claims pending the assumption or assumption and assignment of such executory contract or unexpired lease (and nothing prevents the Debtors from asserting that any such claims are not due or prevents CONSOL from arguing that such amounts are due) or prevents the Debtors from seeking (or CONSOL from opposing any request by the Debtors or any other party in interest) to assume, assume and assign, or reject any such executory contract or unexpired lease.

(b)     Subject to a commercially reasonable non-disclosure agreement reasonably acceptable to the Debtors and CONSOL, the Debtors will provide to CONSOL, on an "advisor's eyes only" basis, weekly reporting on budget-to-actual variances with respect to the Debtors' compliance with the Approved Cash Flow Forecast containing the same detail as is being provided to any other party in these bankruptcy cases.  The Debtors shall consult with and respond in a

119

commercially reasonable manner with CONSOL's advisors regarding the information contained in the weekly reporting.

49.     *No Third Party Rights*.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

50.     Nothing in the DIP Credit Agreement and/or this Final Order, or any related documents, shall alter or modify the terms and conditions of any insurance policies or related agreements.

51.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

52.     *Necessary Action*.  The Debtors are authorized to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Final Order.

53.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

54.     The Debtors shall serve this order in accordance with all applicable rules and orders and shall file a certificate of service evidencing compliance therewith.

SO ORDERED.

Copies to Default List.

## **Exhibit 1**

**Approved Cash Flow Forecast**

Consolidated view (MEC + WKY)
DIP Budget - Proposal

| ($m) | | Fcst Week 1 | Fcst Week 2 | Fcst Week 3 | Fcst Week 4 | Fcst Week 5 | Fcst Week 6 | Fcst Week 7 | Fcst Week 8 | Fcst Week 9 | Fcst Week 10 | Fcst Week 11 | Fcst Week 12 | Fcst Week 13 | 13 week Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Ending:** | | **11/30/19** | **12/07/19** | **12/14/19** | **12/21/19** | **12/28/19** | **01/04/20** | **01/11/20** | **01/18/20** | **01/25/20** | **02/01/20** | **02/08/20** | **02/15/20** | **02/22/20** | |
| Cash Receipts | $ | 55.7 | $ 29.2 | $ 18.4 | $ 56.3 | $ 62.0 | $ 20.3 | $ 48.2 | $ 12.3 | $ 89.9 | $ 8.9 | $ 27.0 | $ 15.5 | $ 114.6 | $ 558.2 |
| Cash Disbursements | | | | | | | | | | | | | | | |
| Payroll and Benefits | | (7.0) | (16.8) | (12.0) | (19.0) | (8.3) | (18.7) | (10.1) | (21.2) | (8.3) | (17.6) | (9.5) | (19.4) | (7.4) | (175.4) |
| Opex | | (30.4) | (24.2) | (22.1) | (22.7) | (21.5) | (18.2) | (23.6) | (20.4) | (26.0) | (20.3) | (21.6) | (23.7) | (19.3) | (294.0) |
| Taxes | | (12.0) | (2.7) | (0.9) | (0.9) | (0.9) | (4.5) | - | (1.6) | (0.9) | (7.5) | - | - | (0.9) | (34.0) |
| **Net Operating Cash Flow** | $ | 6.4 | $ (14.5) | $ (16.7) | $ 13.6 | $ 31.3 | $ (21.1) | $ 14.5 | $ (30.9) | $ 54.6 | $ (36.6) | $ (4.0) | $ (27.7) | $ 86.9 | $ 54.8 |
| Restructuring Related Disbursements | | (20.0) | (21.0) | (11.8) | (10.0) | (9.0) | (16.5) | (9.0) | (10.8) | (9.0) | (14.0) | (6.7) | (1.5) | (8.5) | (152.8) |
| Financing | | (2.9) | - | - | - | - | (5.2) | - | - | - | (4.4) | - | - | - | (12.5) |
| **Net Cash Flow** | $ | (16.6) | $ (35.5) | $ (28.5) | $ 3.6 | $ 22.3 | $ (42.8) | $ 5.5 | $ (41.7) | $ 45.6 | $ (54.9) | $ (10.8) | $ (35.2) | $ 78.4 | $ (110.5) |
| **Cash Balance** | | | | | | | | | | | | | | | |
| Beginning Balance | $ | 81.7 | $ 65.2 | $ 29.7 | $ 1.2 | $ 4.8 | $ 27.1 | $ (15.7) | $ (10.2) | $ (51.9) | $ (6.3) | $ (61.2) | $ (72.0) | $ (107.2) | $ 81.7 |
| Net Cash Flow | | (16.6) | (35.5) | (28.5) | 3.6 | 22.3 | (42.8) | 5.5 | (41.7) | 45.6 | (54.9) | (10.8) | (35.2) | 78.4 | (110.5) |
| **Ending balance** | $ | 65.2 | $ 29.7 | $ 1.2 | $ 4.8 | $ 27.1 | $ (15.7) | $ (10.2) | $ (51.9) | $ (6.3) | $ (61.2) | $ (72.0) | $ (107.2) | $ (28.7) | $ (28.7) |
| **GLAS Segregated Account** | $ | 57.0 | $ 57.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 | $ 207.0 |
| **Total Liquidity** | $ | 122.2 | $ 86.7 | $ 208.2 | $ 211.8 | $ 234.1 | $ 191.3 | $ 196.8 | $ 155.1 | $ 200.7 | $ 145.8 | $ 135.0 | $ 99.8 | $ 178.3 | $ 178.3 |

Case 19-12502 Doc 431 Filed 12/12/19 Entered 12/12/19 15:34:17 Document Page 122 of 122 Desc