**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |
|---|---|
| _____ ) | Chapter 11 |
| ) | |
| ) | Case No.: 19-56885 (JEH) |
| ) | |
| In re: ) | Adv. Proc. No.: _____. |
| ) | |
| MURRAY ENERGY HOLDINGS CO., et al.,[1] ) | Judge John E. Hoffman |
| ) | |
| ) | |
| Debtors. ) | (Joint Administration Granted) |
| ) | |
| JETSON MITCHELL, individually and on behalf ) | |
| of all others similarly situated, ) | |
| ) | |
| SHERMAN RIDER, individually and on behalf ) | |
| of all others similarly situated, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| MURRAY ENERGY CORPORATION and ) | |
| THE AMERICAN COAL COMPANY, INC. ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

---

[1] Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. Such information may be obtained on the website of the debtors' claims and noticing agent at https://cases.primeclerk.com/MurrayEnergy. The location of Debtor Murray Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 46226 National Road, St. Clairsville, Ohio 43950.

## CLASS ACTION ADVERSARY PROCEEDING COMPLAINT

Plaintiffs Jetson Mitchell and Sherman Rider, individually, and on behalf of all other workers similarly situated, bring this putative class action adversary proceeding against Defendants Murray Energy Corporation ("Murray") and The American Coal Company, Inc. ("TACC") (collectively "Defendants"), and state as follows:

## SUMMARY OF THE ACTION AND DISTRICT COURT PROCEEDINGS

1.      This action arises out of Defendants' violation of the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq.,* in failing to provide required advance notice to workers in connection with Defendants' 2017 plant closing at the Galatia Mining Complex ("Galatia").

2.      The WARN Act, 29 U.S.C. § 2102, establishes that "[a]n employer **shall not order a plant closing** or mass layoff **until the end of a 60-day period after the employer serves written notice of such an order** . . . to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee." (emphasis added).

3.      "When layoffs are made in stages before a plant shutdown, each group of employees laid off as a consequence of the closing is entitled to a full 60 days' notice of the employees' layoff." *UMW v. Martinka Coal Co.*, 202 F.3d 717, 722 (4th Cir. 2000).

4.      Under WARN, a "plant closing", unlike a "mass layoff," does *not* require that 33% of the workers at a site suffer "employment loss." 29 U.S.C. § 2101(a)(2), (3).

5.      Prior to April 22, 2017, Defendants developed a plan to close Galatia. In an effort to avoid WARN's required 60 days' advance notice "to each affected employee," Defendants mischaracterized the "plant closing" as a "mass layoff" and, on Saturday, April 22, 2017,

terminated, ***without notice***, more than 100 Galatia workers.  Two days later, on Monday, April

24, 2017, Defendants notified the remaining 250+ Galatia workers that they would be terminated

during a 14-day period starting July 21, 2017.

6.     In a related proceeding before the Southern District of Illinois, Defendants have

stipulated that, **"as a consequence of a proposed plant closing,"** 103 Galatia workers lost their

jobs on April 22, 2017, and two more Galatia workers lost their jobs on May 16 and June 3,

2017.  Exhibit 1, Joint Stipulations, p. 2, ¶¶ 3-4 *and* Exhibit A.  Plaintiff Mitchell seeks to

represent these 105 workers, none of whom received the 60 days' advance notice required by

WARN (the "Termination Class").

7.     Thereafter, in August 2017, after postponing the plant closing from July to late-

August, Defendants again postponed the plant closing, without providing "additional notice" of

postponement required by the WARN Act and 20 C.F.R. § 639.10.  Plaintiff Rider seeks to

represent a class of workers who did not receive proper additional notice regarding the

postponement of the 2017 Galatia plant closing (the "Postponement Class").

8.     Defendants' failures to comply with the WARN Act deprived over 150 "workers

and their families transition time to adjust to the prospective loss of employment, to seek and

obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these

workers to successfully compete in the job market."  20 C.F.R. § 639.1(a).

## DEFENDANTS' STIPULATIONS IN THE DISTRICT COURT

9.     On October 17, 2018, Mitchell and Rider filed their First Amended Complaint

(the "FAC") in the United States District Court for the Southern District of Illinois (the "District

Court") setting forth the same claims as set forth in this Adversary Proceeding seeking, *inter*

*alia*, back pay, benefits, and attorneys' fees as provided for under the WARN Act.

10.     On August 28 and October 2, 2019, Defendants filed Joint Stipulations in the District Court, stipulating: (A) to two class definitions; (B) **that certification of the classes was appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3);** and (C) **that both classes of workers lost their jobs** "as a consequence of a plant closing." *See* Ex. 1, Joint Stipulations; Exhibit 2, Supplemental Stipulations.

11.     On August 29, 2019, Plaintiffs filed their Motion to Certify Classes in the District Court.

12.     On October 23, 2019, Defendants filed their Response Consenting to Plaintiffs' Motion to Certify Classes. *See* Exhibit 3.

13.     Six days later, on October 29, 2019, before the District Court certified the classes defined in the Joint Stipulations, Defendants filed a voluntary petition for bankruptcy relief in this Court pursuant to chapter 11 of title 11 of the United States Code.

### THE PARTIES

14.     Prior to April 22, 2017, Plaintiff Mitchell was a full-time employee of Defendants for 21 years.

15.     Prior to October 3, 2017, Plaintiff Rider was a full-time employee of Defendants for approximately five (5) years.

16.     Prior to their terminations from Galatia, Plaintiffs Mitchell and Rider received regular compensation and other substantial employee benefits from Defendants, including, *inter alia*, health insurance and a 401(k) plan.

17.     Defendant Murray is an Ohio corporation engaged in the production and marketing of coal through various subsidiaries, including TACC. Murray's principal place of business is 46226 National Road, St. Clairsville, Ohio 43950.

4

18.    Murray is the largest privately owned coal company in the United States, producing approximately 76 million tons of coal each year.[2] Murray operates fifteen coal mines in five states—Illinois, Ohio, Kentucky, Utah, and West Virginia.

19.    Defendant TACC is a Delaware corporation, with its principal office at 46226 National Road, St. Clairsville, Ohio 43950.  TACC is a wholly-owned subsidiary of AmCoal Holdings, Inc.  In turn, AmCoal Holdings, Inc. is a wholly-owned subsidiary of Murray.

20.    Prior to October 14, 2017, TACC's business consisted of mining and processing coal at Galatia.

21.    Like Murray, TACC's principal office is located at 46226 National Road, St. Clairsville, Ohio 43950.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b) because this is a civil proceeding arising in or related to a case under title 11 of the United States Code.

23.    Pursuant to Federal Rule of Bankruptcy Procedure 7008, this adversary proceeding relates to the Chapter 11 case *In re Murray Energy Holdings Co., et al.*, pending in this Court as Case No. 19-56885 (JEH).

24.    Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this action is a proceeding arising in or related to a case under title 11 of the United States Code pending in this District.

25.    This Court has personal jurisdiction over Defendants pursuant to Federal Rule of Bankruptcy Procedure 7004(f).

---

[2] http://www.murrayenergycorp.com/about/

26.    Pursuant to Federal Rule of Bankruptcy Procedure 7008, Mitchell and Rider consent to the entry of final orders or judgment by this Court.

27.    This adversary proceeding is authorized by Federal Rule of Bankruptcy Procedure 7001(7) because this action is a proceeding to obtain equitable relief.

## THE WARN ACT

### Initial Notice Obligations Pursuant to the WARN Act

28.    The WARN Act, 29 U.S.C. § 2102, establishes that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee."

29.    The term "affected employees" is defined by 29 U.S.C. § 2101(a)(5) as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."

30.    The term "employment loss" is defined by 29 U.S.C. § 2101(a)(6) as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period."

31.    The term "plant closing" is defined by 29 U.S.C. § 2101(a)(2):

> The term "plant closing" means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees.

6

32.     The U.S. Department of Labor's regulations under the WARN Act further provide that "[a]n employment action that results in the effective cessation of production or the work performed by a unit, even if a few employees remain, is a shutdown."  20 C.F.R. § 639.3(b).

33.     The term "part-time employee" is defined by 29 U.S.C. § 2101(a)(8) as "an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required."

### Additional Notice Obligations Pursuant to the WARN Act

34.     In addition to the WARN Act's initial notice obligations, the WARN Act and 20 C.F.R. § 639.10 of the U.S. Department of Labor's implementing regulations obligate employers to provide "additional notice" if a "plant closing" or "mass layoff" is postponed:

> *a.* If the postponement is for less than 60 days, the additional notice should be given *as soon as possible* to the parties identified in § 639.6 and should include reference to the earlier notice, the date (or 14-day period) to which the planned action is postponed, and the reasons for the postponement. ***The notice should be given in a manner which will provide the information to all affected employees.***
>
> b. If the postponement is for 60 days or more, the additional notice should be treated as new notice subject to the provisions of §§ 639.5, 639.6 and 639.7 of this part. Rolling notice, in the sense of routine periodic notice, given whether or not a plant closing or mass layoff is impending, and with the intent to evade the purpose of the Act rather than give specific notice as required by WARN, is not acceptable.

20 C.F.R. § 639.10(a)-(b) (emphasis added).

7

## FACTUAL ALLEGATIONS

### The Galatia Mining Complex

35.     Galatia is located in Galatia, Illinois, a village with a population of less than 1,000 people.

36.     Prior to Galatia's closure in 2017, Defendants operated Galatia as a mining facility at which coal was both mined and cleaned in preparation for sale.

37.     Galatia housed two coal mines: the New Future Mine and the New Era Mine.

38.     In addition to the two mines, Galatia housed administrative offices, two warehouses, and a preparation plant at which coal from the mines was cleaned in preparation for sale.

39.     The workers at Galatia were not represented by a union.

### Murray's Control over Galatia

40.     Defendant TACC is a wholly-owned subsidiary of AmCoal Holdings, Inc., which is a wholly-owned subsidiary of Defendant Murray.

41.     According to Murray's website, "Murray Energy Corporation and its Subsidiary Companies employ nearly 7,000 employees and currently operate 17 active coal mines, consisting of 12 underground longwall mining systems and 42 continuous mining units in Alabama, Illinois, Kentucky, Ohio, Utah, and West Virginia."[3]

42.     During the period 2016 through 2017, Robert E. Murray served as both President of TACC and Chief Executive Officer of Murray.

43.     During the period 2016 through 2017, Murray and TACC shared responsibility for operations at Galatia.

---

[3] http://www.murrayenergycorp.com/ (last visited March 5, 2020).

44.     During the period 2016 through 2017, Murray was responsible for mine management decisions regarding Galatia, including how many employees were required.

45.     During the period 2016 through 2017, Murray determined benefits and wage rates for particular positions at Galatia.

46.     During the period 2016 through 2017, Murray compiled, reviewed, and approved all personnel policies affecting Galatia employees.

47.     During the period 2016 through 2017, Murray controlled whether TACC provided notice pursuant to the WARN Act in connection with adverse employment actions at Galatia.

48.     During the period 2016 through 2017, Murray and TACC shared administrative and purchasing services.

49.     During the period 2016 through 2017, there was an interchange of equipment and employees between TACC and Murray.

50.     Murray made the decision to shut down Galatia in 2017.

### Defendants' Proposed Closure of Galatia

51.     On April 22, 2017, TACC ended its employment relationship with 103 Galatia employees, including Plaintiff Mitchell, "as a consequence of a proposed plant closing." Ex. 1, Joint Stipulations, p. 2, ¶¶ 3-4 *and* Exhibit A. None of these employees returned to work at Galatia within six months of April 22, 2017. *Id.*

52.     On April 22, 2017, Defendants mailed form letters to the 103 employees whose employment at Galatia ended that day. These form letters contained the same body as the letter attached hereto as Exhibit 4.

53.     Defendants did not provide advance notice to any of the 103 Galatia employees whose employment ended on April 22, 2017.

54.    On or around April 24, 2017, Defendants provided letters to the remaining

employees at Galatia, including Plaintiff Rider, stating that these employees would suffer

permanent layoffs beginning on July 21, 2017:

> We are writing to inform you that there will be a mass layoff at The
> American Coal Company on July 21, 2017, or within the two (2)
> weeks there following.  ***This mass layoff is expected to be
> permanent.***
>
> We regret to inform you that your position may be eliminated in a
> fourteen (14) day window beginning July 21, 2017.  Employees will
> not be able to displace more junior employees out of their job
> positions as a result of this mass layoff.
>
> If you have any question or want additional information concerning
> this matter, please contact Paul Piccolini, Vice President – Human
> Resources and Employee Relations for Murray Energy Corporation
> . . .

Exhibit 5, April 24 Notice (emphasis added).

55.    On April 28, 2017, the last underground activity occurred at Galatia's New Era

Mine.

56.    On May 16, 2017, TACC ended the employment of John Cook as a consequence

of a proposed plant closing at Galatia.  Cook did not return to work at Galatia within six months

of May 16, 2017.  Ex. 1, Joint Stipulations, p. 2, ¶¶ 3-4 *and* Exhibit A.  Defendants did not

provide advance written notice to Cook containing the 14-day period during which his

employment separation was to occur.

57.    On June 3, 2017, TACC ended the employment of Michael R. Grant as a

consequence of a proposed plant closing at Galatia.  Grant did not return to work at Galatia

within six months of June 3, 2017.  Ex. 1, Joint Stipulations, p. 2, ¶¶ 3-4 *and* Exhibit A.

Defendants did not provide advance written notice to Grant containing the 14-day period during

which his employment separation was to occur.

10

58.     Defendants did not notify the Illinois Department of Commerce and Economic

Opportunity regarding the 103 Galatia employment separations occurring on April 22, 2017, or

the employment separations of John Cook and Michael R. Grant.

**Defendants' Postponement of the Galatia Closure**

59.     On June 20, 2017, Defendants sent a follow-up letter to Galatia employees

(including Plaintiff Rider) who had received the April 24, 2017 WARN Notices:

> We are writing to inform you that, due to unanticipated delays in
> completing the mining of the last longwall panel, the mass layoff at
> the The American Coal Company previously announced in a letter
> dated April 24, 2017, to occur on July 21, 2017, or within the two
> (2) weeks there following *will now occur on August 6, 2017, or the
> two weeks there following.*   This mass layoff is expected to be
> permanent.

Exhibit 6, June 20 Notice (emphasis added).

60.     On July 17, 2017, Roy Heidelbach, Murray's Assistant VP for Operations, wrote

to Matt Efaw, Galatia's General Superintendent, expressing concern about "the warn act notice

date" and requesting the date on which mine recovery (equipment removal) at Galatia would be

complete.  Ten minutes later, Efaw wrote back that recovery at the New Future Mine would

conclude by early October, and that work at the Preparation Plant would conclude by late

September or early October.

61.     On July 18, 2017, counsel for Murray reviewed draft documents entitled "TACC

Staffing reductions letter 7-18-17" and "Announcement of Planned Action – Second Update."

62.     On July 19, 2017, Robert E. Murray wrote a note to Efaw questioning the pace of

operations at Galatia: "Why are you running the longwall only one shift per day? We must lay

off July 21.  Please advise."

11

63.     On July 19, 2017, Heidelbach reacted to Robert Murray's insistence that layoffs occur on July 21: "Why does REM [Robert Murray] still talk of reduction on July 21?  We sent a note on it . . . No way to layoff on that date . . . ."

64.     On July 22 and 24, 2017, Efaw circulated drafts of an e-mail that he planned to send to Robert Murray, setting forth Defendants' plan to reduce the number of workers at Galatia to 100 or less by August 20, 2017:

> In this summary, we will take the operation from the current 221, to 100 by August 20th.  **By getting the operation to 100 or less employees, we are not required to provide any additional Warn notices.**

### Defendants' Failure to Provide Timely and Adequate Notice of Defendants' Postponement of the Plant Closing

65.     As of August 23, 2017, less than 100 workers remained at Galatia.

66.     On the evening of September 20, 2017, Matt Efaw e-mailed Ryan Murray, Murray's VP of Operations, asking for direction regarding the shutdown of operations at Galatia:

> Ryan
>
> I have a few questions about New Future beyond the recovery this week. **I will keep the plant personnel past this Friday, but plan to layoff all of the remaining hourly personnel on Saturday.**
>
> First, James Carr has informed me that he will remain on the property for a period of time to manage the supply houses and the supply yards.
>
> Once this is complete, there are a few things I need to do on the property past this Friday, and I will need to keep a few people.  I would like to keep Terry Schmitt, Alan McIntosh, and Mike Marvel on the scene for some additional time.
>
>     1) Capping the shafts: I would like to keep Alan McIntosh on the property while we cap shafts and do other duties
>
>     2) Winterizing shields:  I would like to keep Terry Schmitt and Kevin Coleman on hand to winterize the Big Dog / Little Dog / DBT shields

> 3) Prep Plant:  I would like to keep Mike Marvel on hand to help Paul
>    Shirel finish up cleaning and prepping the plant for idle

We will lay these Supervisors off once their services are no longer needed.

Please advise . . . Thank you,

Matt

67.    The following morning, September 21, Murray responded to Efaw:  "Can you

keep Mike Woods on for an extra week to help decommission and winterize the Prep Plant?  I

understand you are keeping Shirel and Marvel to assist as well."

68.    Four minutes later, Efaw responded to Murray:

> Yes, I planned to keep Mike until the plant was put to bed.
>
> Mac, Terry, and Kevin will primarily working on the surface / capping
> shafts / winterizing shields / shipping shields to AEMI / etc.
>
> We just knocked power to the bottom.  We are recovering the remaining
> high line, pumps, and equipment.
>
> We will finish tomorrow by dis-assembling the remaining equipment and
> hoisting out of the mine.

69.    On September 23, 2017, the last underground activity occurred at the New Future

Mine.

70.    On October 14, 2017, the last coal was shipped from Galatia's preparation plant.

71.    During the period August 21, 2017, through October 14, 2017, TACC ended the

employment of 47 Galatia workers as a consequence of a plant closing, including Plaintiff Rider,

whose employment at Galatia ended on October 3, 2017 (the "Postponement Class").  Ex. 1,

Joint Stipulations, p. 2 (¶¶ 5-6); Ex. 2, Supplemental Stipulations, Exhibit A.

72.    Defendants did not provide any member of the Postponement Class with written

notice regarding the postponement of Galatia's closure beyond August 20, 2017.

73.    Defendants did not notify the Illinois Department of Commerce and Economic

Opportunity regarding the postponement of Galatia's closure beyond August 20, 2017.

## CLASS ACTION ALLEGATIONS

74.    Plaintiff Mitchell brings this class action pursuant to Federal Rule of Bankruptcy

Procedure 7023, Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(3), and 23(c)(4), and the

WARN Act, 29 U.S.C. § 2104(a)(5), on behalf of himself and all others similarly situated, as

representative of the following Termination Class:

> All employees at Galatia whose employment ended involuntarily at
> any time during the period April 22, 2017, to July 21, 2017, as a
> consequence of a proposed plant closing, and who did not return to
> work at Galatia within six months of the date their employment
> ended. Excluded from the Class are any employees who were
> terminated for cause or who accepted early retirement incentives
> instead of being laid off.  Also excluded from the Class are any
> employees of David Stanley Consultants, Inc., and Redbird
> Machinery, LLC.

75.    A complete list of the Termination Class members is attached hereto as Exhibit 7.

76.    Plaintiff Rider brings this class action pursuant to Federal Rule of Bankruptcy

Procedure 7023, Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(3), and 23(c)(4), and the

WARN Act, 29 U.S.C. § 2104(a)(5) on behalf of himself and all others similarly situated, as

representative of the following Postponement Class:

> All employees at Galatia whose employment ended involuntarily at
> any time during the period August 21, 2017, to October 14, 2017, as
> a consequence of a plant closing.  Excluded from the Class are any
> employees who were terminated for cause.  Also excluded from the
> Class are any employees who (i) received an offer from Defendants
> to transfer employment to another site of employment; (ii) accepted
> the offer within 30 days of receiving the offer; and (iii) did not
> experience more than a six-month break in employment.

77.    A complete list of the Postponement Class members is attached hereto as Exhibit

8.

78.     Excluded from the Classes are any Defendant, its parents, subsidiaries, affiliates, predecessors, successors, officers, directors, and the immediate family members of such persons. Also excluded are any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

79.     Each Plaintiff is a member of the Class which he seeks to represent.

80.     The members of the Classes are ascertainable as the class definition describes a set of common characteristics sufficient to allow identification by Defendants and/or a prospective plaintiff to identify himself or herself as having a right to recover based on the description.

81.     Each Class is so numerous that joinder is impracticable.  *See* Ex. 1, Joint Stipulations, p. 2, ¶ 10.  The Termination Class consists of 105 workers.  Ex. 7.  The Postponement Class consists of 47 workers.  Ex. 8.

82.     Each Plaintiff's claims are typical of those in his respective Class and are based on the same legal and factual theories.  *See* Ex. 1, Joint Stipulations, p. 2, ¶ 11.

83.     There are numerous questions of law and fact common to the Termination Class, which include, but are not limited to the following:

> a.     whether Defendants were the "employer" the Termination Class members within the meaning of the WARN Act;
>
> b.     whether the Termination Class members suffered an "employment loss" as defined by the WARN Act as a result of a "plant closing" at Galatia;
>
> c.     whether the Termination Class members were "affected employees" as defined by the WARN Act;

15

  d.  whether Defendants failed to provide the notice required by the WARN Act;

  e.  whether Defendants can avail themselves of any defenses provided for in the WARN Act; and

  f.  whether the Termination Class members are entitled to damages permitted under the WARN Act, and, if so, in what amount.

*See* Ex. 1, Joint Stipulations, p. 2, ¶ 12.

  84.  There are numerous questions of law and fact common to the Postponement Class which include, but are not limited to the following:

  a.  whether Defendants were the "employer" of the Postponement Class members within the meaning of the WARN Act;

  b.  whether the Postponement Class members suffered employment losses as a result of a "plant closing" at Galatia in the fall of 2017;

  c.  whether the Postponement Class members were "affected employees" as defined by the WARN Act;

  d.  when Defendants knew of the postponement of the "plant closing" at Galatia beyond August 20, 2017;

  e.  whether Defendants provided timely and adequate notice of the postponement of the "plant closing" at Galatia beyond August 20, 2017;

  f.  whether Defendants can avail themselves of any defenses provided for in the WARN Act; and

  g.  whether the Postponement Class members are entitled to damages permitted under the WARN Act, and, if so, in what amount.

*See* Ex. 1, Joint Stipulations, p. 2, ¶ 13.

85.     Both Plaintiffs will fairly and adequately represent and protect the interests of their respective Classes.  Both Plaintiffs are ready, willing, and able to serve as class representatives.  Furthermore, Plaintiffs' counsel is experienced in handling class actions and competent to assert the interests of the Classes.  Neither Plaintiffs nor Plaintiffs' counsel have any interest that might cause them not to vigorously pursue this action.

86.     Certification of the Classes under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of these controversies.  A plaintiff class action will cause an orderly and expeditious administration of the each Class members' claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.  Moreover, the individual members of the Classes are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against Defendants.  *See* Ex. 1, Joint Stipulations, p. 3, ¶ 14.

87.     Alternatively, certification of the Classes under Federal Rule of Civil Procedure 23(b)(1) or 23(c)(4) is appropriate in that this action involves issues affecting all members of the Classes and inconsistent or varying adjudications with respect to individual members of the Classes would establish incompatible standards of conduct for the Defendants or adjudications with respect to individual members of the Classes as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

<u>**COUNT I**</u>
<u>**VIOLATION OF THE WARN ACT, 29 U.S.C. § 2101 *et seq.***</u>

88.     Plaintiff Mitchell incorporates by reference each and every allegation set forth above as if fully set forth herein.

89.     Defendants were a business enterprise subject to the provisions of the WARN Act because Defendants employed 100 or more employees (excluding part-time employees, as defined in 29 U.S.C. § 2101) during the period February 2017 through August 17, 2017.

90.     Defendants carried out a "plant closing" at Galatia that began on or around April 22, 2017, and concluded in the fall of 2017.  Once the Galatia "plant closing" was complete, production at Galatia ceased.

91.     During the thirty-day period beginning on April 22, 2017, Defendants ended their employment relationship with more than fifty Galatia employees (excluding part-time employees, as defined in 29 U.S.C. § 2101) as a consequence of a proposed "plant closing" at Galatia, and these employees were not invited to return to employment at Galatia within six months of the date on which their employment at Galatia ended.

92.     Plaintiff Mitchell and the Termination Class members' employment at Galatia ended involuntarily on or around April 22, 2017, for a period in excess of six months as a consequence of a proposed plant closing at Galatia.

93.     As a result of Defendants' plant closing at Galatia, Plaintiff Mitchell and the Termination Class members experienced "employment loss" as defined by the WARN Act on or around April 22, 2017.

94.     Defendants failed to provide 60-days' advance written notice of the employment losses suffered by Plaintiff Mitchell and the Termination Class members as a result of the Galatia "plant closing."

95.   No exception to the WARN Act is applicable here.

96.   Defendants did not act in good faith or with reasonable grounds for believing that their actions were not a violation of the WARN Act.  Defendants provided no advance written notice of termination.  Upon information and belief, Defendants could have given 60-days' written notice, but chose not to in an attempt to avoid payment of 60-days' wages to Plaintiff Mitchell and the Termination Class members.

97.   Accordingly, pursuant to 29 U.S.C. § 2104(a)(7), Plaintiff Mitchell and the Termination Class members are "aggrieved employees" because they are employees who have worked for an employer ordering a plant closing and who, as a result of the failure by the employer to comply with 29 U.S.C. § 2102, did not receive timely notice either directly or through their representative as required by 29 U.S.C. § 2102.  Plaintiff Mitchell and the Termination Class members are thus authorized to bring this action against Defendants for their violation of the WARN Act pursuant to 29 U.S.C. § 2104(a)(1).

98.   Pursuant to 29 U.S.C. § 2104(a)(1)(A), Plaintiff Mitchell and the Termination Class members are entitled to back pay for each day of Defendants' violation at a rate of compensation not less than the higher of the average regular rate received by such employee during the last 3 years of the employee's employment or the final regular rate received by such employee.

99.   Additionally, pursuant to 29 U.S.C. § 2104(a)(1)(B), Plaintiff Mitchell and the Termination Class members are entitled to benefits under an employee benefit plan described in 29 U.S.C. § 1002(3).

100.   Defendants' liability shall be calculated for the period of the violation, up to a maximum of 60 days.

101.    Plaintiff Mitchell has also been required to retain counsel in this matter to protect his rights and has incurred attorneys' fees and costs in this matter.

102.    Accordingly, Plaintiff Mitchell and the Termination Class members are affected employees, have suffered economic harm due to Defendants' actions, and are entitled to 60-days' back pay and continued benefits, pre- and post-judgment interest, reasonable attorneys' fees, the costs of this action, and any civil penalties this Court deems just and proper, all in an amount to be determined at trial.

103.    Pursuant to 11 U.S.C. § 507(a)(4), the Termination Class members' claims for back pay are priority claims in that such back pay was earned within 180 days before the cessation of TACC's business on October 14, 2017.

104.    Pursuant to 11 U.S.C. § 507(a)(5), the Termination Class members' claims for contributions to an employee benefit plan are priority claims in that such contributions arise from services rendered within 180 days before the cessation of TACC's business on October 14, 2017.

<u>**COUNT II**</u>
<u>**VIOLATION OF THE WARN ACT, 29 U.S.C. § 2101** *et seq.* **and 20 C.F.R. § 639.10**</u>

105.    Plaintiff Rider incorporates by reference each and every allegation set forth above as if fully set forth herein.

106.    On April 24, 2017, Defendants notified Plaintiff Rider and the approximately 200 remaining workers at Galatia that these employees would suffer permanent layoffs during a 14-day period beginning on July 21, 2017, and ending on August 4, 2017.

107.    On June 20, 2017, Defendants, in writing, notified Plaintiff Rider and the other recipients of the April 24, 2017 notice that the previously announced layoffs would be postponed until a 14-day period commencing on August 6, 2017, and ending on August 20, 2017.

108.    After June 20, 2017, Defendants postponed the Galatia plant closing beyond August 20, 2017 (the "Second Postponement").

109.    On July 22, 2017, Matt Efaw, General Superintendent at Galatia, drafted an e-mail setting forth a plan to reduce the number of workers at Galatia to 100 or less by August 20, 2017, and stating that "[b]y getting the operation to 100 or less employees, we are not required to provide any additional Warn notices."

110.    On or around August 18, 2017, Defendants terminated approximately 100 Galatia workers.

111.    By August 23, 2017, less than 100 workers remained at Galatia.

112.    Pursuant to the Second Postponement, Defendants terminated the Postponement Class members during the period August 21, 2017 to October 14, 2017.

113.    Defendants failed to provide timely "additional notice" to the Postponement Class members pursuant to 20 C.F.R. § 639.10 regarding the Second Postponement.

114.    Defendants failed to notify the Illinois Department of Commerce and Economic Opportunity regarding the Second Postponement.

115.    The first time that Plaintiff Rider knew with certainty the date of the termination of his employment at Galatia was the date of his termination, October 3, 2017.

116.    On information and belief, Defendants could have provided notice of the Second Postponement to the Postponement Class members at least as early as July 22, 2017, by which date Defendants had created a schedule for the permanent layoffs of the remaining workers at Galatia.

117.    On information and belief, Defendants failed to provide notice to the Postponement Class members as soon as possible regarding the Second Postponement.

118.    On information and belief, Defendants failed to provide the Postponement Class members with advanced notice of the Second Postponement which included references to the April 24, 2017 notice, the date or 14-day period to which the Postponement Class members' employment losses were postponed, and the reasons for the Second Postponement, in violation of 20 C.F.R. § 639.10.

119.    As a result of Defendants' violations, Plaintiff Rider and the Postponement Class members were deprived of sufficient advance notice of the specific 14-day period during which their employment with Defendants was to end.

120.    As a result of Defendants' violations, Plaintiff Rider and the Postponement Class members are entitled to back pay for each day of Defendants' violation at a rate of compensation not less than the higher of the average regular rate received by such employee during the last 3 years of the employee's employment or the final regular rate received by such employee.

121.    Additionally, pursuant to 29 U.S.C. § 2104(a)(1)(B), Plaintiff Rider and the Postponement Class members are entitled to benefits under an employee benefit plan described in 29 U.S.C. § 1002(3).

122.    Defendants' liability shall be calculated for the period of the violation, up to a maximum of 60 days.

123.    Plaintiff Rider has also been required to retain counsel in this matter to protect his rights and has incurred attorneys' fees and costs in this matter.

124.    Accordingly, Plaintiff Rider and the Postponement Class members are affected employees, have suffered economic harm due to Defendants' actions, and are entitled to 60-days' back pay and continued benefits, pre- and post-judgment interest, reasonable attorneys'

fees, the costs of this action, and any civil penalties this Court deems just and proper, all in an amount to be determined at trial.

125.    Pursuant to 11 U.S.C. § 507(a)(4), the Postponement Class members' claims for back pay are priority claims in that such back pay was earned within 180 days before the cessation of TACC's business on October 14, 2017.

126.    Pursuant to 11 U.S.C. § 507(a)(5), the Postponement Class members' claims for contributions to an employee benefit plan are priority claims in that such contributions arise from services rendered within 180 days before the cessation of TACC's business on October 14, 2017.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

A.      an order from the Court certifying the Classes identified herein as a class action pursuant to Bankruptcy Rule 7023 and Fed. R. Civ. P. 23(b) and (c) and appointing Plaintiffs as class representatives and appointing their counsel to represent the Classes;

B.      an order from the Court finding that Defendants have violated the WARN Act and therefore holding Defendants liable to Plaintiffs and the Classes;

C.      an order from the Court awarding Plaintiffs and the Class members unpaid wages, salary, commission, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits for 60 working days following the Plaintiffs' and/or Class members' termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage

continued for that period, all determined in accordance with the WARN Act, 29
U.S.C. § 2104(a)(1), in an amount to be proven at trial;

C.    an order from the Court awarding Plaintiffs and the members of the Classes pre-
judgment and post-judgment interest, as well as reasonable attorneys' and expert-
witness fees and other costs as may be available under law;

D.    an order from the Court finding that the claims of the members of each Class for
back pay and contributions to an employee benefit plan are entitled to priority
pursuant to 11 U.S.C. § 507(a)(4), (5).

D.    an order from the Court awarding such other and further relief as this Court may
deem just and proper.

Respectfully submitted,

**GOLDENBERG HELLER &
ANTOGNOLI, P.C.**

By: */s/ Thomas C. Horscroft*
Thomas P. Rosenfeld (admitted pro hac vice)
Kevin P. Green (admitted pro hac vice)
Thomas C. Horscroft (admitted pro hac vice)
2227 South State Route 157
Edwardsville, IL 62025
Telephone:  618-656-5150
Fax:  618-656-8169
tom@ghalaw.com
kevin@ghalaw.com
thorscroft@ghalaw.com

**LUPER NEIDENTHAL & LOGAN**

Frederick M. Luper (0019289)
Kenneth M. Richards (0040455)
1160 Dublin Road, Suite 400
Columbus, OH 43215
Telephone:  614-221-7663
Fax:  866-345-4948
fluper@lnlattorneys.com
krichards@lnlattorneys.com

*Attorneys for Plaintiffs Jetson Mitchell and Sherman Rider*