**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



John E. Hoffman, Jr.
United States Bankruptcy Judge

**Dated: May 1, 2020**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MURRAY ENERGY HOLDINGS CO., *et al.*,[1] | Case No. 19-56885 (JEH) |
| | Judge John E. Hoffman, Jr. |
| Debtors. | (Jointly Administered) |

**AMENDED ORDER GRANTING THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT BETWEEN THE DEBTORS, THE RETIREE COMMITTEE, AND THE UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN AND (II) GRANTING RELATED RELIEF**
**[RELATED TO DOCKET NO. 1265]**

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. Such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/MurrayEnergy. The location of Debtor Murray Energy Holdings Co.'s principal place of business and the Debtors' service address in these chapter 11 cases is 46226 National Road, St. Clairsville, Ohio 43950.

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) approving the Settlement between the Debtors, the Retiree Committee, and the 1992 Plan, as set forth in the Term Sheet and (b) granting related relief; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order 30-3* from the United States Bankruptcy Court for the Southern District of Ohio, dated December 4, 2019, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court finds that the Debtors have met all of the standards for relief under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted to the extent set forth in this Order.

2. The Settlement as set forth in the Term Sheet attached hereto as **Exhibit 1** is approved.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

3. Upon entry of the Order, the Debtors are authorized, but not directed, to effectuate the Settlement consistent with the Term Sheet, and the Debtors are authorized to enter into, perform, execute, and deliver all documents, and take all actions necessary to immediately continue and fully implement the Settlement in accordance with the terms and conditions set forth in the Term Sheet, all of which are hereby approved.

4. The Enrollment Date for the 1992 Plan's coverage of the transferred beneficiaries shall occur on May 1, 2020. Prior to the Enrollment Date, the transferred beneficiaries shall continue to be covered by the Murray IEP.

5. The 1992 Plan shall send enrollment/information packets and insurance cards to the Statutory Retirees and their beneficiaries, and enroll the eligible beneficiaries so that their coverage begins at 12:00 a.m. on the Enrollment Date. The Debtors shall terminate their coverage of the beneficiaries effective at the same time. For the avoidance of doubt, and notwithstanding any other provision in this Order, claims for covered benefits for dates of service prior to the Enrollment Date will be paid by the Debtors, even if received after the Enrollment Date.

6. Upon the Enrollment Date, all obligations of the Debtors under the Coal Act shall terminate completely and permanently. For the avoidance of doubt, the Stalking Horse Bidder shall not be a "successor in interest" nor a successor to any "signatory operator" or related person as those terms are used in the Coal Act and federal labor law.

7. Entry into the Settlement by the Debtors, the Retiree Committee, and the 1992 Plan and the performance and fulfillment of their obligations thereunder, does not constitute the solicitation of a vote on a chapter 11 plan, does not violate any law, including the Bankruptcy Code, and does not give rise to any claim or remedy against any of the Debtors, the Retiree Committee, or the 1992 Plan.

8. The effect of this Order shall survive the conversion, dismissal, and/or closing of these chapter 11 cases, appointment of a chapter 11 trustee, confirmation of a chapter 11 plan, and/or the substantive consolidation of these chapter 11 cases with any other case or cases. This Order shall be binding on any subsequent chapter 11 or chapter 7 trustee that may be appointed or elected in these chapter 11 cases or any succeeding chapter 7 cases.

9. Nothing herein, or in the Court's subsequent memorandum opinion, shall be construed as a finding that CONSOL is the last signatory operator as that term is used in the Coal Act. CONSOL, the 1992 Plan, and all other parties in interest reserve any and all rights, remedies, and defenses that they may have.

10. Nothing herein shall eliminate or affect in any way any obligations of third parties with respect to any retiree benefits paid or administered by such third parties for the benefit of the Debtors' employees.

11. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

12. Notwithstanding anything to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13. The Debtors shall serve this Order in accordance with all applicable rules and shall file a certificate of service evidencing compliance with this requirement.

14. The Debtors are authorized to execute and deliver all instruments and documents and are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

15. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

SO ORDERED.

Copies to Default List

## **Exhibit 1**

**Term Sheet**

April 13, 2020

**Revised Proposed Term Sheet for Settlement Between the Debtors, the Retiree Committee, and the 1992 Plan Regarding the Debtors' Liabilities Under the Coal Act**

Murray Energy Holdings Co. and certain of its affiliates (collectively, the "Debtors") provide retiree medical benefits to certain employees (or their eligible dependents) (the "Coal Act Retirees") pursuant to the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"). Under the Coal Act, the Debtors are obligated to provide retiree benefits through an individual employer plan that is funded directly by the Debtors (26 U.S.C. § 9711).

The Debtors currently provide the Coal Act Retirees retiree benefits through an individual employer plan (the "Murray IEP"). If the Debtors cease providing benefits to the Coal Act Retirees under the Murray IEP, then the UMWA 1992 Benefit Plan (the "1992 Plan") is required to provide retiree benefits to the Coal Act Retirees (26 U.S.C.A. § 9712(a), (b)).

This Term Sheet is a proposal (the "Revised Proposal") pursuant to section 1114 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to consensually modify the Debtors' Coal Act retiree obligations. This Revised Proposal is intended to resolve the remaining issues between the Debtors, the Retiree Committee, and the 1992 Plan related to the Debtors' obligations, including those in Paragraph 3(ii) and Paragraph 3(iii) of this Term Sheet, related the treatment of that certain letter of credit issued by Goldman Sachs Bank USA, No. 10000723 (the "Letter of Credit") to the benefit of the 1992 Plan and the Northern Trust cash escrow posted by The Ohio Valley Coal Company to the 1992 Plan, account number 2226566 (the "Escrow Account"), each as required by section 9712(d)(1)(B) of the Coal Act.

The Debtors propose the following:

1. The Murray IEP: The Debtors shall continue to comply with section 9711 of the Coal Act by providing Coal Act Retirees retiree benefits as defined in section 1114 of the Bankruptcy Code[1] through the Murray IEP until the Enrollment Date, as defined in Paragraph 2(ii) below.

2. Temporary Continuation of Murray IEP Coverage: The Debtors shall facilitate the transition of the Coal Act Retirees from the Murray IEP to the 1992 Plan so as to assure that there is no gap in benefit coverage and a smooth process. The Debtors shall provide the following transition services:

    (i) As soon as practicable, to the extent not previously provided, the Debtors shall transmit to the 1992 Plan: (a) a roster of all beneficiaries with date of birth, social security number and current contact information; (b) a copy of its benefit plan(s); (c) designated liaisons from the Debtors' internal benefits staff, pharmacy benefits manager, and claims administrator/carrier, together with authorization to immediately begin coordination with the 1992 Plan; and (d) such other information

---

[1] The 1992 Plan does not agree that benefits provided under the Coal Act are "retiree benefits" within the meaning of section 1114 of the Bankruptcy Code, or are otherwise subject to section 1114. By entering into any agreement based on this Term Sheet, the 1992 Plan does not waive its right to contest this issue in any other proceeding.

           as may be requested by the 1992 Plan as reasonably necessary to facilitate the transition of process.

   (ii)      The order by the United States Bankruptcy Court for the Southern District of Ohio ("Court") approving the settlement set forth in this Term Sheet (the "Settlement Order") shall establish an enrollment date ("Enrollment Date") for the 1992 Plan's coverage of the transferred beneficiaries to begin; *provided, however,* that such Enrollment Date shall occur on May 1, 2020, subject to the entry of the Settlement Order occurring prior to May 1, 2020. Prior to the Enrollment Date, the transferred beneficiaries shall continue to be covered by the Murray IEP. On and after the Enrollment Date, the transferred beneficiaries shall be covered by the 1992 Plan.

   (iii)     The Debtors and their carrier and pharmacy benefits manager shall be directed to send the required Medicare written notice to the beneficiaries and to Medicare, to the effect that the Debtors are terminating coverage and the 1992 Plan is enrolling the beneficiaries for coverage to transition on the Enrollment Date.

   (iv)     The Settlement Order shall direct the 1992 Plan to send enrollment/information packets and insurance cards to the beneficiaries, and enroll the eligible beneficiaries so that their coverage begins at 12:00 a.m. on the Enrollment Date. The Debtors will terminate its coverage of the beneficiaries effective at the same time.

   (v)      The Debtors and their carrier and the pharmacy benefits manager will send a sample copy of the required Medicare written notice referenced in paragraph 2(iii) to the Retiree Committee. Likewise the 1992 Benefit Plan will provide to the Retiree Committee sample copies of all letters, enrollment/information packets and insurance cards referenced in paragraph 2(iv).

   (vi)     Claims for covered benefits for dates of service prior to the Enrollment Date will be paid by the Debtors, even if received after the Enrollment Date, and such claims shall be treated as administrative expense claims.

3. Letter of Credit & Escrow Account: To resolve the potential for litigation among the Debtors and the 1992 Plan regarding the treatment of the Letter of Credit and the Escrow Account, including *Holland, as Trustee of the UMWA 1992 Benefit Plan v. Arch Coal, Inc.*, 947 F.3d 812 (D.C. Cir. 2020) and *Toffel, as Chapter 7 Trustee for the WEI Estates v. The Trustees of the United Mine Workers of America 1992 Benefit Plan, et al.,* Case No. 15-02741 (TOM), Adv. Pro. No. 18-00066 (TOM) (Bankr. N.D. Ala.), the Debtors will:

   (i)       withdraw their position that the Bipartisan American Miners Act of 2019 alters a signatory operator's, as defined in the Coal Act, obligation to provide security to the 1992 Plan pursuant to section 9712 of the Coal Act;

   (ii)      affirmatively agree that CONSOL Energy Inc. ("CONSOL") is the last signatory operator, as defined in the Coal Act, with respect to the applicable Coal Act Retirees acquired from CONSOL in 2013. Furthermore, the Debtors will make all reasonable best efforts to cooperate and assist with the Retiree Committee's and the 1992 Plan's efforts to hold CONSOL financially responsible for the applicable

        Coal Act Retirees by providing the Retiree Committee and the 1992 Plan, upon reasonable written notice to the Debtors' counsel (email being sufficient), with access to reasonably requested and readily accessible information related to the 2013 acquisition, including, transactional documents, related materials, notes, communications, and correspondence (including emails). For the avoidance of doubt, the Debtors will provide the 1992 Plan the closing binders related to the 2013 acquisition and emails (subject to appropriate search terms and agreement on custodians) related to the 2013 acquisition. In addition, Debtors, upon reasonable written notice to the Debtors' counsel (email being sufficient), shall make all reasonable best efforts to make individuals involved in the 2013 acquisition available for consultation and/or potential testimony on the same basis; and

    (iii)    consent to the 1992 Plan's drawdown on the Letter of Credit and/or the Escrow Account; *provided, however*, that the total drawdown amount shall be $12,500,000. The remaining amount under the Letter of Credit and the remaining cash held in the Escrow Account shall each revert to the Debtors.

4. <u>Settlement Order Support</u>: The Retiree Committee and the 1992 Plan will affirmatively support the agreements set forth in this Term Sheet and the Court's entry of the Settlement Order.

This Term Sheet is intended only to describe the basic modifications that are necessary for the Debtors' reorganization under section 1114 of the Bankruptcy Code as such modifications relate to the Coal Act Retirees, and it is not intended to constitute final settlement language.

Any communications to the Coal Act Retirees from the Coal Act Retiree Committee regarding participation in the Murray IEP or termination thereof or necessary to communicate this settlement proposal shall first be provided to the Debtors with a reasonable opportunity to review and comment to assure that such communications do not alter or vary the terms of this settlement proposal. The parties shall resolve any differences promptly and in good faith.