RECOMMENDED FOR PUBLICATION

File Name: 21b0001a.06

# BANKRUPTCY APPELLATE PANEL

OF THE SIXTH CIRCUIT

IN RE: MURRAY ENERGY HOLDINGS CO.,

*Debtor.*

_____

CONSOL ENERGY, INC.,

*Appellant,*

*v.*

MURRAY ENERGY HOLDINGS CO., OFFICIAL COMMITTEE OF RETIREES, UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN, AD HOC GROUP OF SUPERPRIORITY LENDERS, and OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

*Appellees.*

No. 20-8017

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio at Columbus.
No. 2:19-bk-56885—John E. Hoffman, Jr., Judge.

Decided and Filed: February 1, 2021

Before: CROOM, DALES, and WISE, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON BRIEFS:** Catherine Steege, Melissa Root, JENNER & BLOCK LLP, Chicago, Illinois, for Appellant. Kim Martin Lewis, Alexandra S. Horwitz, DINSMORE & SHOHL LLP, Cincinnati, Ohio, Mark McKane, KIRKLAND & ELLIS LLP, New York, New York, Joseph M. Graham, KIRKLAND & ELLIS LLP, Chicago, Illinois, for Appellee Murray Energy Holdings Co. Michael Healey, HEALEY BLOCK LLC, Pittsburgh, Pennsylvania, Filiberto Agusti, Johanna Dennehy, STEPTOE & JOHNSON LLP, Washington, D.C., Michael Vatis, STEPTOE & JOHNSON LLP, New York, New York, for Appellees United Mine Workers of America 1992 Benefit Plan and Official Committee of Retirees.

# OPINION

TRACEY N. WISE, Chief Bankruptcy Appellate Panel Judge. CONSOL Energy, Inc. ("CONSOL") appeals from the bankruptcy court's order and subsequent memorandum opinion approving a settlement under Rule 9019(a)[1] between Murray Energy Holdings Co. and its affiliated debtor entities (collectively, "Debtors"), the Official Committee of Retirees (the "Retiree Committee"), and the United Mine Workers of America 1992 Benefit Plan (the "1992 Plan"). (Mot. to Approve Compromise Under Rule 9019, ECF No. 1265 (the "Settlement Motion" to approve the "Settlement").)[2] CONSOL also appeals from the bankruptcy court's order granting Debtors' motion *in limine* excluding CONSOL's proposed witness testimony at the evidentiary hearing on the Settlement Motion. CONSOL lacks standing. Its appeal must be dismissed.

## JURISDICTION

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and no party timely elected to have the district court hear the appeal. 28 U.S.C. § 158(b)(6) and (c)(1).

CONSOL appeals the order entered on April 30, 2020, as amended on May 1, 2020, granting the Settlement Motion (Am. Order, ECF No. 1423 (the "Settlement Order")), and the subsequent memorandum opinion detailing the bankruptcy court's reasoning for approving the Settlement (Op. on Settlement Mot., ECF No. 1491-1; *In re Murray Energy Holdings Co.*, 615 B.R. 461 (Bankr. S.D. Ohio 2020) (the "Opinion" and, with the Settlement Order, sometimes collectively the "Rulings").) A bankruptcy court's order approving a settlement is a final order

---

[1]References to the Federal Rules of Bankruptcy Procedure appear as "Rule ____." Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2]Unless otherwise indicated, all citations to the record come from Debtors' main jointly administered chapter 11 bankruptcy case in the United States Bankruptcy Court for the Southern District of Ohio, Case No. 2:19-bk-56885.

under 28 U.S.C. § 158(a)(1).  *Miller v. Lim* (*In re Miller Parking Co., LLC*), 510 B.R. 123, 127 (E.D. Mich. 2014).

CONSOL also appeals the order entered on April 30, 2020, granting Debtors' motion *in limine* and barring testimony from CONSOL's witnesses at the hearing on the Settlement Motion (Or. Granting Mot. *in Limine* to Strike Decls. and Exclude Test., ECF No. 1410 (the "MIL Order")).  A ruling on a motion *in limine* is not a final order until such time as an order is entered resolving the contested matter to which the motion *in limine* related.  *Compare United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) ("A ruling on a motion in limine is no more than a preliminary, or advisory, opinion[.]") *with Kitchen v. Heyns*, 802 F.3d 873, 875 (6th Cir. 2015) (discussing the merger doctrine).  Upon entry of the Settlement Order, the MIL Order became final by merger.

Before reaching the merits, however, the Panel first must consider whether CONSOL has standing to pursue this appeal.  *Cohn v. Brown*, 161 F. App'x 450, 454 (6th Cir. 2005) ("A plaintiff's standing to have the merits of his case decided by a federal court is the 'threshold question in every federal case.'" (citations omitted)); *Warth v. Seldin*, 422 U.S. 490, 517-518, 95 S. Ct. 2197 (1975) ("The rules of standing, whether as aspects of the [Article] III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention.").  The Panel requested and received supplemental briefs on CONSOL's appellate standing as the Panel is "under an independent obligation to police [its] own jurisdiction."  *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 665 (6th Cir. 2001).

**FACTS**

**I. Debtors enter bankruptcy with obligations to provide Benefits to the Beneficiaries under the Coal Act.**

The Coal Act requires certain coal companies and their affiliates, referred to as "last signatory operators," to provide health and retiree benefits to retired employees (and their spouses and dependents) through individual employer plans ("IEPs") funded and administered by current or former coal operators.  26 U.S.C. § 9711(a), (b).  In addition, the Coal Act created the 1992

Plan to provide benefits for eligible retirees who do not receive benefits through a company's IEP. 26 U.S.C. § 9712(a), (b). Last signatory operators fund the 1992 Plan, in part, by paying monthly premiums. 26 U.S.C. § 9712(a)(3), (d)(1)(A). The Coal Act also requires last signatory operators to provide security to the 1992 Plan. 26 U.S.C. § 9712(d)(1)(B).

A CONSOL-related entity sold mining operations to Debtors in 2013. Under the Coal Act, if a company ceases operations, and the 1992 Plan assumes responsibility for that operator's IEP benefits, the 1992 Plan may assert that a prior employer of the terminated operator's employees must pay the benefits. *See* 26 U.S.C. §§ 9701(c)(4), 9711(a), (b), (c), 9712(d)(4).

Debtors operated a coal company and provided healthcare and retiree benefits to about 2,200 retired employees and their spouses and dependents (the "Beneficiaries" who receive the "Benefits") under their IEP (the "Murray IEP"). In 2019, the Benefits cost Debtors about $23 million; by April 2020, Debtors spent $60,000-$65,000 per day on Benefits for the Beneficiaries. In addition, certain Debtors posted a $22.5 million letter of credit, and maintained an escrow account holding about $530,000, as security for the 1992 Plan.

**II.  Debtors file chapter 11 petitions, commence a process to sell substantially all of their assets under § 363, and negotiate to terminate their Coal Act obligations.**

Debtors filed chapter 11 petitions on October 29, 2019. Before filing, Debtors negotiated agreements to finance the bankruptcy case and position the sale of Debtors' assets. Several agreements compelled Debtors to minimize their liabilities to the Beneficiaries and required Debtors to pursue relief under § 1114 should they fail to reach agreement to terminate or modify Debtors' obligation to pay the Benefits.

To begin a process leading to a § 363 sale of substantially all their assets, Debtors moved for and obtained entry of an order approving bidding procedures for the sale. This order provided that a stalking horse bidder would submit an initial bid for Debtors' assets and set out a competitive bidding process. After that process did not generate another qualified buyer, the stalking horse bid presented the sole viable path forward to sell the assets as a going concern to maximize value for Debtors' estates. The stalking horse bid contained specific terms requiring Debtors to consensually modify or reject the Benefits as a condition precedent to closing. It also required that

a plan confirmation order expressly provide that the purchaser of Debtors' assets would not assume any obligation to pay the Benefits.

To address their Coal Act obligations, Debtors moved for an order under § 1114(d) requiring the United States Trustee to appoint a committee to represent Debtors' retirees in negotiations. After the bankruptcy court entered an agreed order granting that motion, the United States Trustee appointed a Retiree Committee.

Debtors and the Retiree Committee began discussions regarding the termination of Debtors' obligation to provide Benefits to the Beneficiaries in February 2020, and the parties later included the 1992 Plan in their negotiations. Ultimately, the parties agreed to the Settlement, reflected in a term sheet dated April 13, 2020, by which (i) Debtors would provide Benefits to the Beneficiaries until May 1, 2020, (ii) the parties would cooperate to transition the Beneficiaries from the Murray IEP to the 1992 Plan as of May 1 to assure no coverage gap, (iii) the 1992 Plan would receive $12.5 million from the posted security and Debtors would receive the remainder, and (iv) Debtors would cooperate in the 1992 Plan's efforts to hold CONSOL responsible as the last signatory operator under the Coal Act for those Beneficiaries who transferred to Debtors in 2013. (Settlement Order, Ex. 1.)

### III.   The bankruptcy court approves the Settlement over CONSOL's objection and confirms Debtors' Chapter 11 Plan.

On April 14, 2020, Debtors filed the Settlement Motion seeking relief under Rule 9019. CONSOL filed the only objection, arguing, *inter alia*, that Debtors could not modify their Coal Act obligations without satisfying § 1114(g). CONSOL tendered five declarations to support its argument. Notably, CONSOL's objection reflected that it did not concede its liability for the Benefits under the Coal Act and contemplated further litigation to determine its obligations should the bankruptcy court grant the Settlement Motion:

> By seeking approval under [Rule] 9019, the parties are improperly requesting that this Court bless the deal as having been negotiated in 'good faith,' which would prejudice CONSOL's rights and legal remedies in later proceedings. In the event the Coal Motion is approved and litigation proceeds against CONSOL after the

> conclusion of this case, CONSOL intends on raising any and all defenses, cross-claims and counterclaims available to it.

(CONSOL's Obj. to Settlement Mot., ECF No. 1338 ("Obj.") at 14-15.)

On April 27, 2020, Debtors filed a motion *in limine* to strike CONSOL's declarations and exclude testimony from the declarants at the hearing on the Settlement Motion set for April 30; Debtors argued that the declarations contained opinions premised on misapplied law and irrelevant facts. After hearing argument on April 29, the court orally granted Debtors' motion and entered the MIL Order the next day.

On April 30, 2020, the bankruptcy court held an evidentiary hearing on the Settlement Motion. After accepting CONSOL's offer of proof regarding its witness testimony, the court took Debtors' evidence in support of the Settlement Motion, heard argument, recessed to review the parties' exhibits, and orally granted the Settlement Motion. The court entered the Settlement Order and the Opinion thereafter.

At CONSOL's request, the bankruptcy court included a provision in the Settlement Order that reserved CONSOL's right to dispute its potential Coal Act liability for the Benefits:

> Nothing herein, or in the Court's subsequent memorandum opinion, shall be construed as a finding that CONSOL is the last signatory operator as that term is used in the Coal Act. CONSOL, the 1992 Plan, and all other parties in interest reserve any and all rights, remedies, and defenses that they may have.

(Settlement Order ¶ 9.) In the Opinion, the bankruptcy court explained its conclusion that, in objecting to the Settlement, CONSOL was "'acting not as a concerned creditor of the chapter 11 estates, but as a party who will potentially be held liable for retiree benefits' at some point in the future." *Murray Energy Holdings Co.*, 615 B.R. at 464 (citation omitted). The court also clarified the scope of its rulings:

> CONSOL also contends that approval of the Settlement would constitute an advisory opinion because of the Debtors' agreement to cooperate to hold CONSOL financially responsible for the [Benefits]. . . . But this argument also misses the mark—because the Court's approval of the Settlement in no way constitutes a finding that CONSOL is the last signatory operator. To emphasize this, the Court's order approving the Settlement made clear that the Court was not making any such

finding. . . . Neither this decision nor the [Settlement Order] constitutes an advisory opinion.

*Id.* at 472. Thus, in both the Settlement Order and the Opinion, the bankruptcy court clearly stated that it made no findings or conclusions about CONSOL's liability for the Benefits under the Coal Act.

The bankruptcy court confirmed Debtors' chapter 11 plan on August 31, 2020, with an effective date of September 16, 2020. The confirmation order approved the proposed asset sale to the stalking horse bidder. The sale closed as of the plan's effective date. CONSOL did not appeal the confirmation order.

## DISCUSSION

**I.  A party appealing a bankruptcy court's order in the Sixth Circuit must establish standing under the "person aggrieved" doctrine.**

**A.  The "person aggrieved" doctrine applies to appeals to the Panel.**

A distinctive standard—the "person aggrieved" doctrine—applies to assess standing in appeals from the bankruptcy court, "in which the question is whether the party who appealed the bankruptcy court's order was sufficiently aggrieved by that order." *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (*In re Trailer Source, Inc.*), 555 F.3d 231, 236 (6th Cir. 2009). "The doctrine has been exclusively invoked to limit which parties may initiate appeals from the bankruptcy court to the district court or the Bankruptcy Appellate Panel." *Id*. "[A] principal rationale of the appellate standing doctrine is to prevent parties indirectly affected by bankruptcy-court rulings from bringing appeals on tangential issues." *Id*. at 237.[3]

---

[3]In a recent decision, the Sixth Circuit discussed standing in bankruptcy appeals and questioned whether to continue using a "prudential standing" doctrine following the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377 (2014). *See Carl F. Schier PLC v. Nathan* (*In re Capital Contracting Co.*), 924 F.3d 890 (6th Cir. 2019). While noting that the Supreme Court "distanced itself from prudential standing" in *Lexmark*, the *Capital Contracting* panel also explained that the Sixth Circuit "has yet to consider *Lexmark*'s effect, if any, on the person-aggrieved test governing prudential standing in bankruptcy appeals" and stated that, while "questions concerning 'standing' in bankruptcy courts and bankruptcy appeals may eventually need answers[,] … this is not the case to provide them." *Capital Contracting* at 896, 897. More recently, the Sixth Circuit described as "problematic [the] question of whether bankruptcy appellate standing may be more limited than

Appellate standing under the "person aggrieved" doctrine is narrower than Article III standing:

> The appellate standing requirement in bankruptcy cases is quite restrictive—it is much more limited than Article III standing or the prudential requirements associated with federal standing generally. Moreover, appellate standing is different from standing in bankruptcy court. As opposed to standing in the bankruptcy proceeding below—which is broadly granted to any "party of interest"—appellate standing is given only to "persons aggrieved" by the bankruptcy court's order. This principle, known as the "person aggrieved" doctrine, limits standing to persons with a direct, pecuniary interest in the bankruptcy court's order, which has been interpreted to mean the "order directly diminishes a person's property, increases his burdens, or impairs his rights." It is within the province of the [appellate court] hearing the appeal to determine if the party is a "person aggrieved," and in making that determination, the judge may rely on "practical common sense."

*Khan v. Regions Bank* (*In re Khan*), No. 3:12-cv-00025, 2012 U.S. Dist. LEXIS 157063, at *4-5 (E.D. Tenn. Oct. 31, 2012) (citations omitted), *aff'd*, 544 F. App'x 617 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 1545 (2014).

### B. Whether an order directly and adversely affects the appellant's pecuniary interests is interpreted narrowly, and "person aggrieved" standing does not arise from concerns about separate litigation unrelated to an interest protected by the Bankruptcy Code.

Having to defend a lawsuit does not render a litigant "aggrieved" for purposes of appellate standing. In *Moran v. LTV Steel Co., Inc.* (*In re LTV Steel Co., Inc.*), the Sixth Circuit held that a debtor corporation's officers lacked standing to appeal a bankruptcy court's order that granted a creditor group derivative standing to pursue an adversary proceeding against those officers. 560 F.3d 449, 453 (6th Cir. 2009). The court explained that

> parties are not aggrieved by an order granting a creditor derivative standing when their interest in the order is as party defendants in the resulting adversary proceeding . . . because the interest that [such parties] assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code.

---

Article III standing" after *Lexmark*. *Zipkin Whiting Co. v. Barr* (*In re Felix*), 825 F. App'x 365, 366 n.1 (6th Cir. 2020). Thus, although the law in this area may be in flux, the Sixth Circuit has not eliminated the "person aggrieved" doctrine and the Panel will continue to apply it.

*Id*. at 454 (quoting *Trailer Source*, 555 F.3d at 247 (Rogers, J., dissenting)); s*ee also Travelers Cas. & Sur. v. Corbin* (*In re First Cincinnati, Inc.*), 286 B.R. 49, 53 (B.A.P. 6th Cir. 2002) ("[M]ost, if not all, of the courts that have considered this question have held that a bankruptcy court's order does not produce the direct and adverse pecuniary impact necessary to bestow standing on an appellant if the order's effect on the appellant is merely to expose it to the risks of litigation.").

Moreover, entry of an order that impedes a party's defense in separate litigation does not bring about "person aggrieved" standing if that defense is not one the Bankruptcy Code protects. *See Stark v. Moran* (*In re Moran*), 566 F.3d 676 (6th Cir. 2009). The debtor in *Moran* was a shareholder in a closely held corporation who omitted stock shares from his bankruptcy schedules. The stock value subsequently increased. Upon discovery of the omitted asset, the trustee reopened the case and reached an agreement with the debtor whereby the debtor would pay all claims in the case and retain the stock. Stark, another shareholder who was involved in pending state court litigation brought by the debtor, objected and tendered an offer for the stock. The bankruptcy court's order approving the agreement over Stark's objection disadvantaged Stark in the state court litigation because he could not argue that the debtor did not own the stock. The bankruptcy court's decision thus impeded Stark's defense to some of the debtor's claims.

After the Bankruptcy Appellate Panel affirmed, Stark appealed to the Sixth Circuit, which applied the "person aggrieved" doctrine and dismissed the appeal. The court held that Stark's interests as a shareholder in the corporation, as a state-court litigant defending against the debtor's claims, and as an unsuccessful bidder for the stock, "are not the sort of interests that support standing for the purpose of his bankruptcy appeal[.]" *Id*. at 680. Further clarifying its ruling, the court explained, "[t]he interest Stark has in avoiding a state-court lawsuit, or even in affecting who has the right to bring that suit, is not the sort of interest that bankruptcy law in general is designed to protect." *Id*. at 681.

Courts in other circuits have reached the same conclusion. For example, although a bankruptcy court's order prevented parties from asserting defenses in separate litigation, the Eighth Circuit dismissed their appeal of that order under the "person aggrieved" doctrine because "even

No. 20-8017 *In re Murray Energy Holdings Co.* Page 10

if a bankruptcy court order deprived a party of 'a defense that would have otherwise been available to him,' it did not render the defendant a party aggrieved." *Opportunity Fin., LLC v. Kelley*, 822 F.3d 451, 459 (8th Cir. 2016)[4] (quoting *Atkinson v. Ernie Haire Ford, Inc.* (*In re Ernie Haire Ford, Inc.*), 764 F.3d 1321, 1326-27 (11th Cir. 2014)).

## II. CONSOL is not a "person aggrieved" by the Settlement Order and the Opinion.

Notwithstanding that the Rulings expressly preserve CONSOL's arguments against future liability under the Coal Act, CONSOL contends that it is a "person aggrieved" by the Rulings because they

> eliminated the contractual bargain struck when the Debtors acquired the stock of [CONSOL's predecessor entity] and its subsidiaries in 2013. . . . By ordering that 'all obligations of the Debtors under the Coal Act shall terminate completely and permanently' the [Settlement Order] 'deprive[d]' CONSOL of the Debtors [*sic*] continued performance under the 2013 [stock purchase agreement] and CONSOL was therefore adversely affected pecuniarily.

(Supp. Br. of Appellant CONSOL, B.A.P. Case No. 20-8017, ECF No. 34-1 ("CONSOL Supp.") at 1-2 (record citations omitted) (citing *Motor Vehicle Cas. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 677 F.3d 869, 887 (9th Cir. 2012)).) CONSOL also asserts that it is a "person aggrieved" because the Rulings "expressly insulated a third party—the Stalking Horse Bidder—from any Coal Act liability, which reduces the bases on which CONSOL can defend against the 1992 Plan's lawsuit and limit any adverse judgment." (*Id*. at 2 (record citations omitted) (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 218 (3d Cir. 2004), as amended (Feb. 23, 2005).) CONSOL's arguments are unavailing.

### A. The Bankruptcy Code does not protect CONSOL's interests as a potentially liable last signatory operator under the Coal Act.

To be a "person aggrieved" by a bankruptcy court's order because it impedes the person's interests in other litigation, those interests must be interests the Bankruptcy Code intends to protect. Here, the Rulings concern Debtors' ability to, by agreement, terminate the Murray IEP

---

[4]The *Opportunity Finance* majority noted that an appellant could satisfy the person aggrieved standard if its position involves an interest that the Bankruptcy Code protects. 82 F.3d at 459.

and transfer Beneficiaries to the 1992 Plan.  The bankruptcy court concluded (and CONSOL does not dispute) that CONSOL objected to the Settlement only based on its own potential Coal Act liability.  CONSOL did not argue (nor could it have) that the Settlement impaired the Beneficiaries' interests under § 1114.  Protecting health care and retirement benefits for retirees of debtors in bankruptcy is the goal of § 1114, not protecting defenses in litigation available to a party potentially responsible to pay those benefits.  *See In re GF Corp.*, 115 B.R. 579, 582 (Bankr. N.D. Ohio 1990) ("The Senate Report on the Retiree Benefits Bankruptcy Protection Act of 1988 which enacted § 1114 states that the purpose of the bill is 'to provide additional protections for the insurance benefits of retirees, their spouses and dependents, of debtors under the Bankruptcy Code.'"); *IUE-CWA v. Visteon Corp.* (*In re Visteon Corp.*), 612 F.3d 210, 216 (3d Cir. 2010) ("§ 1114 'was enacted to protect the interests of retirees of chapter 11 debtors.'" (citations omitted)); *Crafts Precision Indus., Inc. v. U.S. Healthcare, Inc.* (*In re Crafts Precision Indus., Inc.*), 244 B.R. 178, 184 (1st Cir. B.A.P. 2000) ("The legislative history of [§ 1114] clearly reveals that the statute is intended to benefit retirees specifically."); *In re Certified Air Techs., Inc.*, 300 B.R. 355, 367 (Bankr. C.D. Cal. 2003) (stating that § 1114(e)(2) "was enacted for the purpose of protecting retiree benefits in bankruptcy[.]").  Stated differently, the Bankruptcy Code is not concerned with CONSOL's interest in averting liability under the Coal Act as a last signatory operator.

      **B.**      **CONSOL's arguments in support of its standing are unpersuasive.**

CONSOL's first argument, that it is a "person aggrieved" because the bankruptcy court interfered with its contract rights, is without merit.  The 2013 stock purchase agreement between certain Debtors and CONSOL's related entity required those Debtors to pay the Benefits as they came "due and payable" and obligated those Debtors to indemnify CONSOL from liability for the Benefits.  Entry of the Rulings (neither of which references the 2013 stock purchase agreement) did not modify Debtors' contractual obligations to CONSOL.  The Rulings only permitted Debtors to terminate the Murray IEP and transfer the Beneficiaries from the Murray IEP to the 1992 Plan.  The indemnity obligation existed until Debtors rejected the stock purchase agreement pursuant to the confirmed plan—which CONSOL did not appeal.  Whether CONSOL has claims for rejection damages is not at issue in this appeal.

CONSOL's second argument, that it is a "person aggrieved" because the Rulings impair its litigation defenses, centers on the out-of-circuit *Thorpe Insulation* and *Combustion Engineering* decisions. In *Thorpe Insulation*, the Ninth Circuit considered an appeal by insurers objecting to a plan confirmation order of debtors facing substantial asbestos-related liability. The plan contained a special insurance-related provision under § 524(g) bearing on the reorganization. The bankruptcy court confirmed the plan "[w]ithout giving [the insurers] the opportunity to be heard fully on all relevant issues[.]" *Thorpe Insulation*, 677 F.3d at 879. The district court then reviewed the plan and held that the insurers lacked standing to appeal the confirmation order because the challenged provision was "insurance neutral." *Id*. at 876. The Ninth Circuit reversed. First, it found that the insurers had appellate standing to appeal from the district court's order. *Id*. at 884 ("All parties agree that Appellants have appellate standing to appeal the finding of insurance neutrality and to appeal the preemption holding."). It next held that the insurers had "party in interest" standing in the bankruptcy court to object to the plan under § 1109(b). *Id*. at 884-87. Then, the court found that the insurers had Article III standing to appeal. *Id*. at 887. Finally, the Ninth Circuit concluded that the insurers had prudential "zone of interests" standing under § 1109(b). *Id*. at 888. The *Thorpe Insulation* opinion does not substantively analyze the insurers' appellate standing under the "person aggrieved" doctrine; in fact, the Ninth Circuit made clear that it did not apply the "more stringent 'person aggrieved' standard" to evaluate the insurers' standing. *Id*. at 885 n.8. Thus, this opinion is neither instructive nor persuasive.

Next, CONSOL cites the Third Circuit's *Combustion Engineering* opinion to argue that "[w]hen a bankruptcy court order limits the defenses or arguments that a party can assert to defend itself in post-confirmation litigation, courts recognize the party has appellate standing to challenge the order" and "if an order makes it more difficult for a party to prevail in collateral litigation, that order increases the party's burdens and impairs its rights, making the party a 'person[] aggrieved' with appellate standing." (CONSOL Supp. at 11, 12.) CONSOL claims that, in *Combustion Engineering*, "insurers had appellate standing to challenge [a] confirmation order that was 'adverse to their rights' with respect to [the] defense of post-confirmation litigation[.]" *Id*. at 13. Not so.

In *Combustion Engineering*, insurers sought review of a plan provision relating to § 524(g). The bankruptcy court recommended confirmation of a plan with a "super-preemptory provision"

stating "that nothing in the Plan would impair the insurers' pre-petition rights under subject insurance policies and settlements." *Combustion Eng'g*, 391 F.3d at 216.[5]  The district court, reviewing and ultimately confirming the plan, modified the provision's language.  On appeal from the district court, the circuit court explained that

> by limiting the scope of the super-preemptory provision only to "claims" and not to broader "rights," the District Court exposed the [insurers] to the possibility that other Plan provisions could affect aspects of subject policies and settlement agreements.  As such, we conclude the [insurers] have standing to challenge this modification.  Although the District Court found that "all substantive rights of the insurers were expressly preserved under the Plan per the order of" the Bankruptcy Court, it nevertheless altered the language of the provision in a manner the insurers claim was adverse to their rights.  We agree with the insurers on this point.

*Id.* at 218.  In other words, the Third Circuit found that the insurers were "persons aggrieved" because the confirmed plan's language had the effect of modifying the insurers' contracts.  CONSOL erroneously extrapolates this determination to mean that the circuit court found the confirmation order impaired the insurers' "defense of post-confirmation litigation." *Combustion Engineering* does not aid CONSOL's argument.

## CONCLUSION

The Settlement Order and the Opinion approving the Settlement did not impose liability on CONSOL for the Benefits.  On appeal, as in its objection to the Settlement Motion, CONSOL continues to disclaim liability for the Benefits.  The bankruptcy court left CONSOL's Coal Act liability for another court to determine; CONSOL only will become liable for the Benefits if a court in a separate action so finds.[6]  Moreover, to the extent that the Settlement removes a defense to CONSOL's liability under the Coal Act in separate litigation, that defense is unrelated to an

---

[5]Because the debtors' plan included a "channeling injunction" under § 524(g), the district court entered an order "designat[ing] all matters to be adjudicated as part of Plan confirmation, including matters arising under 11 U.S.C. §§ 524(g) and 502(c), as non-core matters subject to de novo review and final order by the District Court." *Combustion Eng'g*, 391 F.3d at 208.

[6]In fact, in their supplemental briefing on standing, the parties advised that the 1992 Plan filed a lawsuit in the U.S. District Court for the District of Columbia on May 2, 2020, the day after the Beneficiaries enrolled in the 1992 Plan, requesting a declaration that CONSOL be deemed the last signatory operator with respect to the Benefits. (*Holland v. CONSOL Energy Inc.*, Case No. 1:20-cv-01148-TJK (D.D.C.), ECF No. 1.)

interest that the Bankruptcy Code seeks to protect, which does not satisfy the requirements for appellate standing under the "person aggrieved" doctrine.

Because the entry of the Rulings did not diminish CONSOL's property, increase its burdens, or impair its rights, CONSOL does not have a direct, pecuniary interest in the Rulings and is not a "person aggrieved" as defined by Sixth Circuit law. As a result, further review of the MIL Order would be moot. For these reasons, the appeal is DISMISSED for lack of standing.