**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



**Dated: March 31, 2022**

_____
John E. Hoffman, Jr.
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | Case No. 19-56885 |
| MURRAY ENERGY | : | |
| HOLDINGS CO., *et al.*, | : | Judge Hoffman |
| | : | |
| *Debtors*. | : | (Jointly Administered) |

### OPINION AND ORDER GRANTING DRIVETRAIN, LLC'S MOTION FOR SUMMARY JUDGMENT SUSTAINING DEBTORS' OBJECTION TO MECHANIC'S LIEN CLAIMS OF <u>KANAWHA STONE COMPANY, INC.</u>

### I. Introduction

Kanawha Stone Company, Inc. ("Kanawha") filed identical proofs of claim against two of the debtors in this jointly administered case: one against Murray Energy Holdings Co. (Claim No. 807), and one against Consolidation Coal Company (Claim No. 2374). Each was for $805,491.25, and attached to each claim form was a Notice of Mechanic's Lien asserting a lien against real property known as the Dent's Run Landfill in Marion County, West Virginia.[1]

---

[1] Because Kanawha's notices of mechanic's lien assert identical liens against the same property, the Court will treat them as a single lien for purposes of this opinion.

Drivetrain, LLC, in its capacity as the plan administrator appointed by the Chapter 11 plan ("Plan") (Doc. 2082-1) of Murray Energy and its affiliated debtors and debtors in possession ("Debtors"), contends that the lenders under Debtors' prepetition credit agreement ("Credit Agreement")[2] hold a first-in-time lien on the Dent's Run property through a mortgage granted under the Credit Agreement ("Dent's Run Mortgage"). Based on this mortgage and the valuation of the property securing it, Drivetrain filed a motion for summary judgment ("Motion") (Doc. 2538) seeking a ruling reclassifying Kanawha's claims as unsecured claims and extinguishing its lien. Kanawha argues in its response ("Response") (Doc. 2588) that its lien should ride through the bankruptcy unaffected even if its claim is found to be unsecured and it receives no distribution on the claim.

## II. Jurisdiction and Constitutional Authority

The Court has jurisdiction to hear and determine this matter under 28 U.S.C. § 1334(b) and the general order of reference entered in this district in accordance with 28 U.S.C. § 157(a). The allowance or disallowance of claims against the estate is a core proceeding. 28 U.S.C. § 157(b)(2)(B). Because the dispute "stems from the bankruptcy itself," the Court also has the constitutional authority to enter a final order. *Stern v. Marshall*, 564 U.S. 462, 499 (2011). *See also Waldman v. Stone*, 698 F.3d 910, 920 (6th Cir. 2012) ("[D]isallowance [of] claims [is] part and parcel of the claims-allowance process in bankruptcy. Under *Stern*, therefore, the bankruptcy court was authorized to enter final judgment as to these claims." (citation omitted)).

---

[2] Murray Energy Holdings Co. and certain related entities entered into the Credit Agreement on June 29, 2018, some sixteen months before they filed their Chapter 11 petitions. In July and August that year, the lenders under the Credit Agreement filed and recorded mortgages in Ohio, Kentucky, West Virginia and Pennsylvania granting liens under the Credit Agreement. Decl. of Ernest C. Banks, Jr. in Supp. of Plan Administrator's Mot. for Summ. J. Sustaining the First Omnibus Obj. to Certain Mechanic's Lien Claims (Doc. 2519) at 2.

### III. Factual and Procedural Background

The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 29, 2019. Before filing for bankruptcy protection, the Debtors engaged in coal mining activities in several states. At or near the time of the filing, providers of mining-related equipment, labor and services filed a multitude of mechanic's liens against the Debtors and filed proofs of claim based on those mechanic's liens. The Debtors filed an omnibus objection to the mechanic's lien claims ("Objection") (Doc. 1749), followed by separate motions for summary judgment directed at each mechanic's lien claimant, to which several claimants responded. The Objection is based in part on the argument that the mechanic's liens, even if perfected, are junior in priority to previously perfected liens and security interests in the form of mortgages granted under the Credit Agreement that encumbered the Debtors' real and personal property. Mot. at 1.[3] Drivetrain argues that because the junior mechanic's lien claims are "underwater," they should be reclassified as general unsecured claims. Mot. at 2. Put differently, Drivetrain submits that—as for the properties to which the mechanic's liens attach, including the Dent's Run property—there was insufficient collateral value to secure both the Debtors' obligations under the Credit Agreement and the claims of the mechanic's lienholders. Thus, goes Drivetrain's argument, the mechanic's lienholders claims must be reclassified as general unsecured claims. Mot. at 2. The Debtors' disclosure statement for their joint plan of reorganization estimates that general unsecured claims will receive a distribution of between 0%–1%. *See* Suppl. Disclosure Statement for Debtors' Second Am. Plan (Doc. 1934-1) at 12. But if the mechanic's lien claims remain classified as Class 2 Other Secured Claims, they will be satisfied in full. Plan at 29, 30.

---

[3] When citing documents in the record, the Court will cite the PDF page number.

In their motions for summary judgment, cross-motions and responses, the Debtors and the mechanic's lien claimants raise two central issues: (1) whether certain of the mechanic's lienors were eligible to file liens under West Virginia's laborer's lien statute; and (2) whether the Debtors could encumber surface estates where they held subsurface mining rights.[4] Because Kanawha admitted that its mechanic's lien on the Dent's Run property is subordinate to the Dent's Run Mortgage, these issues were not in play as to Kanawha's claims. Thus, Kanawha limited its argument to the following statement in its Response:

> The issue raised is lien priority and not the validity of the lien. Debtors' basis for the Omnibus Objection is that the Kanawha Stone Company, Inc.'s lien should be reclassified from secured to unsecured for the reason that it is subordinate to Credit Line Deed of Trust dated June 28, 2018 and recorded July 13, 2018. Debtors claim that no value cushion remains for Kanawha's subordinate lien claim and as a result, Kanawha will not receive any recovery for its lien. Nevertheless, Kanawha Stone's lien should still be valid, regardless of how it is classified. In essence, whether Kanawha receives compensation for its lien or not is not determinant of whether its lien is secured or not. Its lien is secured because it's a properly filed and perfected [] Notice of Mechanic's Lien. That does not change simply because it is not going to or is unlikely to receive compensation owed to it in connection with that lien.

Resp. at 2 (citations omitted).

Debtors' confirmed[5] Plan provided that secured claims (including mechanic's lien claims) were classified as "Class 2 Other Secured Claims." And Class 2 claimants, unless they agreed to less favorable treatment, were to receive, on the Effective Date, payment of their

---

[4] The Court has issued separate opinions on these questions.

[5] The Plan was confirmed on August 31, 2020. *See*, Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Second Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code ("Confirmation Order") (Doc. 2135).

allowed secured claims in full in cash or such other treatment as would render their claims unimpaired. Plan at 30.

More than a dozen mechanic's lienholders objected to confirmation of the Plan, although Kanawha was not one of them.[6] The objectors argued that their liens were being released, and then possibly reinstated, which they said could allow the attachment of intervening liens. The mechanic's lienholders also argued that the Plan's injunction eliminated their *in personam* rights against the Debtors. The Debtors resolved these objections with most of the objectors by including a provision in the Confirmation Order stating:

> 118. Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or the Stalking Horse APA, until a Disputed Other Secured Claim is Allowed or disallowed by Final Order or an agreement of the claimant with the Debtors (prior to the Effective Date) or the Stalking Horse Bidder (after the Effective Date), the lien or liens on property securing such Disputed Other Secured Claim shall remain on such property in the same priority that such lien or liens held prior to entry of the Confirmation Order. Notwithstanding the foregoing, the holder of a Disputed Other Secured Claim may not seek, and shall not have any rights, to enforce such lien or liens unless and until the corresponding Disputed Other Secured Claim is Allowed in an amount greater than zero. To the extent that an Other Secured Claim is Allowed and the Debtors (with the consent of the Stalking Horse Bidder) or the Plan Administrator, as applicable, elect for the holder of such Allowed Other Secured Claim to receive the treatment set forth in section III.B.2(b)(ii) of the Plan, (a) the lien or liens on property securing such Allowed Other Secured Claim shall remain on such property in the same priority that such lien or liens held prior to entry of the Confirmation Order, as established by order of the Bankruptcy Court (including an agreed order by and among the Debtors (with the consent of the Stalking Horse Bidder) or the Plan Administrator, as applicable, and the holder of such Allowed Other Secured Claim), and, to the extent the property subject to such liens constitutes an Acquired Asset, such liens shall constitute Permitted Encumbrances under the Stalking Horse APA and (b) notwithstanding anything to

---

[6] *See* Debtors' Mem. in Supp. of Confirmation of Debtors' Second Am. Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code and Omnibus Reply to Confirmation Objs., Ex. A – Confirmation Objections Chart (Doc. 2078-1).

>   the contrary in this Confirmation Order or the Plan, any *in personam* rights that such Allowed Other Secured Claim may entitle such holder to have against any applicable Debtors shall be preserved and not released, discharged, or extinguished, and the holder of any such Claim shall not be enjoined from exercising any such rights against any applicable Debtors or the Wind-Down Trust.  *If a Disputed Other Secured Claim is either disallowed, Allowed in an amount of zero, or reclassified as a General Unsecured Claim by a Final Order or an agreement of the claimant with the Debtors (with the consent of the Stalking Horse Bidder), the lien or liens on property securing such claim shall be deemed released and extinguished.* Nothing herein shall prejudice any party's rights with respect to the Debtors' First Omnibus Objection to Certain Mechanic's Lien Claims [Docket No. 1749] or any of the responses, replies, objections, or oppositions filed or other litigation related thereto.

Confirmation Order at 55–56 (emphasis supplied).

Following negotiations with the mechanic's lienholders, four parties maintained their objections. The Court overruled the objections, finding, based on the paragraph quoted above, that the Plan left the claims of the mechanic's lienholders unimpaired. Conf. Hr'g Tr. Aug. 31, 2020 (Doc. 2331) at 19–23. As stated, Kanawha did not object to confirmation of the Plan. Nor did it appeal or seek reconsideration of the Confirmation Order or clarification of any provision of the Plan.

### III. Legal Analysis

**A.      Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotation marks omitted). "The party moving for summary judgment always

6

bears the initial responsibility of informing the court of the basis for its motion, 'and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Ray's Servs., Inc. v. Cunningham (In re Cunningham)*, No. 12–3201, 2014 WL 1379136, at *2 (Bankr. N.D. Ohio Apr. 8, 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting *Celotex*, 477 U.S. at 322). And a "[n]onmoving party has not made that sort of showing if the record taken as a whole could not lead a rational trier of fact to find in the party's favor." *Id.* (quoting *Ricci*, 557 U.S. at 586).

Kanawha's notices of mechanic's lien assert a lien against property "known as the Dent[']s Run Landfill situate in Mannington, Marion County, West Virginia[.]" Mot., Ex. D (Doc. 2538-6 at 8, 23).

In its responses to the Debtors' requests for admission, Kanawha concedes that its mechanic's lien is subordinate to the Dent's Run Mortgage:

> REQUEST FOR ADMISSION NO. 1. Admit that the Mortgage on the Dent's Run Property was duly recorded in the public records of Marion County, West Virginia, on July 13, 2018.
>
> ANSWER: Admit.
>
> REQUEST FOR ADMISSION NO. 2: Admit that Your Mechanic's Lien attached to the Dent's Run Property, at the earliest, on August 24, 2018.
>
> ANSWER: Admit.
>
> REQUEST FOR ADMISSION NO. 3: Admit that, because Your Mechanic's Lien attached to the Dent's Run Property, at the

7

> earliest, on August 24, 2018, Your Mechanic's Lien is subordinate to the prior, duly-recorded Mortgage on the Dent's Run Property in favor of the Debtors' third-party lenders on account of the Superpriority Term Loan.
>
> ANSWER: Admit.

Mot., Ex. B (Doc. 2538-4 at 3–4).

The only issues raised in the Motion were: (1) whether Kanawha's mechanic's lien was subordinate to the Dent's Run Mortgage; and (2) whether the Credit Agreement balance exceeded the value of the collateral securing the Debtor's repayment obligations under the agreement. By its responses to the requests for admission, Kanawha admitted that its mechanic's lien was second in time to the Dent's Run Mortgage and that its mechanic's lien was therefore subordinate to that mortgage. Nowhere in its papers did Kanawha dispute that there was insufficient collateral to secure its mechanic's lien, nor did it submit any evidence of valuation of the Dent's Run property. In fact, Kanawha concedes the point by saying that

> whether Kanawha receives compensation for its lien or not is not determinant of whether its lien is secured or not. Its lien is secured because it's a properly filed and perfected [] Notice of Mechanic's Lien. That does not change simply because it is not going to or is unlikely to receive compensation owed to it[.]

Resp. at 2. Thus, there are no genuine issues of material fact in dispute. Kanawha agrees that its liens are subordinate to the Dent's Run Mortgage. And it does not challenge Drivetrain's assertion that there was insufficient collateral value to secure both the Debtors' repayment obligations under the Credit Agreement and the claims of the mechanic's lienholders.

**B.      Lien Retention Rights**

Kanawha insists that even if it receives no recovery on its liens, the liens should remain valid, despite there being no collateral to which its liens could attach. Resp. at 2. In support of its position, it cites *Ryan v. Homecomings Fin. Network*, 253 F.3d 778 (4th Cir. 2001) for the

8

Main Document    Page 9 of 10

proposition that a creditor may retain its lien position until the lien is foreclosed. The Fourth Circuit in *Ryan* held, based on the Supreme Court decision in *Dewsnup v. Timm*, 502 U.S. 410 (1992), that "an allowed unsecured consensual lien may not be stripped off in a Chapter 7 proceeding pursuant to the provisions of 11 U.S.C. §§ 506(a) and (d)." *Ryan,* 253 F.3d at 783. The *Ryan* court thus held that the lien could remain on the property unaffected, even with no equity to support the lien. *Id.*

But *Ryan* and *Dewsnup* arose in Chapter 7 cases, and those decisions do not apply in Chapter 11:

> Chapter 11 reorganizations involve the retention and use of [liened] property in the rehabilitated debtor's business. The Code makes that clear: "the process of lien stripping is ingrained in the reorganization provisions of the Bankruptcy Code to such an extent that any attempt to extend the holding in *Dewsnup* to Chapter 11 cases would require that numerous provisions of the statute be ignored or construed in a very convoluted manner. Indeed, Congress's post-*Dewsnup* addition of 11 U.S.C. § 1123(b)(5)—permitting modification of the rights of holders of secured claims, except those secured solely by a debtor's principal residence—seems to constitute explicit approval of lien stripping in Chapter 11 bankruptcies.

*In re Heritage Highgate, Inc.*, 679 F.3d 132, 144 (3rd Cir. 2012) (citations omitted). Kanawha does not contest its junior position vis-à-vis the Dent's Run Mortgage, nor does it dispute the lack of collateral value to secure its lien. Thus, Kanawha's claim is properly reclassified as a general unsecured claim. As *Heritage* makes clear, a wholly unsecured lien may be stripped in a Chapter 11 case, and the confirmed Plan provides for exactly that treatment for those Class 2 Other Secured Claims that are reclassified as general unsecured claims.

C.     The Confirmation Order's Binding Effect

Kanawha is bound by the Confirmation Order, which long ago became a final order. Section 1141 of the Bankruptcy Code states that

9

>   the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor equity security holder or general partner has accepted the plan.

11 U.S.C. § 1141(a).

As explained by the court in *Pennsylvania Iron & Coal Co., Inc. v. Good (In re Pennsylvania Iron & Coal Co., Inc.)*, 56 B.R. 492, 495 (Bankr. S.D. Ohio 1985), "[t]he effect of [§ 1141] [is] far-reaching. After confirmation of a chapter 11 plan, a creditor's lien rights are only those granted in the confirmed plan. A creditor no longer can enforce its pre-confirmation lien rights."

Because Kanawha has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial[,]" *Viet*, 951 F.3d at 823, Drivetrain is entitled to summary judgment.

### IV. Conclusion

For all these reasons, the Court finds that there are no genuine issues of material fact and that Drivetrain is entitled to judgment as a matter of law. The Motion is accordingly **GRANTED**. Kanawha's Claim Nos. 807 and 2374 are reclassified as general unsecured claims and its mechanic's lien is deemed released and extinguished.

**IT IS SO ORDERED.**

Copies to:

Attorneys for Drivetrain, LLC
Attorney for Kanawha Stone Company, Inc.